**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **OLLEN G. COLBERT, JR.,** | * | |
| Plaintiff, | * | Case No.: C-1-00-909 |
| vs. | * | Judge Susan Dlott |
| **CINCINNATI GAS AND ELECTRIC CO.,** | * | Magistrate Timothy Hogan |
| and | * | |
| **INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 1347,** | * | |
| | * | |
| Defendants. | * | |
| | * | |

**MOTION FOR SUMMARY JUDGMENT OF DEFENDANT
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL 1347**

Comes now the Defendant International Brotherhood of Electrical Workers, Local 1347, pursuant to Rule 56, Federal Rules of Civil Procedure, and moves this Honorable Court for summary judgment in Local 1347's favor, dismissing the Complaint herein for the reason that no genuine issue exists as to any fact material to the claim in this case and Local 1347 is entitled to judgment as a matter of law.  This motion for summary judgment is based upon the pleadings, depositions, affidavit, and exhibits attached thereto.

                                              Respectfully submitted:

                                              RAKAY, SPICER & LEDBETTER

                                              By:   /s/ Jerry A. Spicer
                                                      Jerry A. Spicer (0011385)
                                                      Trial Attorney for IBEW Local 1347

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT OF DEFENDANT INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS,
LOCAL 1347**

Plaintiff Ollen Colbert's (hereinafter referred to as "Colbert") initial Complaint in this matter was filed on October 30, 2000 and was brought against Defendant Cinergy Corporation (hereinafter referred to as "CG&E") and the International Brotherhood of Electrical Workers, Local 1347 (hereinafter referred to as "Local 1347"), and was brought pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination.  Colbert alleged jurisdiction under 42 U.S.C. §2000e-5.  The Complaint alleged that CG&E terminated and failed to promote Colbert because of his race.  The Complaint also accused Local 1347 of "[i]ncompetent and lackadaisical representation of a union member in good standing."

Both Defendants filed Answers to the Complaint denying the material claims in the Complaint.  Local 1347 filed a motion for summary judgment with the Court on May 10, 2001, and argued that Colbert had not met the conditions precedent necessary to bring a cause of action against Local 1347 pursuant to 42 U.S.C. §2000e-5 because Colbert had never filed a charge of discrimination against Local 1347 with the EEOC nor received a Right-to-Sue letter from the EEOC against Local 1347.

The Court issued an Order to Show Cause on October 3, 2001, because Colbert had failed to file a responsive pleading to Local 1347's motion, and ordered Colbert to respond to such motion or risk having summary judgment issued.  On November 28, 2001, United States Magistrate Timothy S. Hogan filed a Report and Recommendation and recommended that summary judgment be entered against Colbert with regard to Local 1347.  On January 2, 2002 the Honorable Judge Susan Dlott entered an Order granting Local 1347's Motion for Summary Judgment.

On or about December 31, 2002, Colbert filed a Motion for Leave to Amend the Complaint and requested within said Motion that Judge Dlott's Order dismissing Colbert's Complaint against Local 1347 be set aside under Rule 60(B)(6). The proposed Amended Complaint added a jurisdictional claim under 29 U.S.C. §185. On or about April 22, 2003, Magistrate Judge Timothy S. Hogan recommended that Colbert's Motion to Amend the Complaint be granted and that the Court's previous dismissal of Colbert's Complaint in its entirety as to Local 1347 be set aside.[1]

The Amended Complaint alleges in paragraph 6, Sections I-K and paragraph 8, that IBEW 1347 failed to represent Colbert over a grievance he filed in 1995 concerning his demotion from the position as a driver and that "[o]n or about September 30, 1999, Colbert was notified by IBEW Local 1347 that it would not pursue Plaintiff's claim of grievance of wrongful demotion from his status as driver any further and would not seek arbitration." The Amended Complaint also alleges in paragraph 6L and paragraph 8 that Colbert realized on May 10, 2000 that Local 1347 did not intend to represent him over his March 8, 2000 termination by CG&E.

CG&E and Local 1347 both answered the Amended Complaint and denied all of the material claims.

