Service: **Get by LEXSEE®**
Citation: **1993 U.S. App. Lexis 4666**

*1993 U.S. App. LEXIS 4666, **

GENTRY P. TRANSOU, Plaintiff-Appellant, v. ELECTRONIC DATA SYSTEMS CORPORATION, Defendant-Appellee.

No. 91-2047

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

1993 U.S. App. LEXIS 4666

March 4, 1993, Filed

**NOTICE:** [*1]

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 24 LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 24 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:** Reported as Table Case at 986 F.2d 1422, 1993 U.S. App. LEXIS 9580.

**PRIOR HISTORY:** United States District Court for the Eastern District of Michigan. District No. 90-70316. Gadola, District Judge.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant employee brought an action against appellee employer for race and age discrimination under the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 et seq. (1991), and on claims of breach of express and implied contract. After the United States District Court for the Eastern District of Michigan granted a defense summary judgment, the employee appealed.

**OVERVIEW:** A poor performer, the employee was put on a performance improvement plan (PIP). Although he improved, he then slipped again and was terminated. The district court granted a defense summary judgment. On the employee's appeal, the court affirmed. It rejected claims that the PIP created an express agreement to terminate only for just cause or that the employer's statements and procedures created a legitimate expectation that he would be discharged only for cause. The court found that the mere listing of discharge procedures did not create a just-cause contract and that there was no showing that the employee had relied thereon. The court also agreed with the dismissal of the employee's race discrimination claims, finding that the employee failed to rebut the employer's legitimate reason for discharge, that the employee's affidavit, which contradicted his deposition testimony, was incompetent, and that the employee failed to establish a prima facie case of intentional discrimination based on race. The dismissal of employee's disparate treatment and intention discrimination claims based on age was also proper based on employee's failure to adduce required threshold evidence.

**OUTCOME:** The court affirmed the grant of a defense summary judgment by the district court.

**CORE TERMS:** trainee, disparate treatment, termination, deposition testimony, prospectus, terminate, age discrimination, intentional discrimination, employee handbook, deposition, disclaimer, younger, qualitatively, sheet, similarly situated, terminated, discharged, genuine issue of material fact, race discrimination, prima facie case, summary judgment, protected class, non-discriminatory, predisposition, discriminate, predisposed, unequivocal, contradicts, at-will, legitimate expectation

## LexisNexis(R) Headnotes ♦ Hide Headnotes

Labor & Employment Law > Discrimination > Racial Discrimination > Other Laws
Labor & Employment Law > Discrimination > Age Discrimination > Other Laws
**HN1** The Elliott-Larsen Civil Rights Act states that an employer shall not discharge an individual because of race, color, or age. Mich. Comp. Laws § 37.2202(1)(a) (1991). More Like This Headnote

Labor & Employment Law > Employment Relationships > At-Will Employment
Contracts Law > Types of Contracts > Employment Contracts
**HN2** The presumption of employment-at-will may be overcome by proof that both parties intended to be bound by a provision forbidding discharge in the absence of just cause. Also, "lifetime" employment contracts are extraordinary and, being so, must be expressed in clear and unequivocal terms before a court will conclude that an employer intended to enter into such a weighty obligation. More Like This Headnote

Labor & Employment Law > Employment Relationships > At-Will Employment
Contracts Law > Types of Contracts > Employment Contracts
**HN3** The mere enumeration by an employer of reasons or procedures for discharge does not create a just-cause employment contract. More Like This Headnote

Labor & Employment Law > Employment Relationships > At-Will Employment
Contracts Law > Types of Contracts > Employment Contracts
**HN4** Statements to the effect that an employee is doing a good job and would be rewarded for improving his job performance represent expressions of optimism and hope. They do not constitute the sort of "clear and unequivocal" oral statements of job security required to conclude that an employer intends to agree to be bound by a provision forbidding discharge in the absence of just cause. More Like This Headnote

Labor & Employment Law > Employment Relationships > At-Will Employment
**HN5** An employee manual expressing an employer's termination-at-will policy extinguishes any legitimate expectations of a policy that an employee will be discharged only for cause. More Like This Headnote

