Service: **Get by LEXSEE®**
Citation: **2004 U.S. App. Lexis 13773**

*109 Fed. Appx. 1, \*; 2004 U.S. App. LEXIS 13773, \*\**

IN RE: MICHAEL BEST & COLLEEN BEST, Debtors. ANTHONY G. STEIER, Plaintiff-Appellant, v. MICHAEL M. BEST AND COLLEEN BEST, Defendants-Appellees.

No. 03-5098

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

109 Fed. Appx. 1; 2004 U.S. App. LEXIS 13773

June 30, 2004, Filed

**NOTICE:** [\*\*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY. 02-00063. Simpson III. 12-19-02. Steier v. Best, 287 B.R. 671, 2002 U.S. Dist. LEXIS 24391 (W.D. Ky., 2002)

**DISPOSITION:** Affirmed.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff creditor initiated an adversary proceeding against defendant debtors to declare a judgment debt nondischargeable under 11 U.S.C.S. § 523 (a)(6) and (a)(2)(B). The bankruptcy court granted summary judgment to the debtors. The United States District Court for the Western District of Kentucky affirmed. The creditor appealed.

**OVERVIEW:** The unsecured creditor purchased shares in a medical services company from one of the debtors. The creditor won a judgment for breach of contract because the investment was not refunded, as the purchase agreement allowed. The debtors filed for bankruptcy. The creditor argued that the debt was nondischargeable under 11 U.S.C.S. § 523(a)(6) because the debtors maliciously concealed and lied about their assets to prevent him from collecting on the judgment; the debtors used their assets to pay other creditors rather than him. The appellate court determined that the debtors' efforts to thwart the collection of the judgment debt did not render it nondischargeable under § 523(a)(6), because the concealment did not cause or give rise to the judgment debt. Also, the bankruptcy court did not err in concluding that the debtors did not invade the unsecured creditor's legal rights by selling assets and using the proceeds to pay other creditors instead of paying him. Finally, the false financial statement provided to the creditor did not render the debt nondischargeable under 11 U.S.C.S. § 523(a)(2)(B), because the creditor did not rely on the statement in deciding to invest.

**OUTCOME:** The appellate court affirmed the decision of the district court.

**CORE TERMS:** willful, nondischargeable, okay, malicious injury, judgment debt, financial

statement, business plan, breach of contract, legal rights, malicious, salaries, deposition, dischargeable, invested, invest, repay, punitive damages, summary judgment, declare, entity, paying, owed, selling, deposition testimony, security agreement, malicious conduct, repossession, conversion, deliberate, reckless

## LexisNexis(R) Headnotes ♦ Hide Headnotes

Bankruptcy Law > Nondischargeability of Individual Claims

**HN1** 11 U.S.C.S. § 523(a)(6) provides that the Bankruptcy Code will not discharge a debt for willful and malicious injury to another entity or to the property of another entity. More Like This Headnote

Bankruptcy Law > Nondischargeability of Individual Claims

**HN2** 11 U.S.C.S. § 523(a)(2)(B) provides that a debt is nondischargeable if the creditor extended credit in reasonable reliance on a materially false written statement that the debtor made with the intent to deceive. More Like This Headnote

Bankruptcy Law > Practice & Proceedings > Appeals

**HN3** In reviewing a district court's decision on a bankruptcy matter, the appellate court accords discretion only to the original bankruptcy findings, not those of the district court, because the appellate court is in as good a position to review the bankruptcy court's decision as is the district court. More Like This Headnote

Bankruptcy Law > Practice & Proceedings > Appeals
Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review

**HN4** The appellate court subjects the bankruptcy court's factual findings to clear error review. A finding of fact is clearly erroneous when although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. More Like This Headnote

Bankruptcy Law > Practice & Proceedings > Appeals
Civil Procedure > Appeals > Standards of Review > De Novo Review

**HN5** The appellate court reviews the bankruptcy court's legal conclusions de novo. Mixed questions of law and fact are also reviewed de novo. More Like This Headnote

Bankruptcy Law > Nondischargeability of Individual Claims

**HN6** The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an honest but unfortunate debtor. In this spirit, 11 U.S.C.S. § 523(a) provides that debts arising from certain debtor misconduct are not dischargeable. The creditor must prove, by a preponderance of the evidence, that the debt should be excepted from discharge. Fed. R. Bankr. P. 4005. Exceptions to discharge are strictly construed against creditors. More Like This Headnote

Bankruptcy Law > Nondischargeability of Individual Claims

**HN7** See 11 U.S.C.S. § 523(a)(6).

Bankruptcy Law > Nondischargeability of Individual Claims

**HN8** The willful and malicious standard is a stringent one, and debts arising from recklessly or negligently inflicted injuries do not fall within the compass of 11 U.S.C.S. § 523(a)(6). An intentional or deliberate act alone does not constitute willful and malicious conduct under § 523(a)(6). More Like This Headnote

Bankruptcy Law > Nondischargeability of Individual Claims
HN9± The word "willful" in 11 U.S.C.S. § 523(a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.  More Like This Headnote

