Service: **Get by LEXSEE®**
Citation: **2002 U.S. App. Lexis 25787**

*52 Fed. Appx. 782, \*; 2002 U.S. App. LEXIS 25787, \*\**

SANDRA LOCKARD, Plaintiff-Appellant, v. GENERAL MOTORS CORPORATION; INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, Local 1112, Defendants-Appellees.

No. 01-3186

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

52 Fed. Appx. 782; 2002 U.S. App. LEXIS 25787

December 11, 2002, Filed

**NOTICE:** [\*\*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO. 99-00786. Economus. 01-16-01.

Lockard v. GMC, 128 F. Supp. 2d 458, 2001 U.S. Dist. LEXIS 309 (N.D. Ohio 2001). 2001).

**DISPOSITION:** Affirmed.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant employee challenged a decision of the United States District Court for the Northern District of Ohio, granting summary judgment in favor of appellees, the employer and the employee's union, in the employee's action for disability discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C.S. § 12101 et seq., and its Ohio counterpart, Ohio Rev. Code Ann. § 4112.02.

**OVERVIEW:** The employee was disabled and claimed that she was unable to perform the positions offered by the employee as "reasonable accommodations." While the employee argued that she was qualified for a number of positions at the employer's plant, the employee failed to present evidence that she requested an accommodation and the record showed that she refused to submit to the necessary union grievance procedures for doing so. Because the court found that the employee had failed to request a reasonable accommodation from her employer, the employer's duty to engage in an interactive search for a reasonable accommodation never arose. The employer provided the employee with the reasonable accommodation of a right tail light secure position. As such, the employer was not liable for a breakdown in the interactive process. The district court did not abuse its discretion in granting the employer's motion to strike portions of the employee's affidavit because the employee's statements concerning her qualifications to hold an available position at the plant were inconsistent with her deposition testimony.

**OUTCOME:** The court affirmed the judgment of the district court.

**CORE TERMS:** accommodation, disability, reasonable accommodation, summary judgment, plant, interactive, seniority, deposition, deposition testimony, grievance, genuine issue of material fact, leave of absence, contradict, motion to strike, reassignment, returning, abuse of discretion, breakdown, duty, collective bargaining agreement, failed to present, full-time, asserting, exceeded, evidence to support, prima facie case, undue hardship, per curiam, accommodate, stricken

## LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Summary Judgment > Summary Judgment Standard

**HN1** The United States Court of Appeals reviews a district court's grant of summary judgment de novo, using the same standard employed by the district court. Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c). In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party.  More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Americans With Disabilities Act > Accommodation
Labor & Employment Law > Discrimination > Disability Discrimination > Qualified Individuals With a Disability
Pensions & Benefits Law > Americans With Disabilities Act > Reasonable Accommodation

**HN2** The Americans with Disabilities Act (ADA), 42 U.S.C.S. § 12101 et seq. prohibits discrimination against a qualified individual with a disability. 42 U.S.C.S. § 12112 (a). A "qualified" individual is one who, with or without reasonable accommodation, can perform the essential functions of the employment position that person holds or desires. 42 U.S.C.S. § 12111(8). The statutory definition of "discrimination" includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on operation of its business. 42 U.S.C.S. § 12112(b)(5)(A). Finally, the ADA also provides that such "reasonable accommodation" may include reassignment to a vacant position. 42 U.S.C.S. § 12111(9)(B).  More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Americans With Disabilities Act > Accommodation
Pensions & Benefits Law > Americans With Disabilities Act > Reasonable Accommodation

**HN3** In an action under the Americans with Disabilities Act (ADA), 42 U.S.C.S. § 12101 et seq., the plaintiff has the burden of establishing that she is protected by the statute. This entails setting forth evidence that will create a genuine issue of material fact as to whether (1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified, with or without reasonable accommodation, to perform the essential functions of the job she holds or desires; (3) she suffered an adverse employment decision because of her disability; and (4) the employer knew or had reason to know of her disability. Furthermore, it is the plaintiff's burden to propose a reasonable accommodation. Where a plaintiff seeks accommodation, she must establish that a "reasonable" accommodation is possible, and bears a traditional burden of proof that she is qualified for the position with such reasonable accommodation. The employer, on the other hand, bears the burden of showing that a proposed accommodation would impose undue hardship. 42 U.S.C.S. § 12112(b)(5)(A).  More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Americans With Disabilities Act > Accommodation
Pensions & Benefits Law > Americans With Disabilities Act > Reasonable Accommodation

