Service: **Get by LEXSEE®**
Citation: **2003 U.S. App. Lexis 2236**

*57 Fed. Appx. 675, \*; 2003 U.S. App. LEXIS 2236, \*\**

RINI DAS, Plaintiff-Appellant, v. THE OHIO STATE UNIVERSITY, Defendant-Appellee.

No. 00-4429

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

57 Fed. Appx. 675; 2003 U.S. App. LEXIS 2236

February 6, 2003, Filed

**NOTICE: [\*\*1]** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO. 98-00045. Marbley. 10-05-00.

Das v. Ohio State Univ., 115 F. Supp. 2d 885, 2000 U.S. Dist. LEXIS 14759 (S.D. Ohio 2000).

**DISPOSITION:** Affirmed.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff former employee appealed an order of the United States District Court for the Southern District of Ohio, which granted summary judgment in favor of defendant employer as to the employee's Title VII of the Civil Rights Act of 1964 national-origin discrimination claim.

**OVERVIEW:** The district court concluded that the employee failed to produce sufficient evidence to create a triable issue supportive of the fourth element of her prima facie "circumstantial" case, as the record was uncontradicted that the employer did not replace the employee following her termination but instead assigned her duties among two other staff members. Further, the employer identified no similarly-situated comparable fellow employee to whom the employer had accorded superior treatment. The employee argued that the instant court should remand for a jury trial because she purportedly evidenced a sufficient inferential link between her minority status and her employment discharge to create a jury question. The court, however, concluded that even if it assumed that the employee had cleared all prima facie elemental hurdles, she did not surmount the employer's proffered legitimate non-discriminatory reason for her severance. The employer had claimed that it requested her resignation because her work product was consistently unsatisfactory and her interpersonal skills were substandard to a degree that severely impeded her professional effectiveness.

**OUTCOME:** The district court's order was affirmed.

**CORE TERMS:** summary judgment, direct evidence, articulated, prima facie case, national origin, inferential, proffered, resignation, evidenced, cultural, employment discrimination,

prima facie, duties, work product, discriminatory, insensitivity, irrespective, former employer, protected class, de novo, objectively, favorable, skills, unsatisfactory, unacceptable, workplace, annual, motive, circumstantial evidence, legally sufficient

## LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Summary Judgment > Summary Judgment Standard

**HN1** All record evidence must be construed in the light most favorable to the opponent of summary judgment.  More Like This Headnote

Civil Procedure > Appeals > Standards of Review > De Novo Review

**HN2** The appellate court examines de novo a lower court's grant of summary judgment.  More Like This Headnote

Labor & Employment Law > Discrimination > Title VII

**HN3** See 42 U.S.C.S. § 2000e-2(a)(1).

Labor & Employment Law > Discrimination > Title VII
Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis

**HN4** Title VII of the Civil Rights Act of 1964 disparate treatment employment discrimination may be proved either by direct evidence or indirect circumstantial evidence. A direct evidence discrimination case requires proof which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. An example of direct proof of outlawed discrimination would be evidence of an announcement by the decision-maker to the ex-employee: I fired you because you are disabled or are a member of some other legally protected minority classification. Merely vague, ambiguous, or isolated remarks by a company agent which were not related to the decision-making process and were not made proximate to the assailed adverse employment action cannot constitute sufficient direct evidence of outlawed employment discrimination to create a jury question.  More Like This Headnote

Labor & Employment Law > Discrimination > Title VII

**HN5** A plaintiff's prima facie Title VII of the Civil Rights Act of 1964 employment discrimination claim requires proof that (1) she was a member of the protected class, e.g., an ethnic minority; (2) she was subjected to an adverse employment action; (3) she was qualified for the particular position; and (4) she was replaced by a person not a member of the protected class or a similarly situated person outside of the protected class received comparatively favorable treatment.  More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis

**HN6** A McDonnell Douglas prima facie case is not the equivalent of a factual finding of discrimination. The employer must be allowed some latitude to introduce evidence which bears on his motive.  More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis

**HN7** In the context of the McDonnell Douglas framework, a defendant need merely proffer, rather than prove, a sufficient non-discriminatory rationale for having taken the adverse employment action in controversy.  More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Benefits

**HN8** Generally, to carry her burden at trial of disproving an employer's proffered performance dissatisfaction explanation and concomitantly proving actual

discrimination, the plaintiff must supply proof sufficient to persuade a rational jury that she was performing to the employer's reasonable satisfaction. More Like This Headnote

**COUNSEL:** For RINI DAS, Plaintiff-Appellant: William J. O'Malley, Columbus, OH.

Rini Das, Plaintiff-Appellant, Pro se, Columbus, OH.