**STATEMENT OF PERTINENT UNCONTROVERTED FACTS**

Colbert was an employee of CG&E for approximately ten (10) years, from April, 1990 to March 8, 2000. (Complaint, ¶3) On or about March 8, 2000 Colbert was discharged from his employment by CG&E. (Complaint, ¶ 6A)

Years prior to his discharge in 2000, Colbert was demoted from his position as a driver.(Complaint, ¶6K) Local 1347 filed a grievance over Colbert's demotion (Col. Dep. III,

---

[1] The Magistrate Judge's basis for such decision was that although the jurisdictional claim made in the original Complaint was limited to 42 U.S.C. §2000e-5 (race discrimination), the Complaint also contained a claim against Local 1347 for breach of duty of fair representation.

3

Ex. 34, pp. 135, 136)[2], and CG&E agreed as a result of the grievance to allow Colbert to bid back into such position in the future if his performance improved. (Col. Dep. III, Ex. 35 p. 136). According to Colbert, Local 1347 notified him that it would not pursue the grievance to arbitration on or about September 30, 1999. (Complaint, ¶6, J-I)

Colbert filed a previous lawsuit in federal court over this demotion, which case was captioned *Colbert v. CG&E, et al.*, (C-1-97-685)[3] (Col. Dep. III, pp. 31-33). The Court in that case (C-1-97-685) issued a Judgment (Col. Dep. III, Ex. 2) on February 8, 1999 granting Motions for Summary Judgment filed by CG&E and Local 1347. In issuing such Judgment, the Court found that CG&E and Local 1347 were parties to a collective bargaining agreement and that such agreement provided that CG&E could discharge an employee for proper and legitimate reasons. The Court also found that prior to Colbert's demotion Colbert had accumulated thirteen (13) records of disciplinary action.[4] The Court found that CG&E and Local 1347 settled the grievance on the basis set forth above. The Court also concluded that CG&E was free to consider Colbert's past work record, including past disciplinary incidents, in deciding to demote Colbert. The Court ultimately concluded, in respect to Colbert's claim against CG&E, that CG&E was well within the parameters of the collective bargaining agreement in the demotion of Colbert and that Colbert failed to present any evidence to the contrary.

In respect to Colbert's claim against Local 1347 in "Colbert I," the Court concluded that Local 1347's "determination that Plaintiff's grievance lacked merit was neither irrational nor an

---

[2] References to Colbert depositions shall be designated as follows: The first deposition of Colbert was taken in a prior case referenced below and is attached (with Exhibits) as Ex. 5 to his deposition of Nov. 11, 2004, and shall be referred to herein as "Col. Dep. I"; Colbert was also deposed in this matter on February 10, 2003 and reference thereto shall be designated as "Col. Dep. II"; Colbert's last deposition was taken 11/11/04 and shall be designated as "Col. Dep. III".
[3] Further references to this previous litigation between the parties will be referred to as "Colbert I."
[4] The thirteen (13) disciplinary actions are attached as exhibits to the depositions taken of Colbert in Case C-1-97-685 which are marked as Exhibit 5 to the 11/11/04 Colbert Deposition. The disciplinary actions are enumerated in CG&E's letter of demotion dated August 11, 1995 and attached as Exhibit 52 to Ex. 5 in the 11/11/04 Colbert Deposition.

4

arbitrary decision" and that "there is no evidence that the Union acted in bad faith" (without citations). The Court went on to say that Colbert's poor work record was such that CG&E was more than justified in demoting him. The Court then concluded that Colbert's arguments were without merit and that Local 1347 was also entitled to summary judgment. (Col. Dep. III, Ex. 2)

From the time of Colbert's demotion in 1995 to the date of his discharge on March 8, 2000, Colbert received the following discipline from CG&E:

1. July 7, 1995 – oral warning for inattention to Pole Truck driver and sleeping in truck;
2. December 1, 1995 – oral warning for poor job performance (refusal to dig more than one pole per day);
3. January 26, 1996 – counseled on possibly bringing firearms onto CG&E property;
4. May 30, 1996 – written warning for poor job performance (included damaging truck radio and a chain saw blade);
5. February 27, 1997 – oral warning for tardiness;
6. July 23, 1997 – oral warning for tardiness on July 4, 17 and 22;
7. July 31, 1997 – written warning for absenteeism;
8. August 26, 1997 – one (1) day suspension for insubordination;
9. November 5, 1998 – counseled for careless performance;
10. May 12, 1999 – taking Company vehicle without authorization;
11. June 1, 1999 – late for work;
12. June 18, 1999 – oral warning for poor performance (failure to stay with escort vehicle);
13. July 1, 1999 – oral warning for insubordination (failure to pick up keys to vehicle);
14. July 28, 1999 – counseled for poor work performance on July 20 and 21 (not stocking vehicles as assigned and not putting equipment away as assigned);
15. August 20, 1999 – written warning for overall poor work performance (precipitated by leaving truck running while inside building playing computer games);
16. August 27, 1999 – one (1) day suspension for overall poor job performance (triggered by refusal to return to work after United Way Tour);
17. August 28, 1999 – failure to show for overtime;
18. August 31, 1999 – late for work;
19. September 9 through October 8, 1999 – on short term disability (failed to provide proper documentation from physician);
20. October 25, 1999 – three (3) day suspension for overall poor work performance on October 15, 1999 (using abusive and profane language toward supervisor and late October 81, 20, 22 and 23, 1999);

5

    21.    December 14, 1999 – five (5) day suspension for continued overall poor work performance (tardy 10/29 and three (3) days of unpaid absence on November 3, 15 and December 9, 1999).
(Col. Dep. III, Ex. 38, and Ex. 19-30)

On the morning of March 2, 2000, Colbert was assigned by his leadperson to one of two tasks; sawing poles or painting (Bri. Dep. 128),[5] and according to his supervisor, Donald Bricking, Colbert refused to do either because he claimed "he didn't want to get dirty." (Bri. Dep. p. 126) Colbert said he had a grievance meeting in the afternoon and didn't have clothes (or time) and "didn't want to get dirty and smelly before he went to the union meeting." (Bri. Dep. p. 126)

Bricking told Colbert that he could not just sit around and do nothing and Colbert said he would take a day of vacation (Bri. Dep. p. 127). Bricking informed Colbert that he could not because he had a meeting in the afternoon and he was not at liberty to grant partial vacation days (Bri. Dep. p. 127) Bricking informed his immediate supervisor, Ken Miller, of the situation and was advised to indefinitely suspend Colbert if he continued to refuse his directions. (Bri. Dep. 127-32, 136) Bricking told Colbert he would have to do the assigned tasks or he would be insubordinate and indefinitely suspended. (Bri. Dep. 127, 131) Colbert responded, then suspend me. (Dep. 127)

Bricking testified:

    Q.    You said you gave him an indefinite suspension, what was that for?

    A.    For not doing what he was told.

    Q.    Was it insubordination?

    A.    That's insubordination, yes. (Bricking Dep. p. 133)

---

[5] The deposition of CG&E supervisor Donald Bricking was taken by Plaintiff on December 10, 2004. References to such deposition shall be designated as "Bri. Dep. __."

Bricking confirmed what happened in a contemporaneously prepared memo. (Bri. Dep. Ex. 51)

After the indefinite suspension, a disciplinary hearing was held on March 8, 2000, wherein Colbert was represented by a steward of his own choosing, Joe Stark, and given the chance, offered no reasonable explanation for his conduct. (Bri. Dep. p. 137; Col. Dep. III Ex. 31) CG&E decided to terminate Colbert based upon his past disciplinary record which consisted of at least 16 oral warnings for job performance problems and 15 other disciplinary actions above the oral warning step, including recent one (1) day, three (3) day, and five (5) day suspensions. (Col. Dep. III, Ex. 31) The reasons for CG&E's decision to terminate were set forth in a letter to Colbert which stated:

> "… there is no doubt that our many attempts to impress upon you the necessity to comply with company rules and policies have failed. Based on your continued misconduct it is obvious that improvement in your performance will not occur. Therefore, you were informed that your employment with the Company was terminated." (Col. Dep. III, Ex. 31)