Labor & Employment Law > Employment Relationships > At-Will Employment
**HN6** The unequivocal language of an employer's policy statement means what it says. More Like This Headnote

Labor & Employment Law > Employment Relationships > At-Will Employment
**HN7** An employee's receipt of an employee's handbook is not crucial. Reasonable, not actual, notice suffices to effect a unilateral change in policy. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment
Labor & Employment Law > Discrimination > Racial Discrimination > Other Laws
**HN8** A race discrimination claim under the Elliott-Larsen Civil Rights Act presents the

parties with well-defined evidentiary burdens. First, plaintiff must establish a prima facie case (i.e., a presumption) of discriminatory treatment by proving disparate treatment and/or intentional discrimination. The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. Last, the burden reverts to the plaintiff to establish that the employer's reason was merely pretextual, a burden fulfilled by demonstrating that a discriminatory motive more likely motivated the employer and/or that the reason given is unworthy of belief. More Like This Headnote

Civil Procedure > Summary Judgment > Supporting Papers & Affidavits

HN9 A party may not create a factual issue for the purpose of defeating a motion for summary judgment by filing an affidavit, after a motion for summary judgment has been made, which contradicts his earlier deposition testimony. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof

HN10 Fed. R. Civ. P. 56(e) provides that an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment
Civil Procedure > Summary Judgment > Burdens of Production & Proof

HN11 Where the affidavit filed by an employment discrimination plaintiff directly contradicts his previous deposition testimony and lacks specificity, the affidavit is insufficient to rebut evidence of defendant's non-discriminatory legitimate reason for plaintiff's discharge. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment

HN12 To raise a rebuttable presumption of intentional discrimination, a plaintiff must prove by a preponderance of the evidence that he was a member of a protected class, that he was discharged, and that the person discharging him was predisposed to discriminate against persons in the protected class and had actually acted on that predisposition in discharging him. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment

HN13 An allegation that similarly-situated younger employees made similar or worse mistakes than plaintiff but were not terminated or disciplined in any fashion amounts to a claim of disparate treatment. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment

HN14 Under a disparate treatment theory of age discrimination, a plaintiff can create a rebuttable presumption of age discrimination by showing (1) that he was a member of the class entitled to protection under the act and (2) that for the same or similar conduct, he was treated differently than those who were not members of the protected class. There can be no finding of disparate treatment based on comparisons of factually unique and qualitatively dissimilar incidents. The proper comparison is between plaintiff and comparable, qualified members of the unprotected group. A plaintiff must show that he was more severely disciplined than younger similarly situated employees who engaged in qualitatively similar misconduct. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment

HN15 As to the second prong of the test which a plaintiff must meet to make a prima facie case under a disparate treatment theory of age discrimination, plaintiff must allege that he was more severely disciplined than younger employees who

engaged in similar misconduct. More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Defenses & Exceptions

**HN16** Where an employee has differing expectations for employees in different job classifications, the employer has a rational basis for treating differently their respective misdeeds. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment
Labor & Employment Law > Discrimination > Age Discrimination > Other Laws

**HN17** A plaintiff can raise a presumption of age discrimination under the Elliott-Larsen Civil Rights Act by showing intentional discrimination. In this respect, a plaintiff must (1) show that he is a member of the affected class, (2) that adverse employment action was taken against him, (3) that the person responsible for this adverse action was predisposed to discriminate against persons in the affected class, and (4) that the person actually acted on this predisposition with respect to the plaintiff. More Like This Headnote

**JUDGES:** BEFORE: RYAN and SUHRHEINRICH, Circuit Judges, and HIGGINBOTHAM, Senior Circuit Judge. *

* The Honorable A. Leon Higginbotham, Jr., Senior Circuit Judge of the United States Court of Appeals for the Third Circuit, sitting by designation.