Bankruptcy Law > Nondischargeability of Individual Claims
HN10± Unless the actor desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it, he has not committed a willful and malicious injury as defined under 11 U.S.C.S. § 523(a)(6). Debts arising out of these types of misconduct satisfy the willful and malicious injury standard: intentional infliction of emotional distress, malicious prosecution, conversion, assault, false arrest, intentional libel, and deliberately vandalizing the creditor's premises.  More Like This Headnote

Bankruptcy Law > Nondischargeability of Individual Claims
HN11± To block the discharge of a debt under 11 U.S.C.S. § 523(a)(6) of the Bankruptcy Code it must be proved that the creditor's loss was caused by the willful and malicious conduct of the debtor.  More Like This Headnote

Bankruptcy Law > Nondischargeability of Individual Claims
HN12± The injury must invade the creditor's legal rights. 11 U.S.C.S. § 523(a)(6)'s term "willful" means a deliberate or intentional invasion of the legal rights of another, because the word "injury" usually connotes legal injury (injuria) in the technical sense, not simply harm to a person. The conduct must be more culpable than that which is in reckless disregard of creditors' economic interests and expectancies, as distinguished from legal rights. Moreover, knowledge that legal rights are being violated is insufficient to establish malice.  More Like This Headnote

Bankruptcy Law > Nondischargeability of Individual Claims
HN13± In the context of 11 U.S.C.S. § 523(a)(6), for a debt to fall within this exception to discharge, the creditor has the burden of proving that it sustained an injury as a result of a willful and malicious act by the debtor. Thus, a debtor's actions must be determined to be the cause of the creditor's injury.  More Like This Headnote

Contracts Law > Remedies > Punitive Damages
HN14± Under Ohio common law, punitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable.  More Like This Headnote

Bankruptcy Law > Nondischargeability of Individual Claims
HN15± A breach of contract cannot constitute the willful and malicious injury required to trigger 11 U.S.C.S. § 523(a)(6).  More Like This Headnote

Bankruptcy Law > Nondischargeability of Individual Claims
HN16± An "injury" under 11 U.S.C.S. § 523(a)(6) must constitute an invasion of the creditor's legal rights. Thus it is appropriate to inquire whether the debtor violated the creditor's rights by paying other creditors.  More Like This Headnote

Bankruptcy Law > Nondischargeability of Individual Claims
HN17± For purposes of determining whether a debtor knew his actions would injure the creditor's lien rights, a rebuttable presumption will arise when the debtor, despite having knowledge as to the implications of the security agreement, took no action to protect the creditor's interest therein.  More Like This Headnote

Bankruptcy Law > Creditor Claims & Objections > Types of Claims > Priority Claims
Bankruptcy Law > Nondischargeability of Individual Claims
**HN18** An unsecured creditor has a legal right to try to collect on his judgment, but not to compel the debtor to pay him ahead of other creditors. More Like This Headnote

Bankruptcy Law > Nondischargeability of Individual Claims
**HN19** 11 U.S.C.S. § 523(a)(2)(B) provides that an individual Chapter 7 debtor's debt will not be discharged if the debt was for money, property, or services obtained by use of a statement in writing that is (1) materially false; (2) representing the debtor's or insider's financial condition; (3) on which the creditor to whom the debtor is liable for such money, property or services or credit reasonably relied; and (4) that the debtor caused to be made or published with the intent to deceive. More Like This Headnote

Civil Procedure > Discovery Methods > Oral Depositions
Civil Procedure > Summary Judgment > Supporting Papers & Affidavits
**HN20** A party may not create a factual issue by filing an affidavit which contradicts his earlier deposition testimony. More Like This Headnote

Bankruptcy Law > Nondischargeability of Individual Claims
**HN21** In the context of 11 U.S.C.S. § 523(a)(2)(B), before embarking on an analysis of whether the plaintiffs acted justifiably, the court must first be sure that the plaintiffs proved they actually relied on representations of the debtor. More Like This Headnote

**COUNSEL:** For ANTHONY G. STEIER, Appellant: Donald L. Cox, John D. Cox, Lynch, Cox, Gilman & Mahan, Louisville, KY.

For MICHAEL M. BEST, COLLEEN BEST, Appellees: David M. Cantor, Seiller & Handmaker, Louisville, KY.

For MICHAEL M. BEST, COLLEEN BEST, Appellees: Robert P. Hamilton, Lorch & Naville, New Albany, IN.

**JUDGES:** BEFORE: BOGGS, Chief Judge; DAUGHTREY, Circuit Judge; and ALDRICH, District Judge. n1

n1 The Honorable Ann Aldrich, United States District Judge, Northern District of Ohio, sitting by designation.

**OPINIONBY:** Ann Aldrich

**OPINION:** [*2] **ALDRICH, District Judge.** Plaintiff-appellant Anthony Steier is an unsecured creditor of defendants-appellees Michael Best, M.D., Colleen Best, and Brian Finney. In 1997 [**2] Steier purchased 10% of Dr. Best and Finney's shares in a medical services company. In 1998, as allowed by the purchase agreement, Steier asked Best and Finney to refund his investment. When they failed to do so, Steier sued and won a judgment for breach of contract. The Bests filed for bankruptcy, and [*3] Steier initiated an adversary proceeding to declare their judgment debt nondischargeable under 11 U.S.C. §§ 523(a)(6) and 523(a)(2)(B). The bankruptcy court granted summary judgment to the Bests, holding that their judgment debt is dischargeable, and the district court affirmed. For the reasons that follow, we affirm.