**HN4** A plaintiff must establish, as part of her prima facie case of discrimination under

the Americans with Disabilities Act (ADA), 42 U.S.C.S. § 12101 et seq., that she requested and was denied reassignment to a position for which she was otherwise qualified. Alternatively, a plaintiff may show that she requested and was denied assistance in identifying jobs for which she was otherwise qualified. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Americans With Disabilities Act > Accommodation
Pensions & Benefits Law > Americans With Disabilities Act > Reasonable Accommodation
HN5± The idea that employers must engage in an interactive process to identify reasonable accommodations originates in the Regulations accompanying the Americans with Disabilities Act, 42 U.S.C.S. § 12101 et seq.. 29 C.F.R. § 1630.2(o)(3)(1995) More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Americans With Disabilities Act > Accommodation
Pensions & Benefits Law > Americans With Disabilities Act > Reasonable Accommodation
HN6± See 29 C.F.R. § 1639.2(o)(3)(1995).

Constitutional Law > Civil Rights Enforcement > Americans With Disabilities Act > Accommodation
Pensions & Benefits Law > Americans With Disabilities Act > Reasonable Accommodation
HN7± While it is possible that an employer may violate the terms of the Americans with Disabilities Act (ADA), 42 U.S.C.S. § 12101 et seq., by failing to engage in such an interactive process in good faith. This is not a case in which an employer's unwillingness to engage in an interactive process has led to its failure to reasonably accommodate an employee. The burden remains on the employee to request an accommodation. An employee cannot expect the employer to read his mind and know he secretly wanted a particular accommodation. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Americans With Disabilities Act > Accommodation
Pensions & Benefits Law > Americans With Disabilities Act > Reasonable Accommodation
HN8± To bear liability for a failure to accommodate, an employer must be responsible for a breakdown in the interactive process. In this regard, courts have held that an employer is not responsible for a breakdown in the interactive process unless the employer actually failed to offer a reasonable accommodation. More Like This Headnote

Civil Procedure > Summary Judgment > Supporting Papers & Affidavits
HN9± A party may not create a genuine issue of material fact by filing an affidavit that essentially contradicts his previous deposition testimony after a motion for summary judgment has been made. More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion
HN10± The United States Court of Appeals reviews the district court's decision to grant or deny a motion to strike for abuse of discretion. An abuse of discretion exists where a reviewing court is firmly convinced that a mistake has been made. Reasonable decisions will not be overturned. More Like This Headnote

Civil Procedure > Summary Judgment > Supporting Papers & Affidavits
HN11± A party who has been examined at length at deposition cannot create a genuine issue of material fact by later submitting an affidavit that contradicts previously sworn testimony. Moreover, the fact that a party has had ample opportunity during discovery to present evidence provides courts with reason to prevent that party from introducing new evidence in an affidavit opposing summary judgment. More Like This Headnote

**COUNSEL:** For SANDRA LOCKARD, Plaintiff-Appellant: Brent L. English, Cleveland, OH.

For GENERAL MOTORS CORPORATION, Defendant-Appellee: Robert S. Walker, W. Eric Baisden, Jones, Day, Reavis & Pogue, Cleveland, OH.

For INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, Local 1112, Defendant-Appellee: David Roloff, Shapero & Roloff, Cleveland, OH.

**JUDGES:** BEFORE: BATCHELDER, COLE, and GIBBONS, Circuit Judges.

**OPINIONBY:** R. GUY COLE, JR.

**OPINION:**

[*783] **BEFORE: BATCHELDER, COLE, and GIBBONS, Circuit Judges.**

**R. GUY COLE, JR., Circuit Judge.** Appellant Sandra Lockard ("Lockard") appeals the district court's grant of summary judgment in favor of defendants, General Motors ("GM") and United Automobile, [**2] Aerospace and Agricultural Implement Workers Union, Local 1112 ("UAW"), in this action for disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), and its Ohio counterpart, Ohio Revised Code § 4112.02.