For OHIO STATE UNIVERSITY, THE OHIO STATE UNIVERSITY, UNIVERSITY HOSPITALS MED CENTER, Defendants-Appellees: Keith W. Schneider, Jeffrey A. Rodgers, Maguire & Schneider, Columbus, OH.

**JUDGES:** BEFORE: KEITH, KRUPANSKY, and CLAY, Circuit Judges.

**OPINIONBY:** KRUPANSKY

**OPINION:** [*676] **KRUPANSKY, Circuit Judge.** The plaintiff-appellant, Rini Das ("the plaintiff" or "Das"), a citizen of India, has contested the district court's award of summary judgment to her former employer, defendant-appellee The Ohio State University ("OSU" or "the defendant"), by which that court dismissed Das' complaint alleging Title VII "national [**2] origin" discrimination in employment and other claims. n1 *Das v. The Ohio State University,* 115 F. Supp. 2d 885 (S.D. Ohio 2000). On review, the plaintiff has charged that the district judge had improperly weighed conflicting evidence in the defendant's favor in lieu of submitting her evidence to a jury. See *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) (explaining that HN1 all record evidence must be construed in the light most favorable to the opponent of summary judgment). HN2 The appellate court examines *de novo* a lower court's grant of summary judgment. *Hansard v. Barrett,* 980 F.2d 1059, 1061 (6th Cir. 1992).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The plaintiff's complaint had asserted additional federal and state law causes of action. The district court summarily rejected each of those claims. However, on review, via her appellant's brief, Das has irrevocably waived all claims stated in her complaint other than her Title VII action for averred national origin discrimination in employment. See *United States v. Olano,* 507 U.S. 725, 733, 123 L. Ed. 2d 508, 113 S. Ct. 1770 (1993); *United States v. Koeberlein,* 161 F.3d 946, 949 & n.2 (6th Cir. 1998).

Section 703(a) of Title VII of the Civil Rights Act of 1964 partially dictates:

> HN3 It shall be an unlawful employment practice for an employer --
>
> (1) ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or *national origin*[.]

42 U.S.C. § 2000e-2(a)(1). (Emphasis added).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [**3]

The trial court succinctly articulated the operative facts of record. *Das,* 115 F. Supp. 2d at 886-88. [*677] Briefly summarized, the record proof reflected that, in July 1995, OSU hired Das, with full knowledge of her alien status, to work as a Clinical Quality Engineer in its hospital's Clinical Quality Management Department ("CQMD"). The duties of that post included coordinating the activities of medical clinicians to improve the medical center's overall performance, innovating improvements in hospital practices to facilitate the delivery of services, and representing her department at committee meetings. Das began working at the university hospital in that capacity during August 1995.

Virtually from the outset of Das' tenure, the plaintiff's supervisor, CQMD Director Kelly Scheiderer ("Scheiderer"), identified serious problems with the plaintiff's job performance, including an inability to respect professional confidentiality obligations, a lack of professional judgment and independence, and a surprising degree of unprofessionalism in her interactions with superiors and colleagues. The collective testimony of Scheiderer and Hospital Administrator Gail Marsh ("Marsh") [**4] disclosed that Das used inappropriately informal "slang" expressions in professional communications; frequently committed, in her formal records of official proceedings and in other written communiques, unacceptable inaccuracies including grammar and usage errors, which caused misunderstandings and miscommunications; and required a degree of hands-on supervision atypical for a highly educated management-level employee. The plaintiff's low-quality work product often compelled substantial revision thereof, or duplication of effort, by a superior. Furthermore, Das was prone to improperly delegating her work duties and responsibilities to subordinate employees. Moreover, in addition to her substantively lax and ineffective performance, Das typically communicated verbally in a loud, confrontational, or aggressive tone; habitually interrupted others; and frequently criticized her workplace colleagues.

In August 1996, following the completion of the plaintiff's first year on OSU's payroll, Scheiderer prepared a routine annual written Performance and Commitment to Excellence ("PACE") evaluation of Das' performance, whereon she listed Das' practical deficiencies outlined above. That document, [**5] as drafted by Scheiderer, advised the plaintiff that her chronic failure to correct those inadequacies or improve her performance, irrespective of Scheiderer's continual verbal counseling of the plaintiff regarding the unsatisfactory discharge of her professional duties, had culminated in an unacceptably low rating of her year-long work product and workplace practices. Prior to the presentation of that assessment to Das, Marsh studied it. Marsh then referred it to Human Resources Administrator Lidia Migitz ("Migitz") for an independent review and commentary. Based upon the objective information furnished by Scheiderer via the PACE write-up, Migitz recommended that the university request Das' resignation; or alternatively, that it should discharge her if she declined to resign.