Colbert acknowledged that prior to his termination Local 1347 filed and processed a number of grievances on his behalf. (Col. Dep. III, p. 132) He also acknowledged that Local 1347 had obtained relief for him through the grievance procedure on several occasions in the past. In one grievance, Local 1347 convinced CG&E to take certain matters out of a warning letter in his file (Col. Dep. III, pp. 134-135) and on another grievance got CG&E to agree that he could bid back into the position of driver after his demotion in 1995 if his performance improved. (Col. Dep. III, p. 136)

Local 1347 also filed a grievance over Colbert's March 8, 2000 termination. (Col. Dep. III, pp. 136-137, Ex. 36) Colbert also acknowledged that he went to a grievance meeting over his termination, and that Local 1347 representatives represented him at such meeting. (Col. Dep. III, pp. 137-138) Colbert further acknowledged, in respect to the third step grievance meeting,

7

that he was "given a chance to speak at that meeting, give your position with respect to your termination" (Col. Dep. III, p. 139). Colbert also acknowledged receiving a copy of CG&E's third step answer which denied the grievance and upheld the termination. (Col. Dep. III, p. 139) Colbert also acknowledged receiving a letter from Local 1347 dated August 3, 2000 which advised Colbert that based upon CG&E's refusal to reinstate as set forth in the aforementioned third step answer, that Local 1347 had no other alternative but to accept such answer "[u]nless you (Plaintiff) can submit further evidence in writing to support your grievance by 4:00 p.m. on August 11, 2000…" (Col. Dep. III, p. 140; Ex. 39)

Colbert claims he went to the Local 1347 union hall to meet with Business Manager Frank Kelly and Assistant Business Manager Kenny Gross, after receipt of such letter, but did not give Local 1347 any new information. (Col. Dep. III, p. 142) Kelly advised Colbert, after receiving no reasonable explanation for his actions, that the grievance had no merit and that Local 1347 would not pursue the grievance any further. (Col. Dep. III, p. 142; Kelly Affidavit)[6]

## ARGUMENT

**I.     STANDARD OF REVIEW**

    **A.     SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56(c) empowers the Court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (*DIC v. Alexander*, 78 F.3d 1103, 1106 (CA 6, 1996). The Supreme Court has affirmed the Court's use of summary

---

[6] Kelly does not recall Colbert ever contacting him after receipt of such letter, or offering to pay for the arbitration (Kelly Affidavit attached hereto as Ex. A), but such differences are not material as set forth below. Kelly does confirm that Colbert never produced any "further evidence" after receipt of such letter.

8

judgment as an integral part of the fair and efficient administration of justice and it is not a disfavored procedural short-cut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

When the moving party establishes by the use of the material and documents specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, then the opposing party must come forward with "specific facts showing there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, the requirement is that there be no genuine issue of material fact." *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). While the evidence and all inferences therefrom must be drawn in favor of the non-moving party, mere allegations or denials will not meet the burden of showing a genuine issue of material fact for trial. *Matusushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson, supra* 477 U.S. at 248. Further, the non-moving party cannot rest on its pleadings to avoid summary judgment. It must support its claim with some probative evidence. *Kraft v. United States*, 991 F.2d 292, 296 (CA 6, 1993).

### B.    BREACH OF CONTRACT/DUTY OF FAIR REPRESENTATION

The Complaint filed by Colbert alleges that the instant action is a "hybrid action" which implies that Colbert is alleging[7] a breach of the collective bargaining agreement by CG&E and a breach of the duty of fair representation by Local 1347.[8] The Supreme Court has indicated that to prevail in this type of case, a plaintiff must prove the company breached the contract and the union did not meet its duty of fair representation… *Hines v. Anchor Motor Freight, Inc.*, 424

---

[7] Local 1347 uses the term "alleging" because one can viably argue that no such claim is made in the Amended Complaint against CG&E, but rather only a race discrimination claim.
[8] Colbert also makes a Title VII race discrimination claim against CG&E but such claim against Local 1347 was previously dismissed by the Court.