**OPINIONBY:** PER CURIAM

**OPINION: PER CURIAM.** In this employment case, plaintiff, Gentry Transou, appeals the district court's grant of summary judgment in favor of defendant, Electronic Data Systems Corporation, on plaintiff's claim of race and age discrimination under Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101-.2804 (1991) n1 and on plaintiff's claim of breach of express and implied contract under Toussaint v. Blue Cross & Blue Shield of Michigan, 308 Mich. 579 (1980). Finding [*2] that no genuine issues of material fact exist and that defendant is entitled to judgment as a matter of law, we AFFIRM.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The relevant portion of **HN1** the Michigan Elliott-Larsen Act states that "an employer shall not . . . discharge . . . an individual . . . because of . . . race, color, [or] age. . . ." 37 M.C.L. § 37.2202(1)(a) (1991).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

I.

In 1962, plaintiff, a black male, commenced employment with General Motors Corporation (GM) as an assembler. Later, still for GM, he worked in various data processing jobs. In 1984, GM acquired, and transferred all of its computer operations to, defendant Electronic Data Systems (EDS). As a result, plaintiff and other data processing employees, formerly with GM, started working directly for defendant EDS.

Soon after the transition, defendant offered its employees, including plaintiff, the opportunity to participate in a stock incentive plan (SIP), which allowed employees to purchase EDS stock at a fixed price. To facilitate and to encourage participation in the SIP, defendant [*3]

prepared and circulated a prospectus, which stated, in part, the following:

> **No Effect on Employment.** Nothing herein contained, including the sale or award of any shares and the grant of any rights or options, shall affect the right of the Company [EDS] to terminate any participant's employment at any time for any reason.

Plaintiff opted to participate in the SIP, and to that end, acknowledged in writing receipt of a copy of the prospectus.

After holding three different positions with defendant from January 1985 through May 1988, plaintiff settled into a position as a computer operator at defendant's Lake Orion, Michigan, Data Center. The Data Center was responsible for operating computer programs and schedules necessary to control automobile production and administration and financial systems at GM's adjacent Lake Orion assembly plant. As a computer operator at the Data Center, plaintiff managed production schedules and other systems for GM's assembly plant. Two other computer operators, Terrance Baker, a white male, and Paul Sanchez, a hispanic male, worked with plaintiff. Like plaintiff, they were former GM employees who transferred to EDS after it was acquired [*4] by GM.

In addition to the three computer operators at the Data Center, six other individuals ran computer programs and schedules. Defendant classified them as Operation Programs Development (OPD) trainees. Plaintiff's contention notwithstanding, although OPD's trainees worked at times with computer operators, they were classified differently by defendant. According to defendant, OPD trainees had to complete a very structured and ordered course of training and then received "on-the-job training" at a "Data Center, working side-by-side with computer operators performing operator functions."

In May 1989, Ed Speck, plaintiff's immediate supervisor and "team leader," appraised plaintiff's performance and concluded that plaintiff consistently failed to meet expectations. Consequently, Speck rated plaintiff as "Solid Generally Meets," the second lowest performance rating and one that draws the concern of EDS management.

After his appraisal, plaintiff's performance oscillated between acceptable and unsatisfactory. Plaintiff acknowledged the inconsistencies in his performance and admitted that his supervisors talked to him about improving and maintaining his work performance. However, [*5] shortly after his discussion with his supervisors, plaintiff again performed unsatisfactorily. As a result, Don O'Shea and David Evenson, both upper level managers, met with plaintiff, reviewed certain problem areas, and placed plaintiff on a performance improvement plan (PIP). In relevant part, the PIP addressed three specific problems: (1) failure to complete all operation schedules; (2) failure to communicate properly with system engineers and others; and (3) failure to resolve and document operations malfunctions. The PIP further states that "Each of the items were specified without a time frame. This is to indicate that your performance needs to improve to these levels and consistently be maintained." O'Shea asked plaintiff to sign the PIP and acknowledge his assent to its terms, but plaintiff refused. Although plaintiff did not believe the PIP was necessary, he nonetheless believed that satisfactory performance over the 30-day period of the PIP would allay any concerns on the part of O'Shea and Evenson.

Approximately three months later, after completion of the 30-day PIP period, plaintiff's performance slipped below acceptable standards. He miscommunicated with system [*6] engineers and others, and he failed to follow proper procedures. Plaintiff had made similar

errors in the past, errors that were the subject of the previously issued PIP. As a result, plaintiff was terminated on January 17, 1990. In plaintiff's separation papers, O'Shea stated:

> Transou did not sustain performance as set forth in the performance improvement plan of 11/3/89. [He] was not able to perform the job of computer operator. Deficiencies included procedural errors . . . careless errors . . . effective communication . . . computer schedule errors [and] documentation deficiencies. . . .