## I. BACKGROUND

Steier owned a construction business and Best was an orthopedic surgeon. In 1996 Best founded Impairment Analysis Centers, Inc. ("IAC") with Finney. IAC's business was to perform disability exams for worker's compensation claimants. Best and Finney each owned 500 shares in IAC. In September 1997 Best gave Steier IAC's business plan, a gross revenue projection, and a financial statement. On November 10, 1997 Steier executed an agreement whereby he paid Best and Finney $ 300,000 and each gave him fifty shares of IAC stock. Steier [**3] would receive fifty more shares in May 1998 upon payment of $ 450,000, reduced to $ 300,000 if he found other investors. If Steier failed to do so, he would return his shares and Finney and Best would repay his $ 300,000.

In the next few months, Best/IAC provided Steier with a balance sheet he did not understand, failed to return his calls, and failed to provide electronic access to IAC data, and IAC's Canadian office failed. In April 1998 Steier got "cold feet" and demanded that Best and Finney repay his $ 300,000; they assured him they would do so. In May 1998 Finney wrote to Steier, in part:

> Since Mr. Steier elected not to fulfill the remainder of the financial terms of the original contract, we have been somewhat slowed in our growth expectations. Although we have experienced a steady increase in expansion and stability, we are utilizing resources generated solely from our receivables. Again, we certainly respect Tony's decision. However, it is somewhat infeasible for the terms of reimbursement to commence at this time.
>
> Please convey to Tony that we are presently considering various business options that would include your clients' [sic] reimbursement in full and [**4] in the interim we would entertain any/all finance charges that Tony may be experiencing at present.

But Best and Finney paid Steier nothing in the months following the letter, so Steier sued for breach of contract. In September 1998 he won a judgment for $ 300,000 plus interest.

Meanwhile, in 1998 Best was diagnosed with a vision disorder that rendered him unable to perform surgery, and in March 1999 he closed his practice. In October 2000 the Bests filed for Chapter 7 bankruptcy. In January 2001 Steier filed an adversary proceeding, seeking a declaration that the Bests' judgment debt is nondischargeable. Section 523(a)(6) HN1 provides that the Code will not discharge a debt "for willful and malicious injury ... to another entity or to the property of another entity." Steier alleges that the Bests maliciously concealed and lied about their assets to prevent him from collecting on the judgment. Section 523(a)(2)(B) HN2 provides that a debt is nondischargeble if the creditor extended credit in reasonable reliance on a materially false written statement that the debtor made with the intent to deceive. Best provided Steier with an IAC financial statement listing no liabilities, when Best [**5] allegedly knew that IAC owed back salaries that exceeded its assets.

The Bankruptcy Court granted summary judgment to the Bests, and Steier appealed. The district court found that even if the Bests committed willful, malicious conduct towards Steier, such conduct [*4] was not the cause of their debt. Therefore, § 523(a)(6) did not block discharge. The district court also held that § 523(a)(2)(B) did not apply, because Steier did not rely on the financial statement when deciding to invest. Accordingly, the district court affirmed, and Steier appealed.

## II. STANDARD OF REVIEW

**HN3** In reviewing a district court's decision on a bankruptcy matter, we accord "discretion only to the original bankruptcy findings, not those [of] the District Court," because we are "in as good a position to review the Bankruptcy Court's decision as is the District Court." *In re Kidd,* 315 F.3d 671, 674 (6th Cir. 2003) (citations omitted). **HN4** We subject the bankruptcy court's factual findings to clear error review. *See id: at 674* (citation omitted). A finding of fact is clearly erroneous when "although there is evidence to support the finding, the reviewing court on the entire evidence is left **[**6]** with the definite and firm conviction that a mistake has been committed." *In re Scott,* 188 F.3d 509, 1999 WL 644380, at *1 (6th Cir. Aug. 13, 1999) (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 84 L. Ed. 2d 518, 105 S. Ct. 1504 (1985) (citations omitted)). **HN5** We review the bankruptcy court's legal conclusions *de novo. See In re Federated Dep't Stores,* 270 F.3d 994, 1000 (6th Cir. 2001). Mixed questions of law and fact are also reviewed *de novo. See In re Kisseberth,* 273 F.3d 714, 719 (6th Cir. 2001), *clarified o.g.,* 24 Fed. Appx. 539, 2002 WL 59617 (6th Cir. Jan. 15, 2002).