On appeal, Lockard raises the following issues: (1) was summary judgment appropriate with respect to Lockard's claims of disability discrimination under the ADA and Ohio law; and (2) did the district court abuse its discretion in striking portions of an affidavit submitted by Lockard in opposition to GM's motion for summary judgment. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Lockard began working at GM's Lordstown Assembly Plant (the "Plant") in July of 1981. Since that time, she has been a member of the local UAW, which represents bargaining unit employees at the Plant.

After suffering a work-related injury in October, 1981, Lockard took leave from work. She received workers' compensation "on and off" for approximately eight years, from October 1981 to April 1989. Upon returning to the Plant, Lockard worked in various production line positions [**3] until she suffered another work-related injury on December 6, 1990. She subsequently was diagnosed as having DeQuervain's Tendonitis, a permanent condition characterized by swelling in the hand and wrist, numbness, shooting pain into one's arm, weakness of the hand and arm, and loss of mobility and strength.

From December 1990 until August 1992, Lockard did not work consistently in a full-time position at the Plant. During this period, she was either on leave of absence or worked in short-term positions through the Plant's Transitional Work Program [*784] ("TWP"). TWP, which is run jointly by GM and UAW, facilitates the placement of workers who are returning from leaves of absence by providing "transitional jobs for the temporarily disabled" employees at the Plant.

TWP works in conjunction with the ADAPT program, which aims to locate permanent jobs that meet an employee's medical restrictions and seniority. A committee exists to perform this function. After ADAPT committee review, the Plant medical director then makes the final determination as to the assignment of an employee to an available position. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Throughout this process, an employee's seniority level is relevant because of the national and local collective bargaining agreements between GM and UAW. Under Paragraph 72 of the national CBA, workers returning from disability leave may displace only less senior workers who hold a position within the returning worker's medical restrictions, unless UAW agrees to make an exception to this seniority requirement. UAW maintains that it has never entered into such an agreement with GM at the Plant.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**4]

In August of 1992, Lockard returned to full-time work after GM, through its ADAPT program, offered her a Left Seat Track Cover position. The ADAPT committee selected this position, which involved installing the cover on the passenger seat track with an airgun or an electric screwdriver, after Plant medical director, Dr. Brian Gordon, concluded that the job fit Lockard's medical restrictions and the ADAPT committee determined she had sufficient seniority to hold the position. Lockard disagreed with Dr. Gordon's determination, however, and asserted that she could not perform the job because of her physical limitations. She subsequently was assigned to temporary jobs as a driver, a tape puller, and a sweeper.

The national CBA between GM and the UAW provides a dispute resolution procedure for the company and the union to follow if a dispute arises as to whether an employee's medical restrictions permit that employee to perform a particular job. Paragraph 43(b) allows an employee to request a review by an independent medical examiner to determine if she can perform a specific job safely and within her given medical restrictions. After Lockard filed a 43(b) grievance, she was examined [**5] by Dr. Daniel Dorfman on April 5, 1993. Dr. Dorfman concluded that Lockard could perform the Left Seat Track Cover job consistent with her physical restrictions, with the modification of "gun use only in the left hand." Dr. Dorfman also recommended certain restrictions in Lockard's lifting, pushing, and pulling with her right hand.

Lockard nonetheless refused to perform the Left Seat Track Cover job, asserting that it exceeded her physical limitations. She subsequently returned to a leave of absence. In January 1994, Lockard was placed in the "sniffer" job, which allegedly was within her seniority and medical restrictions. She worked in this position for a few months until taking leave again in June, 1994. This leave of absence was converted from workers' compensation leave into extended disability leave in September of 1994. She remained on extended disability leave throughout 1994, and remained unassigned until March 1996.