Subsequently, in mid-August 1996, Scheiderer and Migitz conducted a routine annual performance review meeting with Das. The two managers presented the negative PACE evaluation to Das at that time, coupled with a request for her resignation plus notification that she otherwise would face dismissal. Confronted with an election between immediate resignation or involuntary termination, Das selected resignation. [**6]

Das has claimed to have been "surprised" by the unflattering PACE, and by the severance of her employment relationship [*678] with the defendant. However, her protests that she had not received any performance warning or criticism, or corrective guidance, prior to the August 1996 written PACE document and associated meeting, were contradicted by her own attestations that, prior to August 1996, Scheiderer had, in jest, "threatened" to withhold OSU's assistance in securing a "green card" from the United States Immigration and Naturalization Service for Das unless Das improved her problematic behavior patterns and unacceptable work habits as counseled by Scheiderer. Das also conceded that, prior to her annual review, she had been instructed to adopt a "more formal" writing style, and had been

chided for her antagonistic and hostile "tone" at meetings.

Via her self-serving testimony, Das has endeavored to assign an ethnically discriminatory motive propelling OSU's decision to discharge her, claiming that, during the year of her employment by the defendant, it had exhibited a pattern of "cultural insensitivity" towards her, which had blossomed into an ethnically biased performance evaluation, [**7] which in turn germinated a nationality-animated discriminatory discharge. She has contended that her misuse of the English language, and her offensive communication techniques, were innocuous byproducts of her foreign linguistic and cultural heritage. She charged that Scheiderer, and a second, unnamed, hospital employee, had mocked her alien accent. Das also alleged that OSU's requirement that she complete the identical standardized "Myers Briggs Personality Inventory" that it administered to all other employees in her department was somehow culturally bigoted; that managerial pressure to participate in festive seasonal activities likewise discriminated against her; and that Marsh's suggestion that she remove posted racially-charged cartoons from her work area similarly evidenced disparate treatment impelled by her national origin. Finally, Das has purported to corroborate her "cultural insensitivity" charge by alluding to vague conclusory hearsay statements attributed to co-workers Gabrielle Reissland and Sally Betz which allegedly mirrored their personal subjective opinions that the defendant had behaved insensitively and discriminatorily towards minorities. n2

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The subjective conclusory opinions of the plaintiff or her co-workers do not comprise competent proofs of employment discrimination. See Chappell v. GTE Products Corp., 803 F.2d 261, 268 (6th Cir. 1986) ("Mere personal beliefs, conjecture and speculation are insufficient to support an inference of age discrimination.") (citation omitted).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [**8]

HN4 Title VII "disparate treatment" employment discrimination may be proved either by direct evidence or indirect circumstantial evidence. See, e.g., Weberg v. Franks, 229 F.3d 514, 522-23 (6th Cir. 2000). A "direct evidence" discrimination case requires proof "'which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" Id. at 522 (quoting Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999)). An example of direct proof of outlawed discrimination would be evidence of an announcement by the decision-maker to the ex-employee. "I fired you because you are disabled [or are a member of some other legally protected minority classification]." Smith v. Chrysler Corp., 155 F.3d 799, 805 (6th Cir. 1998). See Smith v. Leggett Wire Co., 220 F.3d 752, 759-60 (6th Cir. 2000) (collecting Sixth Circuit decisions which mandated that only pertinent comments proximately made by company decision-makers may constitute evidence of discriminatory animus by the defendant). "Merely vague, ambiguous, or [**9] isolated remarks" by a company agent which were [*679] not related to the decision-making process and were not made proximate to the assailed adverse employment action cannot constitute sufficient direct evidence of outlawed employment discrimination to create a jury question. See Cooley v. Carmike Cinemas, Inc., 25 F.3d 1325, 1330-31 (6th Cir. 1994).