U.S. 554, 570 (1976). The allegations involving the breach of contract by an employer are properly governed by the precedent developed around §301 of the Labor Management Relations Act, codified as 29 U.S.C. §185. However, the concept of fair representation is a more nebulous legal standard. As set forth in *Driver v. United States Postal Service, Inc.,* 328 F.3d 863, 868, 869 (CA 6, 2003):

> A union's duty of fair representation derives from the union's status as the employees' exclusive bargaining representative, for "the exercise of a granted power to act in behalf of others involves the assumption toward them of a duty to exercise the power in their interest and behalf." *Steel v. Louisville & Nashville R. Co.*, 323 U.S. 192, 202, 89 L. Ed. 173, 65 S.Ct. 226 (1944). The Supreme Court defined this duty in *Vaca v. Sipes* to mean that "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190. This test applies to all union activity, *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67, 113 L. Ed. 2d 51, 111 S. Ct. 1127 (1991), and describes "three separate and distinct possible routes by which a union may be found to [***9] have breached its duty." *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 584 (6th Cir. 1994).
>
> The duty of fair representation does not require that a union fully pursue every grievance filed.

It is also well settled that an employee has no absolute right to have his/her grievance arbitrated. Id. at 869. A union's decision not to pursue a grievance, based on a thorough investigation of the employee's complaint and a reasonable conclusion that such does not merit arbitration does not violate a union's duty of fair representation. *Williams v. Molpus*, 171 F.3d 360, 366-67 (CA 6, 1999) "A union does not have to process a grievance that it deems lacks merit, as long as it makes that determination in good faith." Id. at 366-67.

A union does not breach its duty of fair representation when it makes a good faith determination that an employer's determination to discharge an employee was appropriate, *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1340-41 (CA6 1975), cert. den'd, 425

10

U.S. 981 (1976). When a union's decision not to pursue a grievance further is based on its "reasonable and informed conclusion" that it "should not be pursued" it does not breach its duty of fair representation. *Driver, supra*, at 870.

There can be no breach of duty of fair representation unless its actions are "arbitrary, discriminatory, or in bad faith." *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 75 (1991). In determining whether a union's decision not to pursue a grievance is arbitrary, it is clear that "mere negligence" or "poor judgment" is not enough to establish a breach. *Walk v. P.I.E. Nationwide, Inc.*, 958 F.2d 1323, 1326 (CA 6, 1992). A "union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness'… as to be irrational." *O'Neill, supra* at 67. The relevant inquiry is not whether a union acted "incorrectly, but whether it acted in bad faith," or extremely arbitrarily, or discriminatorily. *Anderson v. Ideal Basic Indus.*, 804 F.2d 950, 953 (CA 6, 1986). In fact, "a union acts arbitrarily only if 'it handles a grievance in a "perfunctory" manner, with caprice or without rational explanation.'" *Linton v. United Parcel Serv.*, 15 F.3d 1365, 70 (CA6, 1994) (quoting *Poole v. Budd Co.*, 706 F.2d 181, 183 (CA 6, 1983).

   i.   **Colbert's Claim of Improper Demotion**

Colbert claims in paragraph 6(I-K) and paragraph 8 of the Complaint that Local 1347 would not pursue to arbitration his 1995 grievance over his demotion from his status as a driver. This claim must fail as to Local 1347 on the basis of *res judicata* in that this very same (identical) claim was plead and litigated by Colbert in *Colbert v. CG&E, et al.*, C-1-97-685. The Court therein granted judgment to Local 1347 and CG&E on their respective motions for summary judgment. (Col. Dep. III, Ex. 2) *Res judicata* bars a subsequent action between the same parties based upon the same claims. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394,

11

398 (1981); *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (CA 6, 1995) This doctrine precludes re-litigation of claims actually litigated as well as claims that could have been litigated. *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 797 N.4 (1996). Thus, Colbert's claim against Local 1347 in this regard must be dismissed.