This suit followed.

II.

A.

Plaintiff first alleges that by misconstruing Toussaint and its progeny, the district court mistakenly concluded that there was neither an implied nor an express agreement to terminate for just cause. We address each claim separately.

1.

Plaintiff claims that the 30-day PIP represents an expressed agreement to terminate only for just cause. In part the PIP stated that "if satisfactory improvement is not shown immediately and sustained, disciplinary action to include separation will occur." Plaintiff argues that this written language **[*7]** evidences an agreement to terminate for just cause if improved performance was sustained for the duration of the thirty (30) day PIP period. Defendant counters that the PIP is not at all contractual and that it required sustained improvement beyond its 30-day life.

We are somewhat puzzled by plaintiff's claim. The record reveals that in defendant's normal course of business, the issuance of a PIP signals defendant-employer's dissatisfaction with an employee's work performance and, in effect, foreshadows termination if performance remains below acceptable standards. It is odd that plaintiff would construe his PIP, essentially a warning, as an expressed agreement displacing the presumption of at-will employment with a provision to terminate only for cause, especially in light of the fact that plaintiff did not agree to the terms of the PIP and refused to sign it. See Rowe v. Montgomery Ward, 437 Mich. 627, 640-41 (1991) (noting that in addressing Toussaint claims, modicum of realism and common sense is needed).

Furthermore, as the district court noted, the terms of the PIP do not support plaintiff's contention. HN2 The presumption of employment-at-will **[*8]** may be overcome by proof that "both parties intended to be bound" by a provision forbidding discharge in the absence of just cause. Rowe, 437 Mich. at 636. Also "it should be recognized that 'lifetime' employment contracts are extraordinary and, being so, 'must be expressed in clear and unequivocal terms before a court will conclude that an employer intended to enter into such a weighty obligation.'" Rowe, 437 Mich. at 640-41 (quoting Bullock v. Automobile Club of Michigan, 432 Mich. 472, 517 (1989)). Nothing in the PIP guarantees termination for just cause only. Regardless of whether it required short or long term improvement, the PIP bears no indicia of a contract and represents nothing more than defendant's demand that plaintiff improve his performance or risk termination. Accordingly, we conclude that the PIP does not constitute an expressed agreement to terminate for just cause.

**2.**

Plaintiff next argues that defendant's oral statements and written policies and procedures created a legitimate expectation that he would be discharged only for cause. In support of his claim, he [*9] relies on two of defendant's management manuals. Plaintiff cites numerous excerpts from these publications that relate to disciplinary procedures, methods for handling "marginal performers," and various aspects of termination. In addition to defendant's publications, plaintiff refers to verbal encouragement provided by O'Shea and Evenson ("keep up the good work"), and an offer of tickets to sporting events (Evenson's gift to plaintiff of professional basketball tickets) as proof of an agreement implied in fact. He further argues that the disclaimers in the prospectus and employee handbook are of no consequence: "when a plaintiff is alleging a 'legitimate expectations' type of employment contract, disclaimers to a large extent disappear from the analysis." Neither the facts nor the law support plaintiff's claim.

Defendant's oral statements and written policies and procedures do not create an expectation of just cause discharge. Initially, we note that although some of the defendant's employment publications refer to termination procedures, HN3 the mere enumeration of reasons or procedures for discharge does not create a just-cause employment contract. Pratt v. Brown Mach. Co., 855 F.2d 1225, 1234-35 (6th Cir. 1988); [*10] Dell v. Montgomery Ward & Co., 811 F.2d 970, 974 (6th Cir. 1987). More importantly, there is no evidence that plaintiff ever relied on these publications in forming an employment agreement with defendant. Lastly, regarding O'Shea's and Evenson's HN4 statements to the effect that plaintiff was doing a good job and would be rewarded for improving his job performance, such statements represent expressions of optimism and hope, and do not constitute the sort of "clear and unequivocal" oral statements of job security required by Rowe. See 437 Mich. at 640.