## III. ANALYSIS

### A. Section 523(a)(6): Debt Not Dischargeable If Caused By Willful and Malicious Injury

1. Legal Standard

**HN6** "The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an 'honest but unfortunate debtor.'" *In re Francis.* 226 B.R. 385, 391 (B.A.P. 6th Cir. 1998) (citation omitted). In this spirit, section 523(a) provides that debts arising from certain **[**7]** debtor misconduct are not dischargeable. The creditor must prove, by a preponderance of the evidence, that the debt should be excepted from discharge. *See In re Hindenlang,* 164 F.3d 1029, 1034 (6th Cir.) (citations omitted), *cert denied* 528 U.S. 810, 145 L. Ed. 2d 37, 120 S. Ct. 41 (1999); *Mead v. Helm,* 865 F.2d 1268, 1989 WL 292, at *4 (6th Cir. 1989) (*per curiam*) (citing FED. R. BANKR. P. 4005). Exceptions to discharge are strictly construed against creditors. *See In Re Rembert,* 141 F.3d 277, 281 (6th Cir.), *cert. denied sub nom. AT&T Universal Card Servs. v. Rembert,* 525 U.S. 978, 142 L. Ed. 2d 357, 119 S. Ct. 438 (1998). Subsection 523(a)(6) provides:

> **HN7** (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt -
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

> **HN8** The willful and malicious standard is a stringent one, and "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Kawaauhau v. Geiger,* 523 U.S. 57, 64, 140 L. Ed. 2d 90, 118 S. Ct. 974 (1998); **[**8]** *see also In re Bonfiglio,* 82 F.3d 417, 1996 WL 156690, at *4 (6th Cir. Apr. 3, 1996) (*per curiam*) (referring to "the rigorous standards for withholding discharge" under § 523(a)(6)). Following *Geiger,*

we have held that "an intentional or deliberate act alone does not constitute willful and malicious conduct under § 523(a)(6)." In re Romano, 59 Fed. Appx. 709, 2003 WL 731723, at ** 6-7 (6th Cir. Mar. 3, 2003) (medical malpractice judgment debt was [*5] dischargeable, notwithstanding that nurse allegedly committed felony by practicing without a license).

Prior to Geiger, we had held that the § 523(a)(6) exception covered debts arising out of acts that were done intentionally and caused injury, without regard to whether the debtor intended the resulting injury to the creditor. "[A] wrongful act, done intentionally, which necessarily produces harm and is without just cause or excuse. may constitute a willful and malicious injury." Perkins v. Scharffe, 817 F.2d 392, 394 (6th Cir.) (citation omitted), cert. denied, 484 U.S. 853, 98 L. Ed. 2d 112, 108 S. Ct. 156 (1987). The Supreme Court unanimously rejected that construction [**9] on the basis of 523(a)(6)'s language, its interrelation with nearby provisions, and the policies of the Code as as whole, reasoning:

> HN9 The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend *"the consequences of an act,"* not simply *"the act itself."*
>
> The [creditors] more encompassing interpretation could place within the excepted category a wide range of situations in which an act is intentional. but injury is unintended, ... A knowing breach of contract could also qualify. A construction so broad would be incompatible with [**10] the well-known guide that exceptions to discharge should be confined to those plainly expressed.
>
> Furthermore, we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law. Reading § 523(a)(6) as the [creditors] urge would obviate the need for § 523(a)(9), which specifically exempts debts for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated ... see also § 523(a)(12) (exempting debt for malicious or reckless failure to fulfill certain commitments owed to a federal depository institution[']s regulatory agency).

Geiger, 523 U.S. at 61-62 (emphasis in original, citations and internal quotes omitted). We revisited the issue in light of Geiger and held that HN10 "unless the actor desires to cause [the] consequences of his act, or ... believes that the consequences are substantially certain to result from it, he has not committed a willful and malicious injury as defined under § 523 (a)(6)." In re Kennedy, 249 F.3d 576, 580 (6th Cir. 2001) (citation and internal quote omitted). [**11] Debts arising out of these types of misconduct satisfy the willful and malicious injury standard: intentional infliction of emotional distress, malicious prosecution, conversion, assault, false arrest, intentional libel, and deliberately vandalizing the creditor's premises. n2

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n2 See *In re Moffitt,* 252 B.R. 916 (B.A.P. 6th Cir. 2000) (intentional infliction); *In re Lopez,* 292 B.R. 570, 577 (E.D. Mich. 2003) (arson); *In re Abbo,* 168 F.3d 930 (6th Cir. 1999) (malicious prosecution); *Staskus v. Gene Weiss' Place for Fitness,* 1998 U.S. App. LEXIS 9609, 1998 WL 242339 (6th Cir. May 8, 1998) (conversion); *Hardin v. Caldwell,* 897 F.2d 529, 1990 WL 20457, at *5 n.9 (6th Cir. 1990) (assault, false arrest); *Wheeler v. Laudani,* 783 F.2d 610 (6th Cir. 1986) (intentional libel); *In re Sintobin,* 253 B.R. 826 (Bankr. N.D. Ohio 2000) (deliberately vandalizing premises).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

HN11 "To block the discharge of a debt under section 523(a)(6) of the Code [**12] ... it must be proved that the creditor's loss was caused by the willful and malicious conduct of the debtor." *In re Finch.* 289 B.R. 638, 644 [*6] (Bankr. S.D. Ohio 2003); *see also In re Smith,* 249 B.R. 748, 750 (Bankr. S.D. Ohio 2000) ("Thus, a debtor's actions must be determined to be the cause of the creditor's injury."); *accord In re Moore,* 357 F.3d 1125, 1129 (10th Cir. 2004) ("unless a debt is *the result of* a willful and malicious act intended to do injury to a person, the debt is discharged") (emphasis added); *In re Parks,* 91 Fed. Appx. 817, 2003 WL 22989684, at * 1 (4th Cir. Dec. 19, 2003) (§ 523(a)(6) covers "a debt *arising from* a willful and malicious injury by the debtor") (emphasis added).