In March of 1996, GM, through the ADAPT program, placed Lockard in the full-time Right Tail Light Secure job. This position required Lockard to attach the right tail light to vehicles. She was allowed to use an electric screwdriver instead of an air gun. The [**6] ADAPT committee and Dr. Gordon determined that this job met Lockard's seniority and physical restrictions, and Lockard was informed of this conclusion. In August of 1996, however, Lockard claimed that she could no longer perform the Right Tail Light Secure [*785] job because it exceeded her medical restrictions. She informed management that she could not do the job and again was placed on an extended leave of absence.

During this leave of absence, in February 1997, Lockard consulted her physician, Dr. Edward J. Novosel, who examined Lockard and prepared a report describing her physical limitations. Dr. Novosel's findings were consistent with the earlier findings made by Dr. Dorfman in April 1993, after Lockard had filed a 43(b) grievance. Dr. Novosel also requested that Lockard continue to work in the TWP until a "regular job" within her medical restrictions became available.

As Dr. Novosel's findings were consistent with her previous restrictions, GM again tried to place Lockard in the Right Tail Light Secure position. Dr. Gordon did not disagree with plaintiff's doctor as to her restrictions but, rather, took the position that Lockard could perform the Right Tail Light Secure job within **[\*\*7]** those restrictions. Nonetheless, when she returned to work in August 1997, Lockard refused reassignment to the Right Tail Light Secure position.

Lockard sought assistance from her UAW representatives in an attempt to obtain a position within her restrictions. According to Lockard, she was "trying to get them to make management understand that I couldn't do this job, that it hurt me." Lockard's UAW representatives recommended she submit to a 43(b) examination in order to determine whether the Right Tail Light Secure position met her medical restrictions. Lockard refused to file a 43(b) grievance, however, as she believed she could rely on the 1993 determination made by Dr. Dorfman with respect to the Left Seat Track Cover job. She was again placed on sick leave, effective August 16, 1997. Lockard maintains that she repeatedly sought assistance from UAW from August 1997 until October 4, 2000, at which time she was given a VIN plate job.

## II. DISCUSSION

### A. Standard of Review

**HN1** We review a district court's grant of summary judgment *de novo,* using the same standard employed by the district court. Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc., 270 F.3d 298, 307-08 (6th Cir. 2001). **[\*\*8]** Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. Herman Miller, Inc., 270 F.3d at 308.

### B. Analysis

#### 1. Disability Discrimination Claims n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 This court's ruling with respect to Lockard's ADA claim also disposes of her claim of disability discrimination under Ohio law. See City of Columbus Civil Serv. Comm'n v. McGlone, 697 N.E.2d 204, 206-207, 82 Ohio St.3d 569 (1998).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**HN2** The ADA prohibits discrimination against a "qualified individual with a disability." 42 U.S.C. § 12112(a). A "qualified" individual is one who, "with or without reasonable **[\*\*9]** accommodation, can perform the essential functions" of the employment position that person holds or desires. § 12111(8). The statutory definition of "discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified" employee, unless the employer can "demonstrate that **[\*786]** the accommodation would impose an undue hardship on operation of [its] business." § 12112(b)(5)(A). Finally, the ADA also provides that such "reasonable accommodation" may include "reassignment to a vacant position." § 12111(9)(B).

HN3 In an action under the ADA, the plaintiff has the burden of establishing that she is protected by the statute. This entails setting forth evidence that will create a genuine issue of material fact as to whether (1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified, with or without reasonable accommodation, to perform the essential functions of the job she holds or desires; (3) she suffered an adverse employment decision because of her disability; and (4) the employer knew or had reason to know of her disability. Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1185 (6th Cir. 1996) [**10] (citations omitted).

Furthermore, it is the plaintiff's burden to propose a reasonable accommodation. Id. at 1183. Where a plaintiff seeks accommodation, "she must establish that a 'reasonable' accommodation is possible, and bears a traditional burden of proof that she is qualified for the position with such reasonable accommodation." Id. at 1186 n.12. The employer, on the other hand, bears the burden of showing that a proposed accommodation would impose undue hardship. 42 U.S.C. § 12112(b)(5)(A). See also Monette 90 F.3d at 1183.

**a. Failure to request accommodation**

While Lockard argues that she was qualified for a number of positions at the Plant, the district court correctly concluded that summary judgment was appropriate with respect to her failure-to-accommodate claim because Lockard failed to present evidence that she requested an accommodation.