The trial court committed no error of fact or law in determining that, after construing all record proof most favorably for the plaintiff, she "has not presented direct evidence of discrimination." Das, 115 F. Supp. 2d at 890. The fragments of evidence, described above, which purportedly reflected the defendant's "cultural insensitivity" towards Das, even if credited, have not been evidentiarily linked, either causally or temporally, to the decision to remove Das from her job. In fact, the record is devoid of even a scintilla of evidence that

Migitz, the manager who initially recommended that Das should be released, had at any time exhibited any "cultural insensitivity" towards Das, or had been motivated to any degree by any factor(s) other then the objective information concerning Das' performance irregularities [**10] and productivity-obstructing foibles reported in Scheiderer's PACE review. For the reasons articulated by the district court, this reviewing court concludes that Das has failed to proffer legally sufficient evidence to support a triable "direct evidence" discrimination claim. n3 See Das, 115 F. Supp. 2d at 889-90.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Accordingly, this court has no occasion to address the defendant's burden of persuasion which would have arisen if the plaintiff had offered sufficient proof to create a triable "direct evidence" case. See, e.g., Weberg v. Franks, 229 F.3d 514, 522-23 (6th Cir. 2000).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Turning to the plaintiff's "inferential" case, under the "burden shifting" paradigm articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), Das' HN5 prima facie Title VII employment discrimination claim requires proof that:

> (1) she [the plaintiff] was a member of the protected class, i.e., [an ethnic minority]; (2) that she was subjected to an adverse employment [**11] action; (3) that she was qualified for the particular position; and (4) that she was replaced by a person not a member of the protected class [or that a similarly situated person outside of the protected class received comparatively favorable treatment]. n4

Gagne v. Northwest Nat'l Ins. Co., 881 F.2d 309, 313 (6th Cir. 1989) (bracketed material added). See also Bush v. Dictaphone Corp., 161 F.3d 363, 368 (6th Cir. 1999).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Under the McDonnell Douglas framework, if the plaintiff can satisfy the quadruple-elemental demands of her "circumstantial" prima facie case, the burden of producing (but not of proving) a legitimate, nondiscriminatory reason for the charged adverse employment action shifts to the defendant former employer. If the defendant successfully carries that burden, a de novo burden is imposed upon the plaintiff to disprove the employer's articulated reason by proving that it was a mere pretext intended to mask an actual discriminatory purpose. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142-48, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000); Godfredson v. Hess & Clark, Inc., 173 F.3d 365, 371 (6th Cir. 1999).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [**12]

The trial court resolved that Das had failed to produce sufficient evidence to create a triable issue supportive of the fourth element of her prima facie "circumstantial" case, because the

record proof was uncontradicted that OSU did not replace Das following her termination, but instead assigned her duties among the two remaining Quality Control Engineers on the hospital staff; moreover, Das has identified no "similarly situated" comparable fellow employee [*680] to whom OSU had accorded superior treatment. Consequently, the district court concluded, at the first step of the three-stage *McDonnell Douglas* "burden shifting" analysis, that the plaintiff's inferential case was non-viable because of the absence of colorable proof in support of essential element no. 4. See Das, 115 F. Supp. 2d at 890-91.

On review, Das has not challenged the "absence of evidence" ruling *per se.* Rather, she has renewed a novel alternate legal argument, which the trial jurist had rejected, namely that, *irrespective* of her failure of proof on the fourth element of her *prima facie* case, this court should nevertheless remand her claim for a jury trial on its averred merits, because [**13] she purportedly had evidenced a sufficient inferential link between her minority status and her employment discharge to create a jury question. In support of that theory, the plaintiff has cited Furnco Constr. Corp. v. Waters, 438 U.S. 567, 57 L. Ed. 2d 957, 98 S. Ct. 2943 (1978), wherein the Supreme Court sustained an intermediate court's ruling that a group of race discrimination plaintiffs had sufficiently evidenced the four elements of their *McDonnell Douglas* "inferential" *prima facie* cases, but then reversed that court's setting aside of the trial court's judgment for the defendant, because the appellate court had improperly discredited the defendant employer's proffered explanation of its faulted employment actions. The Court remanded the case to the court of appeals for reconsideration in light of the Court's legal clarifications, including, *inter alia,* its pronouncement that HN6"[a] *McDonnell Douglas prima facie* case is not the equivalent of a factual finding of discrimination, however ... The employer must be allowed some latitude to introduce evidence which bears on his motive." Id. at 579-80.

Specifically, the *Furnco* Court rebuked the court of appeals [**14] for having required that, for the employer to rebut the plaintiffs' *prima facie* case, the employer's articulated justification for its contested hiring procedure must demonstrate that it was "the method which allows the employer to consider the qualifications of the greatest number of minority applicants." Id. at 576. The Court, in the course of exploring the flexible outer boundaries of permissible legitimate nondiscriminatory explanations for an employer's assailed employment practices, remarked that the burden-shifting *McDonnell Douglas* formulation "was never intended to be rigid, mechanized, or ritualistic." Id. at 577. Das, seizing upon that dicta out of context, has contended that, in her particular case, the district court should have accepted her proffered overall inferential evidence of nationality discrimination as having adequately compensated or substituted for the absence of proof of the existence of any non-protected replacement worker or of superior treatment bestowed upon any similarly-situated non-minority comparable employee, such that the trial court should have deemed her *prima facie* case to have been proved irrespective [**15] of her failure to evidence a standard element of that *prima facie* claim.