Colbert's claim against Local 1347 in respect to his 1995 demotion and Local 1347's decision not to arbitrate the same is also barred by the applicable statute of limitations. Colbert claims in his Complaint, that he was notified "on or about September 30, 1999"[9] that Local 1347 would not seek arbitration of his demotion grievance. (Complaint, ¶6(K)) The appropriate statute of limitation under 29 U.S.C. §185 is six (6) months. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151 (1983). The original Complaint in this matter was filed on October 30, 2000, more than a year later. Accordingly, not only is Colbert's improper demotion claim subject to dismissal on the basis of *res judicata* but also on the basis of the applicable statute of limitations.

### ii.  **Breach of Contract**

Colbert's second claim against Local 1347 is for "ineffective and/or non existence" representation of his grievance on his dismissal on March 8, 2000. (Complaint, ¶8) As set forth above, whether plead against CG&E or not, Colbert cannot prevail against Local 1347 for breach of duty of fair representation without also providing that CG&E breached the collective bargaining agreement in discharging him from employment on March 8, 2000.

Before a union incurs any obligation towards an employee grievant, there must first be a breach of the collective bargaining agreement by an employer. *Vencl v. Int'l Union of Operating*

---

[9] Although not dispositively relevant herein, inasmuch as Colbert admits receiving notice of Local 1347's decision not to arbitrate his demotion grievance more than a year before filing this lawsuit, in Local 1347's Motion for Summary Judgment in the prior civil action (C-1-97-685), Local 1347 attached an affidavit of Business Manager Frank Kelly to its Motion for Summary Judgment that provided that Colbert was notified of such decision prior to May, 1997.

*Engineers, Local 18*, 137 F.3d 420, 424 (CA 6, 1998) (citing *White, supra*). Absent such a breach, Colbert cannot prevail against Local 1347. *Hines, supra* at 570.

The only portion of the collective bargaining agreement mentioned by Colbert in the Complaint is Article II, Section 1, which is the grievance procedure. It is well settled, as set forth above, that an employee does not have an absolute right to have a grievance pursued through arbitration. *Vaca, v. Sipes*, 386 U.S. 171, 191 (1967). Accordingly, CG&E cannot be found to have violated the collective bargaining agreement in such regard.

Colbert alleges (without making any reference to the parties' collective bargaining agreement) that he was wrongfully dismissed on March 8, 2000 (Complaint, ¶9). The collective bargaining agreement expressly provides in Article I, Section 9.(a):

> **Section 9.** (a) Except where expressly abridged by a specific provision of this Agreement, the Union recognizes that the management of the Company, the direction of the working forces, the determination of the number of men it will employ or retain in each classification, and the right to hire, suspend, discharge, discipline, promote, demote or transfer, and to release employees because of lack of work or for other proper and legitimate reasons are vested in and reserved to the Company.
> (Col. Dep. III, Ex. 3)

This provision of the collective bargaining agreement is essentially a management rights clause, which grants CG&E wide decision making authority over those matters set forth therein, subject only to the express limitations contained in the collective bargaining agreement. In that regard, CG&E reserved unto itself the right to discharge and discipline its employees, including Colbert for "proper and legitimate reasons."

CG&E discharged Colbert in this matter for an act of insubordination on March 2, 2000 and based upon his past disciplinary record which consisted of at least sixteen (16) oral warnings for job performance problems and fifteen (15) other disciplinary actions above the oral warning

13

step, including multiple suspensions of various days without pay.  This Court, in the prior lawsuit (C-1-97-685) (Colbert I) concerning Colbert's demotion, expressly provided:

> "… CG&E was free to consider Plaintiff's past work history, including past disciplinary incidents, together with his more recent accident in its decision to demote Plaintiff."  (Col. Dep. III, Ex. 2)

Thus, CG&E cannot be held to be in violation of the collective bargaining agreement in discharging Colbert for multiple additional disciplinary infractions committed since the time of his demotion.  As CG&E aptly stated in Colbert's termination letter, "… there is no doubt that our many attempts to impress upon you the necessity to comply with company rules and policies have failed.  Based on your continued misconduct, it is obvious that improvement in your performance will not occur."  (Col. Dep. III, Ex. 31)