Even if we assume that defendant's oral statements and written policies and procedures created a legitimate expectation of just cause discharge, Rowe defeats plaintiff's claim HN5 (an employee manual expressing an employer's termination-at-will policy extinguishes any legitimate expectations of a discharge for cause policy). 437 Mich. at 651. On two occasions, defendant clearly articulated its at-will employment policy. Nine months before plaintiff's termination, defendant distributed its employee handbook, which stated that "all employment with [*11] EDS is at will and may be ended by either party, at any time, without notice." This disclaimer reinforced defendant's previous articulation of its at-will policy in the SIP prospectus, which provided that "nothing contained herein . . . shall affect the rights of the Company to terminate any participant's employment at any time for any reason." Accordingly, under Rowe, the disclaimers in the employee handbook and in the SIP prospectus effectively extinguished any legitimate expectation of just cause termination.

In an effort to overcome the legal effect of the prospectus, plaintiff attempts to read ambiguity into it. Plaintiff contends that the prospectus could be read to mean that recently transferred GM employees then working for EDS were subject to termination for any reason "that an EDS employee could be discharged for." As we have previously noted, HN6 the unequivocal language of an employer's policy statement "means what it says." Dell, 811 F.2d at 974, cited with approval in Rowe, 437 Mich at 649. Plaintiff's "interpretation" amounts to a wholesale revision which we reject.

Plaintiff also seeks to avoid the legal [*12] effect of the employee handbook disclaimer by noting that he never received a copy of the handbook. The record indicates that defendant distributed its handbook in a fair and reasonable manner to all employees more than nine months before plaintiff's discharge. Plaintiff did not offer evidence in the district court challenging this fact. Accordingly, under Grow v. General Products, 184 Mich. App. 379, 386-87 (1990) HN7 (receipt of handbook is not crucial; reasonable, not actual, notice suffices to effect a unilateral change in policy), we conclude that plaintiff's claimed failure to receive

defendant's employee handbook is inconsequential.

**B.**

Plaintiff next argues that the district court erred by granting summary judgment for defendant on his racial discrimination claim. **HN8** A race discrimination claim under the Elliott-Larsen Act presents the parties with well-defined evidentiary burdens. First, plaintiff must establish a prima facie case (i.e., a presumption) of discriminatory treatment by proving disparate treatment and/or intentional discrimination. Sisson v. Bd. of Regents of Univ. of Michigan, 174 Mich. App. 742, 748 (1989). **[*13]** The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. Id. Last, the burden reverts to the plaintiff to establish that the employer's reason was merely pretextual, a burden fulfilled by demonstrating that a discriminatory motive more likely motivated the employer and/or that the reason given is unworthy of belief. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981); Sisson, 174 Mich. App. at 748.

**1.**

Plaintiff complains that he was treated differently from other similarly situated non-black computer operators because all of the operators at the Lake Orion Data Center committed similar errors, but only plaintiff was terminated as a result of these common errors. Defendant counters that it was the repetition and numerosity of plaintiff's errors that distinguished him from his fellow operators and justified termination. The district court ruled that although plaintiff established a prima facie case of disparate treatment, he failed to address the number of errors committed and thus failed to rebut defendant's legitimate reason for discharge. **[*14]**

As the district court noted, and as defendant argues forcefully on appeal, plaintiff admitted in his deposition to making numerous errors, many of which had been the subject of the previously imposed PIP. These admissions include: failure to follow instructions; improper job sequencing; failure to correct misallocation of space; incorrect course of action; operator error; failure to enter proper check digits; improper payroll program change; and improper sequencing. Affidavits submitted by O'Shea and Evenson further support the notion that plaintiff committed a variety of errors more frequently than either of his co-workers -- Baker and Sanchez. We agree with the district court that these proofs are more than sufficient to establish a non-discriminatory legitimate reason for discharge.