Lastly, HN12 the injury must invade the creditor's legal rights. Section 523(a)(6)'s term "willful ... means a deliberate or intentional invasion of the legal rights of another, because the word 'injury' usually connotes legal injury (*injuria*) in the technical sense, not simply harm to a person." *In re Geiger,* 113 F.3d 848, 852 (8th Cir. 1997), *aff'd,* 523 U.S. 57, 140 L. Ed. 2d 90, 118 S. Ct. 974 (1998); *accord* [**13] *In re McKnew,* 270 B.R. 593, 640 (Bankr. E.D. Va. 2001); *In re Russell,* 262 B.R. 449, 454 (Bankr. N.D. Ind. 2001). The conduct "must be more culpable than that which is in reckless disregard of creditors' economic interests and expectancies, as distinguished from ... legal rights. Moreover, knowledge that legal rights are being violated is insufficient to establish malice ...." *In re Mulder,* 306 B.R. 265, 270 (Bankr. N.D. Iowa 2004) (citation omitted).

2. Discussion

a. Efforts to Thwart Collection of Judgment Debt Do Not Render It Nondischargeable under (a)(6). Because They Did Not Give Rise to the Debt

At trial. Dr. Best gave arguably disingenuous answers as Steier tried to get him to admit that he had lied, at deposition, about not owning rental property in the past five years. Best drew a distinction between renting and leasing, claimed that only residential uses counted as rentals, and purported to be confused as to the location of his own property. For her part, Mrs. Best testified that the profit the Bests earned by selling an office building in 1999 was placed in a cashier's check and stored in a safe at their home. [**14] She explained that she and her husband did this because Steier had garnished their bank account. The Bests used the proceeds to pay their home mortgage, household expenses, their children's tuition, and the IRS. They would take the check to the bank, pay debts, and take home a smaller check. In 1999 the Bests received $ 15,000 from the sale of office equipment, $ 75,000 from Best's sale of his interest in another practice, and $ 55,000 from the sale of a painting and jewelry. The Bests used the proceeds to pay other creditors rather than Steier.

Thus, the evidence might support the conclusion that the Bests willfully disposed of their assets in a way they knew left no funds to repay Steier. But that does not render the Bests' judgment debt nondischargeable under § 523(a)(6). Even if the Bests disposed of or concealed assets in a way they knew would prevent Steier from collecting the judgment debt,

it is of no avail to Steier because the concealment occurred *after* that debt arose. Thus the concealment could not have caused or given rise to the judgment debt, as required for nondischargeability under § 523(a)(6).

This requirement is well illustrated by *National Auto Finance Co. v. Smith,* 249 B.R. 748 [*7] (Bankr. S.D. Ohio 2000). [**15] where the debtors failed to repay a loan secured by their car. The debtors initially refused to return the car. thwarting repossession by parking it in a narrow alley and using an anti-theft device to immobilize the steering wheel. Seven months later, the debtors returned the car. After selling it, the creditor had a deficiency claim. The creditor sought to declare the deficiency nondischargeable under § 523(a)(6) on the ground that the debtors' actions to thwart repossession constituted willful and malicious injury. See *id.* at 749-50. The bankruptcy court rejected that argument and granted summary judgment to the debtors:

> HN13 For a debt to fall within this exception to discharge, the creditor has the burden of proving that it sustained an injury *as a result* of a willful and malicious act by the debtor. Thus, a debtor's actions must be determined to be the cause of the creditor's injury. In this case, there is no dispute that the creditor's "injury," the deficiency balance, is a pre-petition debt. Even if the Debtors' alleged post-petition actions to thwart repossession of the creditors' security are proven true, they cannot be the cause of the creditor's [**16] pre-petition claim. Consequently, these actions do not form the basis for declaring the deficiency debt nondischargeable under § 523(a)(6).

*Id.* at 750 (emphasis in original); *see also Telhio Credit Union v. Corner,* 299 B.R. 462 (Bankr. S.D. Ohio 2003) (citation omitted) (debt nondischargeable under § 523(a)(6) because it was caused by debtor's cashing check that she knew was counterfeit).

Lastly. Steier cites Eighth Circuit decisions for the proposition that "courts have frequently held that the hiding of assets to avoid payment of damages can result in a declaration of non-dischargeability under 11 U.S.C. 523(a)(6)." For instance. Steier relies on *In re Nangle,* 274 F.3d 481 (8th Cir. 2001), where the Eighth Circuit held that a punitive damages award was nondischargeable under § 523(a)(6). Preparing to collect on the award, the creditor obtained an order requiring the debtor to disclose his assets. When the debtor failed to do so, the court held him in contempt and doubled the judgment, noting that the debtor's actions were "designed to interfere with efforts to collect the judgment entered against [**17] him." See *id.* at 484. The Eighth Circuit held, "it follows that [the debtor]'s conduct was malicious because it was targeted at the creditor ... at least in the sense that the conduct was certain or almost certain to cause harm." *Id.* (citation omitted).