In Burns v. Coca-Cola Enterprises, Inc., we held that HN4 a plaintiff must establish, as part of her prima facie case of discrimination under the ADA, that she requested and was denied reassignment to a position for which she was otherwise qualified. Alternatively, a [**11] plaintiff may show that she requested and was denied assistance in identifying jobs for which she was otherwise qualified. Burns, 222 F.3d 247, 258-59 (6th Cir. 2000). See also Cassidy v. Detroit Edison Co., 138 F.3d 629, 633-34 (6th Cir. 1998).

The record shows that GM and UAW accommodated Lockard's disability by assigning her to the Right Tail Light Secure position. She obtained the Right Tail Light Secure position by filing a 43(b) grievance due to her physical limitations, which prevented her from performing the Left Seat Track Cover position. The district court correctly points out that, once Lockard was placed in the Right Tail Secure position, she was required to file another 43(b) grievance if the job to which she was reassigned did not meet her physical restrictions. Consequently, GM and UAW had already accommodated Lockard's disability, and were not required to provide further accommodations absent Lockard's requesting further accommodation.

Moreover, Lockard's failure-to-accommodate claim lacks merit because Lockard refused to comply with the procedures through which the defendants may have been able to provide her a reasonable accommodation [**12] once she had obtained the Right Tail Light Secure position. Provision 43(b) of the collective bargaining agreement sets forth the procedure by which employees in Lockard's situation request reassignment at the Plant. Absent a 43(b) grievance, GM could not transfer or reassign her without violating its obligations under the collective bargaining [*787] agreement and, as such. GM could not provide her an accommodation.

Lockard, after undergoing one 43(b) examination with respect to the Left Seat Track Cover position in 1993, refused to submit to another 43(b) examination once she determined that the Right Tail Light Secure position exceeded her physical limitations. The record shows that the 43(b) procedure is job-specific. Lockard's previous 43(b) pertained to the Left Seat Track Cover position. Once she was placed in the Right Tail Secure position, Lockard was required to file another grievance if she felt that position did not meet her physical restrictions. Her only basis for such refusal was her belief that she did not have to undergo another 43(b) exam. By such refusal, however, Lockard failed to trigger the appropriate mechanism by

which she could obtain an accommodation.

Lockard also **[\*\*13]** contends that she requested assistance in identifying an appropriate accommodation, asserting that she "repeatedly sought accommodation" from GM and UAW. As examples, she cites her conversation with Herman Moss and provides the names of several UAW representatives with whom she spoke about her "fervent desire to go back to work." At the same time, however, Lockard admits that, upon telling UAW representatives of her belief that she could not perform the Right Tail Light Secure job, she "was told the only thing that could be done by the union was to request a 43(b) evaluation of the job." Lockard concedes that she refused to follow this advice of her union representatives, noting that she "declined to request such an examination because I knew I could not perform this job period, and further I had been advised that the physical limitations determined by Dr. Dorfman in 1993 were binding on General Motors in any event."

In addition, in her deposition, Lockard acknowledged that a union committeeman told her that management had the right to update or request an update of a Paragraph 43 examination. She stated that she "didn't agree with that," asserting that a 43(b) is final and binding, **[\*\*14]** and she "didn't feel the need to go through another."

Consequently, summary judgment was proper since Lockard failed to establish a prima facie case of discrimination by failing to present evidence that she properly requested an accommodation and because the record shows that she refused to submit to the necessary procedures for doing so.

### b. Interactive Process

Lockard also argues that summary judgment was inappropriate because the defendants failed to engage in good faith in an interactive process, which would identify an effective and reasonable accommodation for her disability. This argument lacks merit, as Lockard's failure to cooperate with the procedures delineated in the collective bargaining agreement effectively precluded the defendants from further assisting her in her search for an appropriate position at the Plant.