Although the abstract merit of the plaintiff's creative theory is, to say the least, open to debate, and furthermore the applicability of that theory, even if colorable, to the instant record is patently susceptible to an overpowering assault given the fatal evidentiary void in the plaintiff's overall alleged "proof" of actual discrimination, this court need not resolve those matters. Instead, even if the instant court assumes *arguendo* that Das has cleared all *prima facie* elemental hurdles, she has not surmounted the defendant's proffered legitimate [*681] non-discriminatory reason for her severance. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-09, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993); McDonnell Douglas, 411 U.S. at 802. The hospital asserted that it requested Das' resignation because it had concluded that her work product had been consistently unsatisfactory and her interpersonal skills were substandard to a degree which severely impeded her professional effectiveness. See Smith v. Leggett Wire Co., 220 F.3d 752, 762 (6th Cir. 2000); Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084-85 (6th Cir. 1994). [**16] Although HN7a defendant need merely "proffer," rather than prove, a sufficient non-discriminatory rationale

for having taken the adverse employment action in controversy, OSU offered *objective proof* of Das' unsuitability for her position. By contrast, Das, who at trial would bear the evidentiary burden of *disproving* her former employer's proffered legitimate reason for her discharge and *proving* its actual discriminatory motive, produced no competent objective material evidence that the defendant's articulated explanation was a mere pretext masking actual discrimination. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142-48, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000).

To survive summary judgment, Das needed to furnish evidence which, if fully credited and construed in the light most favorable to her, would be legally sufficient to justify a finding by hypothetical rational jurors that OSU in fact had released her because of her national origin, *irrespective* of its assertion, supported by qualified evidence, that it resolved to terminate the plaintiff's employment because of her objectively deficient job performance, unacceptable work habits, and lack of communication skills. [**17] However, Das failed to produce *any* probative evidence that the reasons provided by her former employer for her discharge were factually false; that OSU was actually motivated by her nationality rather than her unsatisfactory work product, inadequate job skills, disharmonious workplace interactions, and stubborn resistance to constructive advisories; or that her evidenced deficiencies were objectively insufficient to warrant dismissal. See Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000) (citation omitted).

HN8 Generally, to carry her burden at trial of *disproving* the employer's proffered "performance dissatisfaction" explanation and concomitantly *proving* actual discrimination, the plaintiff must supply proof sufficient to persuade a rational jury that she "was performing to the employer's reasonable satisfaction." Godfredson v. Hess & Clark, Inc., 173 F.3d 365, 372 (6th Cir. 1999). The subject evidentiary record, as evolved herein and in the district court's published decision, revealed that Das had produced *no* material evidence which gainsaid OSU's proof that she had committed the evidenced objective acts of malfeasance and/ [**18] or unprofessionalism; or its proof that it terminated Das by reason of those objectively sufficient rationales. Thus, the district court's summary dismissal of the plaintiff's "circumstantial evidence" discrimination cause is sustained, albeit on a rationale distinct from the one framed by the lower court. See Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co., 772 F.2d 214, 216 (6th Cir.1985) (explaining that an intermediate court should affirm a district court's decision "if correct for any reason, including a reason not considered by the lower court.").

In conclusion, this reviewing court, following careful study and consideration of the district court's well-reasoned published summary judgment opinion, the briefs and arguments of counsel, the materials contained in the litigants' joint appendix, and the controlling legal authorities, has, upon [*682] *de novo* examination, identified no material reversible error of fact or law in the district judge's ultimate adverse resolution of the plaintiff's claims. Accordingly, the district court's October 4, 2000 summary judgment in favor of the defendant is **AFFIRMED**.

Service: **Get by LEXSEE®**
Citation: **2003 U.S. App. Lexis 2236**
View: **Full**
Date/Time: **Wednesday, April 6, 2005 - 2:42 PM EDT**

* Signal Legend:
- ● - Warning: Negative treatment is indicated
- ▣ - Questioned: Validity questioned by citing refs
- ▲ - Caution: Possible negative treatment
- ◆ - Positive treatment is indicated
- Ⓐ - Citing Refs. With Analysis Available

🛑 - Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.