As the Court provided in Colbert I, demoting Colbert for such reasons was "well within the parameters of the collective bargaining agreement." (Col. Dep. III, Ex. 2)  To discharge Colbert, in part, for his woeful work and disciplinary record, is also "well within the parameters of the collective bargaining agreement," and Colbert has not and cannot produce any evidence to the contrary.  As such, Colbert cannot establish a hybrid §301 claim.  *White, supra* at 559-60.  See also *Bagsby v. Lewis Bros., Inc.,*, 820 F.2d 799, 801 (CA 6, 1984), and it is thus not necessary to even address Colbert's claim of a breach of duty of fair representation.  (See Judgment in Colbert's earlier lawsuit (Col. Dep. III, Ex. 2, p. 8).

### iii. Breach of Duty of Fair Representation

Although it is not even necessary to address Colbert's breach of duty of fair representation claim inasmuch as Colbert cannot prove a breach of contract, as a matter of law, Colbert cannot prevail on this claim either.  The grievance of Colbert concerning his discharge

14

was pursued in good faith and Local 1347's decision not to seek arbitration, because the grievance was not meritorious, was not arbitrary, discriminatory, or in bad faith.

Colbert cannot prevail simply by arguing that the discharge grievance may have been meritorious or that Local 1347 may have been negligent or remiss in prosecuting such grievance. *Vaca, supra* at 195; *Poole, supra* at 187. Rather, to prove a breach of duty of fair representation in the context of grievance administration, Colbert must prove that Local 1347's conduct toward Colbert was arbitrary, discriminatory, or in bad faith. *Vaca, supra* at 190. However, when a union considers the merits of an employee's grievance and decides that such is not meritorious, an employee can only prevail by showing that the union's decision was in bad faith. *Dill v. Greyhound Corp.*, 435 F.2d 231, 238 (CA6, 1970) cert. den'd 402 U.S. 952 (1971). Local 1347 considered the merits of Colbert's grievance and decided that such grievance was not worthy of arbitration. (Kelly Affidavit) Even if this decision was incorrect, such would not be tantamount to "bad faith" and Local 1347 could not be found to have breached its duty of fair representation. *Dill, supra* at 238.

Further, Colbert's complaint does not allege bad faith on the part of Local 1347. In fact, the Complaint does not allege arbitrary, or discriminatory conduct. "Ineffective" or "non-existent" are not the legal standards set forth by the Supreme Court or the Sixth Circuit. *Vaca, supra* at 195; *Poole, supra* at 183. Giving Colbert the benefit of the doubt, that this claim has been properly plead, still requires Colbert to show fraud, deceitful or dishonest action on the part of Local 1347 to establish "bad faith." *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 299 (1981). Kelly's decision not to pursue arbitration was not "so far outside a 'wide range of reasonableness'…" as to be irrational. *O'Neill, supra* at 67. His decision cannot be considered to have been rendered in a "perfunctory manner, with caprice or without rational explanation."

15

*Linton, supra* at 1370. Simply arguing that Local 1347 did not take Colbert's grievance to arbitration or argue as aggressively as it could does not establish a §301 violation and as a matter of law is not enough to withstand a motion for summary judgment. *Mock v. T.G & Y. Stores, Co.*, 971 F.2d 522 (C 10, 1992). Nonetheless, it is clear from the uncontroverted evidence that Local 1347 did take adequate steps in respect to Colbert's grievance.

Colbert freely acknowledged that Local 1347 presented a third step written grievance protesting his termination (Col. Dep. III, pp. 136-137, Ex. 36), permitted him to select a representative of his choice for the actual termination hearing (Col. Dep. III, p. 117, 123, 125), and attended the third step grievance meeting on his behalf and permitted him to present his side of the story and his defenses. (Col. Dep. III, p. 138, 139) Colbert also acknowledged that Local 1347 had presented written grievances on his behalf in the past and obtained positive and satisfactory relief. (Col. Dep. III, pp. 134-135, 136)[10]