In an effort to overcome defendant's proofs, plaintiff filed an eleven page counter-affidavit, in which he asserts a blanket denial of many of the allegations in the O'Shea and Evenson affidavits, and in which he either denies many of his previous admissions made in his deposition or attempts to modify his previous deposition testimony with self-exonerating explanations of his work performance **[*15]** (plaintiff states without support that his errors were "common" and "minor" and that the errors of which defendant complained happened with "every operator"). Plaintiff filed his affidavit approximately one year after giving his deposition testimony and approximately one month after defendant filed its motion for summary judgment.

Plaintiff's affidavit fails to establish a genuine issue of material fact for two reasons. First, **HN9** "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony." Reid v. Sears Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986). Second, plaintiff's attempt to explain away previous admissions lacks the specificity required by **HN10** Rule 56(e) of the Federal Rules of Civil Procedure (an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial").

Accordingly, we conclude <sup>HN11</sup>that plaintiff's affidavit directly contradicts his previous deposition testimony **[*16]** and, in any event, lacks specificity. The affidavit, therefore, fails to rebut defendant's non-discriminatory legitimate reason for plaintiff's discharge.

**2.**

Plaintiff also argues that defendant intentionally discriminated against him because he is black. <sup>HN12</sup>To raise a rebuttable presumption of intentional discrimination, plaintiff must prove by a preponderance of the evidence that he was a member of a protected class, that he was discharged, and that the person discharging him was predisposed to discriminate against persons in the protected class and had actually acted on that predisposition in discharging him. Schipani v. Ford Motor Co., 102 Mich. App. 606 (1981).

In support of his claim, plaintiff states that "EDS is a company steeped in a racist culture and tradition." According to plaintiff, "clear anecdotal evidence" is found in "case books [that] are full of cases involving EDS's black employees many of who [sic] experienced the same routine. . . ." These bald assertions in plaintiff's appellate brief do not constitute evidence.

Plaintiff also submitted a docket sheet of unknown origin as evidence that defendant-corporation is plagued **[*17]** by an unusually high number of race discrimination suits. The docket sheet, however, does not show that the thirty-six indicated cases involved racial discrimination claims. The docket sheet also fails to indicate other important information, such as the court from which it issued (federal or state), the outcome of each case (settled, no cause, etc.) and the time frame during which the cases arose. A vague docket sheet that merely lists cases filed against defendant lacks probative value and constitutes, at best, a scintilla of evidence, which does not suffice to create a genuine issue of material fact under Rule 56 of the Federal Rules of Civil Procedure.

As additional support for his claim, plaintiff charges that O'Shea had a predisposition to fire black employees. Apparently, O'Shea denied vacation to a black employee, who had not accumulated sufficient seniority to qualify for time off. Later, the employee called in sick on the days for which he had requested leave. O'Shea investigated the employee's whereabouts and learned that instead of being ill, the employee had made travel plans. As a result, O'Shea met the employee at the airport, confirmed that he was not sick, **[*18]** and terminated the employee for dishonesty.

We fail to see the discriminatory nature of O'Shea's conduct; he had a legitimate business reason for terminating the employee. The lack of racial animus on O'Shea's part becomes even more apparent when we consider that O'Shea fired two white employees in the past, one for insubordination and the other for breach of security. Indeed, after reviewing O'Shea's deposition testimony, no single event or group of events about which O'Shea testified in his deposition lead us to the conclusion that O'Shea was predisposed to discriminate against blacks. We reach this conclusion after parsing through plaintiff's numerous and misleading characterizations of O'Shea's deposition testimony. Accordingly, after reviewing all the evidence, we agree with the district court that plaintiff failed to establish a prima facie case of intentional race discrimination.

**C.**

Last, plaintiff claims that the district court erred in granting summary judgment for defendant on his age discrimination claim brought under the Elliott-Larsen Act. In his complaint, plaintiff <sup>HN13</sup>alleged that "similarly-situated younger employees made similar or worse mistakes than Plaintiff **[*19]** but were not terminated or disciplined in any fashion." This allegation amounts to a claim of disparate treatment.

The district court concluded that plaintiff had failed to create a presumption of age discrimination. Rejecting plaintiff's disparate treatment theory, the district court found that plaintiff and the younger employees were not similarly situated because plaintiff was a computer operator and the younger employees were trainees (OPD trainees). The court added that there was no proof that defendant ever explicitly commented on plaintiff's age.