But Nangle's facts are materially different from ours. It is true that the Eighth Circuit held nondischargeable the damages it imposed as punishment for the debtor's refusal to disclose its assets. The Circuit did so, however, by enhancing a judgment it had already held nondischargeable because it consisted of punitive damages and thus bespoke malice on the part of the debtor. See also *In re Trantham,* 304 B.R. 298 (B.A.P. 6th Cir. 2004) (in action to declare judgment nondischargeable. court gave collateral estoppel effect to jury's finding that debtor willfully infringed patent to avoid paying license fee to creditor); *In re Sarff,* 242 B.R. 620 (B.A.P. 6th Cir. 2000) (same for state court's finding that debtor's misappropriation of trade secrets was malicious). n3

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 In addition, Nangle's refusal to disclose his assets was in violation of a court order, whereas there was no court order prohibiting the Bests from concealing their assets from Steier or paying other creditors instead of him.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**18]

Here, by contrast, Steier's judgment did not include punitive damages. Indeed, the [*8] judgment *could not* have included punitives, because **HN14** under Ohio common law, "punitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable." *In re Graham Square, Inc.,* 126 F.3d 823, 828 (6th Cir. 1997) (quoting *Lake Ridge Academy v. Carney,* 66 Ohio St. 3d 376, 613 N.E.2d 183, 187 (Ohio 1993) (citation omitted)).

b. Best's Breach of Contract *Did* Give Rise to the Judgment Debt, But Breach of Contract Cannot Render a Debt Nondischargeable under 523(a)(6)

We also consider whether the Bests' judgment debt is rendered nondischargeable by their conduct that *did* give rise to Steier's judgment. We conclude that it is not. Steier's state court complaint alleged only that Best breached the agreement by refusing to return his investment:

> 1. This is a claim for breach of contract in [sic] a stock purchase agreement made by and between the parties.
>
> ***
>
> 4. On November 10, 1997, the Parties entered into a Stock Purchase Agreement (the "Agreement"), a [**19] copy of which is attached as Exhibit A.
>
> 5. Plaintiff has fully performed his duties under the Agreement.
>
> 6. The Defendants failed and refused to comply with the provisions of paragraph 4 of the Agreement stating that they are unable to do so.

Steier's state court complaint did not allege that Best's breach was accompanied by tortious conduct.

Consistent with *Geiger,* we have held that **HN15** a breach of contract cannot constitute the willful and malicious injury required to trigger § 523(a)(6). See *In re Bullock-Williams,* 220 B.R. 345, 347 (B.A.P. 6th Cir. 1998) (holding debt for unpaid condo dues to be dischargeable, "Applying *Geiger,* [the creditor] must demonstrate that the Debtor intended to cause harm by failing to pay association dues. This encompasses more than just the 'knowing breach of contract' that was alleged.").

c. Bankruptcy Court Properly Considered Whether Steier Had a Greater Right to Best's Assets Than the Other Creditors Whom Best Chose to Pay

Lastly, in denying Steier's request to declare the judgment debt nondischargeable under 523 (a)(6), the bankruptcy court commented.

Steier relies heavily on In re Sweeney, 264 B.R. 866 (Bankr. W.D. Ky. 2001), [**20] in which this Court determined that a debtor's conversion of insurance proceeds caused a willful and malicious injury to a secured creditor. In that action, the insurance proceeds at issue were clearly the creditor's property pursuant to a security agreement. In this action, the funds at issue were not Steier's collateral or property against which he had a lien. While the Court has no doubt that the Bests' actions may have caused Steier a lost opportunity to collect the funds, Steier did not have a greater right to these funds than any of the Bests' other creditors.

Steier objects that "the Bankruptcy Court erred when it required Steier to show 'greater rights' to the Bests' funds ...." This objection lacks merit. Because Steier relied on a decision whose facts were inapposite to the facts in this case, the bankruptcy court did not err.

As discussed above, HN16 an "injury" under section 523(a)(6) must constitute an invasion of the creditor's legal rights. Thus it [*9] was appropriate to inquire whether the Bests violated Steier's rights by paying other creditors. If Steier were a secured creditor, using secured assets (or the proceeds from selling such assets) to pay unsecured creditors [**21] could have invaded his rights. In In re Imbody, 104 B.R. 830 (Bankr. N.D. Ohio 1989), for instance, farmers borrowed from a bank and granted it a security interest in all crops grown on a certain parcel, all grain inventories, and "all products and proceeds of any of the foregoing, including cash and accounts receivable." Id. at 832. After falling behind in repayment, the debtors received revenue which was admittedly within the definition of the property pledged as security. They used that revenue to pay the IRS, knowing they would have no funds left to pay the bank. See id. at 836-38. The bankruptcy court held the debt nondischargeable under § 523(a)(6), reasoning, "the debtors knowingly violated the terms of BancOhio's security agreement ... *** [They] decided to pay the tax debt, which they knew to be nondischargeable, present BancOhio with a fait accompli, and take their chances with this litigation." Id. at 838, 839.