*HN5* The idea that employers must engage in an interactive process to identify reasonable accommodations originates in the Regulations accompanying the ADA. See 29 C.F.R. § 1630.2(o)(3)(1995)("To *HN6* determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive **[\*\*15]** process with the qualified individual with a disability in need of accommodation. This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations."). The Regulations explain that an appropriate reasonable accommodation "is best determined through a flexible, interactive process that involves both the employer and **[\*788]** the [employee] with a disability." 29 C.F.R. pt. 1630, App. § 1630.9. We have noted that the Regulations encourage such an interactive process. See *Equal Opportunity Comm'n v. United Parcel Serv., Inc., 249 F.3d 557, 562 n.1 (6th Cir. 2001)* (per curiam).

*HN7* While it is possible that an employer may violate the terms of the ADA by failing to engage in such an interactive process in good faith. Lockard has failed to present evidence to support such a claim. This is not a case in which an employer's unwillingness to engage in an interactive process has led to its failure to reasonably accommodate an employee. See *Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1135* (7th cir. 1996). The burden remains on the employee to request an accommodation. **[\*\*16]** See *Taylor v. Phoenixville Sch. Dist., 174 F.3d 142, 165 (3d Cir. 1999)*. See also *Schmidt v. Safeway, Inc., 864 F. Supp. 991, 997 (D. Or. 1994)*(noting that an employee cannot "expect the employer to read his mind and know he secretly wanted a particular accommodation"); *Brown v. Chase Brass & Copper,*

2001 U.S. App. LEXIS 15726, 2001 WL 814931 (2001). Because we find Lockard failed to request a reasonable accommodation from her employer, the defendant's duty to engage in an interactive search for a reasonable accommodation never arose.

As discussed above, Lockard failed to present evidence showing that she requested a reasonable accommodation from her employer following her placement in the Right Tail Light Secure position. Thus, assuming GM would have had a duty to engage in an interactive process, Lockard never triggered such duty because of her failure to request a reasonable accommodation in the first place.

Moreover, even if she had triggered the interactive process, Lockard could not establish that the defendants exercised bad faith. HN8 To bear liability for a failure to accommodate, an employer must be responsible for a breakdown in the interactive [**17] process. See e.g., Templeton v. Neodata Servs., Inc., 162 F.3d 617, 619 (10th Cir 1998). In this regard, courts have held that an employer is not responsible for a breakdown in the interactive process unless the employer actually failed to offer a reasonable accommodation. Rehling v. City of Chicago, 207 F.3d 1009, 1016 (7th Cir. 2000). GM provided Lockard with the reasonable accommodation of the Right Tail Light secure position. As such, GM would not be liable for a breakdown in the interactive process.

## 2. Motion to Strike Plaintiff's Affidavit

The final issue on appeal concerns a fifty-seven paragraph affidavit submitted by Lockard in connection with her memorandum and evidentiary materials in opposition to GM's motion for summary judgment. GM filed a motion to strike this affidavit, arguing that statements contained therein directly contradicted her "unequivocal deposition testimony, it addressed previously dismissed claims, and the statements in it are not based on personal knowledge, are speculative and argumentative."

Specifically, GM noted that, in her deposition, Lockard identified four jobs she contended she could perform, but [**18] admitted she did not know of the specific job requirements or whether she had sufficient seniority to hold these jobs. She also admitted she was not aware of any other evidence to support her disability claim. In her affidavit, Lockard asserted for the first time that she did have sufficient seniority to hold these jobs and that each job did meet her medical restrictions. She did not offer evidence to support the claims made in her affidavit.

In addition, GM moved to strike portions of the affidavit in which Lockard [*789] contended she had an agreement with Herman Moss, Plant manager, whereby she would be able to personally select any job she could perform if she would undergo an examination at the Banyan Tree facility. GM moved to strike this portion of her affidavit because Lockard failed to introduce evidence regarding this meeting despite having had ample opportunity to do so during discovery and having been questioned extensively during her deposition.

The district court struck "the portions of the Plaintiff's affidavits which contradict her previous testimony." The district court based this decision on Sixth Circuit case law holding that HN9 a party may not create a genuine issue of [**19] material fact by filing an affidavit that "essentially contradicts his previous deposition testimony" after a motion for summary judgment has been made. See Penny v. United Parcel Serv., 128 F.3d 408, 415 (6th Cir. 1997). The district court did not elaborate on which portions of Lockard's affidavit it deemed to be contradictory or inconsistent with earlier testimony.