Local 1347's Business Manager, Frank Kelly, investigated the grievance, met with Colbert concerning his version of the precipitating incident of March 2, 2000, represented Colbert at the third step grievance meeting, consulted with his International representative, and considered the Court's judgment in Colbert I in respect to CG&E's authority and right to use Colbert's work and disciplinary record, and came to the conclusion not to seek arbitration of Colbert's grievance as such was without merit. (Kelly affidavit) Even after arriving at such

---

[10]Colbert also acknowledged in Colbert I (Case C-1-97-685) that Local 1347 had acted on other occasions than set forth above to protect his contractual rights. When Colbert received his very first warning in 1990, he was represented by Mr. Burton, a union steward, who represented him adequately. (Col. Dep. I, p. 19) Later in 1990, when being warned for problems with his driving training, Colbert again admitted that Union representative Bill Campbell did an "adequate job of representation." (Id. at 33) This pattern of discipline and "adequate" union representation appears throughout Colbert's work history (Id. at 234-235), including but not limited to Local 1347's filing and processing two (2) separate grievances over his demotion and prior discipline which resulted respectively in CG&E agreeing to consider Colbert for promotion to driver again upon improving his performance and having two (2) records of discipline removed from his employment file. (Col. Dep. III, pp. 136) These repeated instances of successive acts of effective representation hardly suggests any bad faith, arbitrary or discriminatory conduct toward Colbert.

16

conclusion, Kelly offered Colbert the opportunity to offer new evidence prior to withdrawing the grievance, and only after Colbert was unable to do such was the grievance withdrawn. (Kelly affidavit)[11]

Local 1347 had the discretion to decline to arbitrate based on its own evaluation of the merits, even if its evaluation was inaccurate. *Poole, supra* at 181. Such decision was neither wholly irrational nor an arbitrary decision. *Kaiser, supra* at 660. Moreover, there is no evidence that Local 1347 acted in bad faith. *Dill, supra* at 238.

### CONCLUSION

In light of the above undisputed material facts and dispositive authority, it is abundantly clear that there is no factual or legal support for Colbert's claims that CG&E breached the collective bargaining agreement or that Local 1347 breached its duty of fair representation. As such, it is respectfully submitted that Local 1347 is entitled to summary judgment in its favor in this action and Colbert's Complaint should be dismissed as to Local 1347.

Respectfully submitted:

SNYDER, RAKAY & SPICER

By:  /s/ Jerry A. Spicer
    Jerry A. Spicer (0011385)
    Trial Attorney for Defendant
    IBEW Local 1347

---

[11] Colbert acknowledges that he was notified by Local 1347 that it intended to withdraw the grievance unless Colbert had new evidence (Col. Dep. III, p. 142) but argues that he offered to pay for the matter to be arbitrated. [Kelly does not remember such an offer being made by Colbert, but would not have arbitrated such matter even if such an offer had been made as the grievance was without merit (Kelly affidavit)] Even if such an offer was made, it did not obligate Local 1347 to do so, and does not turn this matter into a viable breach of duty of fair representation.

The Supreme Court, in *Vaca, supra* at 191, previously concluded that an employee does not have an absolute right to have his grievance taken to arbitration and accordingly "frivolous grievances are ended prior to the most costly and time-consuming step in the grievance procedure." Colbert's willingness to pay does not change such position. This Court concluded the same in Colbert I. (Col. Dep. III, Ex. 2)

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing Motion for Summary Judgment and Memorandum in Support thereof, was electronically filed this 14th day of January, 2005, and will therefore be electronically mailed to:

    Ariane Schalwig Johnson ariane,johnson@cinergy.com, Attorney for Defendant Cincinnati Gas & Electric Company, and
    Rose Ann Flemming fleming@xzvier.edu, Attorney for Plaintiff

          /s/ Jerry A. Spicer
          Jerry A. Spicer
          RAKAY, SPICER & LEDBETTER
          11 W. Monument Bldg., Suite 307
          Dayton, OH  45402
          (937) 228-2696
          (937) 228-5248 (Fax)
          Trial Attorney for Defendant
          IBEW Local 1347