Although plaintiff's complaint includes only a disparate treatment theory of discrimination, the district court addressed plaintiff's age discrimination claim as if it were based on both a disparate treatment theory and an intentional discrimination theory. Therefore, we review each separately.

1.

HN14 Under a disparate treatment theory of age discrimination, a plaintiff can create a rebuttable presumption of age discrimination by showing (1) that he was a member of the class entitled to protection under the act and (2) that for the same or similar conduct, he was treated differently than those who were not members of the protected [*20] class. Brewster v. Martin Marietta, Inc., 145 Mich. App. 641, (1985); Schipani v. Ford Motor Co., 102 Mich. App. 606, 617 (1981). There can be no finding of disparate treatment based on comparisons of factually unique and qualitatively dissimilar incidents. Stotts v. Memphis Fire Dept., 858 F.2d 289, 298 (6th Cir. 1988). The proper comparison is between plaintiff and comparable, qualified members of the unprotected group. Segar v. Smith, 738 F.2d 1249, 1265-66 (6th Cir. 1984). A plaintiff must show that he was more severely disciplined than younger similarly situated employees who engaged in qualitatively similar misconduct. Sisson v. Bd. of Regents of Univ. of Michigan, 174 Mich. App. 742, 747 (1989).

HN15 As to the second prong of the test, plaintiff has alleged that he was more severely disciplined than younger employees who engaged in similar misconduct. In support of his allegation, plaintiff has identified one OPD trainee in his twenties, David Fessler, who was counselled more often than plaintiff but not discharged. [*21] Defendant contends that because an OPD trainee is not a full-fledged operator, the misdeeds of trainees and operators are factually unique and qualitatively dissimilar, thus defeating plaintiff's claim. We agree.

The record indicates that after defendant alerted plaintiff and Fessler to problems in their job performances, Fessler voluntarily resigned from his position with EDS and plaintiff did not. Fessler's voluntary resignation, which occurred before defendant could discipline him, makes it impossible to argue that Fessler and plaintiff were treated differently. In any event, HN16 because defendant harbored differing expectations for operators and OPD trainees, n2 defendant had a rational basis for treating differently their respective misdeeds. Accordingly, we agree with the district court that plaintiff has failed to raise a presumption of disparate treatment.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Various EDS managers drew sharp distinctions between operators and OPD trainees. In their depositions, Speck and Evenson clearly distinguish between the two positions. Indeed, plaintiff admitted at his deposition that the two job categories differed qualitatively. Defendant's submission of an OPD training program description further supports the notion that operators and OPD trainees are not similarly situated. The description lists the various OPD training levels and distinguishes between OPD trainees and operators. Although some EDS managers collectively referred to computer operators and OPD trainees as "operators," it is clear that such references were simply generic. In the broadest sense, operators and OPD trainees perform similar functions; however, OPD trainees are generally less skilled and have

less experience than operators. Plaintiff's affidavit, which contradicts his previous deposition testimony regarding the status of OPD trainees, cannot create a genuine issue of material fact.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*22]

**2.**

In addition to the disparate treatment approach, HN17 a plaintiff can raise a presumption of age discrimination under Elliott-Larsen by showing intentional discrimination. In this respect, a plaintiff must (1) show that he is a member of the affected class, (2) that adverse employment action was taken against him, (3) that the person responsible for this adverse action was predisposed to discriminate against persons in the affected class, and (4) that the person actually acted on this predisposition with respect to the plaintiff. McDonald v. Union Camp Corp., 898 F.2d 1155, 1161 (6th Cir. 1990) (citing various Michigan cases).

We agree with the district court that there is no record evidence to support a presumption of age discrimination under the intentional discrimination approach.

**III.**

For all the aforementioned reasons, the district court's judgment is AFFIRMED.

Service: **Get by LEXSEE®**
Citation: **1993 U.S. App. Lexis 4666**
View: Full
Date/Time: Thursday, April 7, 2005 - 10:48 AM EDT

\* Signal Legend:
● - Warning: Negative treatment is indicated
■ - Questioned: Validity questioned by citing refs
▲ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
Ⓘ - Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.