Imbody was fully consonant with our Circuit's law. The Bankruptcy Court for the Western District of Tennessee enunciated a sensible rule that best summarizes our Circuit's case law in [**22] this area: HN17 "For purposes of determining whether a debtor knew his actions would injure the creditor's lien rights, a rebuttable presumption will arise when the debtor, despite having knowledge as to the implications of the security agreement, took no action to protect the creditor's interest therein." First Citizens Nat'l Bank v. Sherwood, 2003 WL 22871603, at *4 (Bankr. W.D. Tenn. June 24, 2003) (citation omitted). See also Vulcan Coals v. Howard, 946 F.2d 1226 (6th Cir. 1991); In re Boren, 47 B.R. 293, clarified, 50 B.R. 315 (Bankr. W.D. Ky. 1985) (farmer sold crop that secured loan, failed to use proceeds to repay loan, and falsely told creditor he had not sold crop).

Steier, of course, had no such security interest. HN18 As an unsecured creditor, he had a legal right to try to collect on his judgment, but not to compel the Bests to pay him ahead of other creditors. See Bukowski v. Patel, 266 B.R. 838, 844 (E.D. Wis. 2001) (the term "'injury' means the violation of another's legal right or the infliction of an actionable wrong") (citation omitted). Other unsecured creditors had the same claim to the [**23] Bests' assets as Steier. Meanwhile, secured creditors had a superior claim, at least with regard to the property securing their loans to the Bests. See In re Covington, 176 B.R. 152, 154 (Bankr. E.D. Tenn. 1994) (under § 506(a), "a claim is secured ... to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured") (quoting United States v. Ron Pair Enters., 489 U.S. 235, 239, 103 L. Ed. 2d 290, 109 S. Ct. 1026 (1989)). Thus, the bankruptcy court did not err in concluding that the Bests did not

invade Steier's legal rights by selling assets and using the proceeds to pay other creditors instead of paying him.

### B. Section 523(a)(2)(B): Debt is Nondischargeable if It Arose from Creditor's Reasonable Reliance on Materially False Written Statement Made with Intent to Deceive

Section 523(a)(2)(B) **HN19** provides that an individual Chapter 7 debtor's debt will not be discharged if the debt was for "money, property, services ... obtained by use of a statement in writing that is (1) materially false; (2) representing the debtor's or insider's financial condition; (3) on which the creditor to whom the debtor [**24] is liable for such money, property or services or credit reasonably relied; and (4) that [*10] the debtor caused to be made or published with the intent to deceive." In re Plechaty, 213 B.R. 119, 126 (B.A.P. 6th Cir. 1997). Steier alleges that before he decided to invest, Best provided him with a financial statement that listed IAC's liabilities as zero - when Best knew that IAC owed up to $ 240,000 in back salaries. Best acknowledged that the plan said nothing about using newly invested funds to pay back salaries. Steier submitted an affidavit stating:

> 1. In coming to my decision to invest in [IAC], I relied upon Dr. Best because we had developed a friendship over the previous years. I relied upon his representations both orally and his representations which he presented to me in the business plan.
>
> 2. I was told that the money I invested would be used to grow the business. At no time was I ever informed that there were "past due" salaries owed by [IAC] to Dr. Best and Mr. Finney.
>
> 3. If I had known that at least two hundred forty thousand ($ 240,000) of my three hundred thousand dollars ($ 300,000) investment was not going to be used to "grow the business" [**25] and instead was going to be used to pay past due salaries, I would not have invested in [IAC].
>
> 4. If this information was revealed in the business plan, I would not have invested ...
>
> 5. If the balance sheet would have listed these past due salaries, making the company have a negative net worth, I would not have invested in [IAC].

The bankruptcy court was right to reject Steier's argument that the false financial statement rendered Best's debt nondischargeable. Contrary to Steier's later affidavit, Steier testified in his deposition that he did not rely on any documents in deciding to invest in IAC, but rather relied on the reputation and enthusiasm of the individuals involved. This is significant, as **HN20** a party "may not create a factual issue by filing an affidavit ... which contradicts [his] earlier deposition testimony." Kelso v. City of Toledo, 77 Fed. Appx. 826, 834, 2003 WL 22284122, at *7 (6th Cir. 2003) (citing Reid v. Sears, Roebuck, 790 F.2d 453, 460 (6th Cir. 1986)). Accord In re Dygert, 2000 Bankr. LEXIS 626, 2000 WL 630833. at *10 (Bankr. D. Minn. May 11, 2000) (a party's "deposition testimony is controlling [**26] over his later, conflicting affidavit") (citing Camfield Tires v. Michelin Tire Corp., 719 F.2d 1361, 1365 (8th Cir. 1983) ("A self-serving affidavit that contradicts earlier damaging deposition testimony is not sufficient to create a genuine issue of material fact.")); Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986); Babrocky v. Jewel Food Co., 773 F.2d 857, 861 (7th Cir. 1985); Garity v. United States, 1980 U.S. Dist. LEXIS 16791, 1980 WL 1764 (E.D. Mich. Nov. 6,

1980). The rationale for this rule is that "if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Biechele v. Cedar Point, 747 F.2d 209, 215 (6th Cir. 1984) (citation omitted).