On appeal, Lockard argues that the district court erred in striking portions of her affidavit without specifying which portions were being stricken and without articulating how those portions conflicted with her prior deposition testimony. HN10 This court reviews the district

court's decision to grant or deny a motion to strike for abuse of discretion. An abuse of discretion exists where a reviewing court "is firmly convinced that a mistake has been made." *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995). Reasonable decisions will not be overturned. See *Equal Employment Opportunity Comm'n v. Green*, 76 F.3d 19, 23 (1st Cir. 1996)(noting the district court's broad authority in prescribing the evidentiary materials it will consider in deciding a summary judgment [**20] motion); *Whitted v. Gen. Motors Corp.*, 58 F.3d 1200, 1203 (7th Cir. 1995). See also *Mohney v. USA Hockey, Inc.*, 5 Fed.Appx. 450, 2001 U.S. App. LEXIS 3584, 2001 WL 223852, at *2 (6th Cir. 2001); *Collazos-Cruz v. United States*, 1997 U.S. App. LEXIS 17196, 1997 WL 377037, at *2 (6th Cir. 1997)(per curiam).

HN11 A party who has been examined at length at deposition cannot create a genuine issue of material fact by later submitting an affidavit that contradicts previously sworn testimony. *Penny v. United Parcel Serv.*, 128 F.3d 408, 416 (6th Cir. 1997); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). Moreover, the fact that a party has had ample opportunity during discovery to present evidence provides courts with reason to prevent that party from introducing new evidence in an affidavit opposing summary judgment. *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir 1984).

On appeal, Lockard does not dispute the fact that a party may not create a genuine issue of material fact to defeat summary judgment by filing an affidavit that conflicts with prior deposition testimony. She maintains, rather, that her affidavit [**21] did not contradict her deposition testimony. Lockard claims that she was truthful in her deposition and that she answered the questions posed to her to the best of her knowledge. n3 Lockard further objects to the fact that the district court did not identify which paragraphs of her affidavit were stricken. Lockard contends that it is [*790] not possible to determine what effect, if any, the court's decision to strike had on its grant of summary judgment in favor of defendants, because the court never discussed the affidavits at all in its memorandum opinion and order.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 As Lockard views it, during her deposition she was asked *"as she sat there"* whether she knew if she had seniority for the four jobs. She responded "I don't know right now." Lockard further argues that she responded truthfully at deposition, because "if someone with more seniority was performing those jobs at the time of Plaintiff's deposition ... she would not, without a special dispensation from GM and the Union, have the right to those jobs."



- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**22]

The district court did not abuse its discretion in granting GM's motion to strike portions of Lockard's affidavit. Lockard's statements concerning her qualifications to hold an available position at the plant were inconsistent with her deposition testimony. We cannot say that the district court abused its discretion or acted unreasonably in striking the inconsistent portions of Lockard's testimony. It appears that the district court granted GM's motion to strike with respect to those portions of the affidavit that GM specifically pointed out as being inconsistent with previous deposition testimony. While it would have been more helpful if the district court had specified which portions of the affidavit it deemed inconsistent with Lockard's prior testimony, the failure to do so does not rise to the level of an abuse of discretion.

More importantly, even if the district court had acted improperly in granting GM's motion to strike, any error would not change the disposition of the present case. The generic claims contained within the affidavit regarding Lockard's qualifications and her alleged agreement

with Herman Moss would have no effect on the outcome of the present case. A review **[\*\*23]** of the entire record demonstrates that Lockard has failed to raise a genuine issue of material fact as to whether she requested an accommodation, and has provided no valid explanation for her failure to comply with the 43(b) procedures at the Plant, other than her belief that she did not need to do so. As such, summary judgment was appropriate.

CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

　　Service: **Get by LEXSEE®**
　　Citation: **2002 U.S. App. Lexis 25787**
　　　　View: Full
Date/Time: Thursday, April 7, 2005 - 10:59 AM EDT

\* Signal Legend:
● - Warning: Negative treatment is indicated
■ - Questioned: Validity questioned by citing refs
▲ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.