At an earlier deposition. Best asked about IAC's balance sheets and Steier responded, in part:

> Q. Now, let me ask you if you can identify what the court reporter has now marked as Exhibit 2?
> A. Balance sheet from September 18th, 1997 from Impairment Analysis Centers, [**27] Inc.
> Q. Okay. Have you seen this before?
> [*11] A. I have.
>
> ***
> Q. Was this one of the documents that was presented to you prior to you investing in this company?
> A. I don't remember. It probably was, but I don't know if it was before [potential investor] John Y. looked at it or -- I mean, right after John Y. looked at it or before this was signed, I don't know.
>
> ***
> Q. Okay. Well, what I'm trying to ask you is this one of the documents that you relied on in order to invest in the company?
> A. It was a document that I may have seen. I didn't -- I relied on the enthusiasm from Mike [Best] and Brian [Finney].
> Q. Okay.
> A. That's what I relied on.

At the deposition, Best's counsel also asked Steier about the business plan itself and about the underlying accountant's report, and Steier responded, in pertinent part:

> Q. Okay. As is the case with most of my clients, okay, did you pretty much leave it up to your lawyers to draft the complaint?
> A. Yes.
> Q. I mean, you're not a lawyer, right?
> A. That's correct.
> Q. So you left it up to them?
> A. That's correct.
> Q. Okay. In numerical paragraph 9 of your complaint it says, Mr. Steier also entered into the agreement to purchase [**28] stock in IAC in reliance upon Impairment Analysis Center, Inc.'s Balance Sheet, which lists zero in liabilities, attached hereto as Exhibit D. And Exhibit D happens to be Exhibit 2 that you're looking at right now.
> A. Right.
>
> ***
> Q. Let me show you what has now been marked as Exhibit 3 by the court reporter and ask if you can identify this document?
> A. It's Impairment Analysis Center's September '97 Business Plan, Copy Number 3.

> \*\*\*
> Q. Okay. When you and [potential investor] Brown ... got this Business Plan, did the two of you-all talk about it?
> A. Not really.
> Q. Okay. Did you talk to Mike [Best] or Brian [Finney] about it?
> A. About the specifics of the Business Plan?
> Q. Yes.
> A. No.
>
> \*\*\*
> Q. Okay. Did you consult with anyone about this document at all?
> A. Well, again, I felt like with [sic] Brown was a lawyer and certainly - and I assumed that Bruce Lunsford looked at it. Those guys know more about business than together than I'll ever know. So I figured if they were good with it, I'd be good with it too, and I - no, I didn't, other than them.
>
> \*\*\*
> Q. Did you just take a cursory look at this document or did you really look at it and analyze it, think about it?
> A. [\*\*29] Cursory, cursory look.
> Q. Not a lot of thought went into it, I guess?
> [\*12] A. That's correct.

Furthermore, at the deposition, Best's counsel also asked Steier about his reliance on the IAC financial statement that accompanied the business plan, and Steier responded, in part:

> Q. Okay, On the next-to-last page of the Business Plan - do you have that?
> A. Yeah.
> Q. At the bottom where it says Financial Plan and then it says Financial Statement enclosed?
> A. Uh-huh.
> Q. -- were you given those?
> A. \*\*\* That's what I was given.
>
> \*\*\*
> Q. Okay. What I want to know is were you defrauded by these few papers or were you defrauded by all this stuff?
> A. I was given that and I signed that. I was defrauded by two individuals.
> Q. Okay.
> A. The papers didn't defraud me. The individuals did.

Similarly, Steier testified that he did rely on the financial statement, but on cross-examination he testified that he did not understand it and never tried to clarify it by asking questions of Best, Finney or an accountant. Steier called a lawyer and asked him about the proposed agreement. The lawyer told Steier "he felt like it was -- you know, Mike and Brian had a winner and that it was going [\*\*30] to be a big deal and, you know -- if you call that investigation, yes, I called him."

The bankruptcy court's finding that Steier did not rely on the financial statement and balance sheets was a factual determination and so is reviewed only for clear error. See *In re Woolum,*

979 F.2d 71, 75 (6th Cir. 1992), *cert. denied sub nom.* Woolum v. Bank One, 507 U.S. 1005, 123 L. Ed. 2d 267, 113 S. Ct. 1645 (1993). We conclude that the bankruptcy court did not clearly err, because Steier's own testimony amply supports that finding. Without showing reliance, Steier could not show reasonable reliance. HN21"Before embarking on an analysis of whether the [Plaintiff] acted justifiably, the Court must first be sure that the [Plaintiffs] proved they actually relied on representations of the Debtor." *In re Corradini*, 276 B.R. 571, 578 (Bankr. W.D. Mich. 2002), *aff'd sub nom.* Corradini v. Corradini, 75 Fed. Appx. 444, 2003 WL 22146141 (6th Cir. Sep. 16, 2003), *petition for cert. filed,* U.S.L.W. , U.S. (U.S. Apr. 20, 2004) (No. 03-9994).

## IV. CONCLUSION

For the foregoing reasons, we affirm the decision [**31] of the district court.

Service: **Get by LEXSEE®**
Citation: **2004 U.S. App. Lexis 13773**
View: **Full**
Date/Time: Thursday, April 7, 2005 - 10:53 AM EDT

\* Signal Legend:
● - Warning: Negative treatment is indicated
■ - Questioned: Validity questioned by citing refs
▲ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.