Service: **Get by LEXSEE®**
Citation: **2004 U.S. App. Lexis 14889**

*105 Fed. Appx. 34, \*; 2004 U.S. App. LEXIS 14889, \*\**

WILLIAM SCHRAMM, Plaintiff-Appellant, v. RODNEY E. SLATER, Defendant-Appellee.

No. 03-3333

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

105 Fed. Appx. 34; 2004 U.S. App. LEXIS 14889

July 14, 2004, Filed

**NOTICE:** [\*\*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO. 00-07320. Armstrong (M). 01-07-03.

**DISPOSITION:** Affirmed.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant employee sued appellee employer, alleging gender discrimination from a hostile work environment and retaliation, in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C.S. § 2000e et seq. The United States District Court for the Northern District of Ohio granted summary judgment in favor the employer. The employee sought review.

**OVERVIEW:** The employee worked for a federal agency as a flight data aide. He claimed gender-based harassment and unlawful retaliation. On appeal, the court affirmed. Any harassment was not based on gender, and it was not sufficiently severe to support a claim. The employee cited various instances of workplace behavior with sexual content, but these incidents did not prove that the employee was harassed due to his gender. Alleged animosity was not the result of a work environment that was hostile to men. Cited vulgar language was not gender specific. Acts of an unpleasant and uncooperative co-worker did not create a hostile work environment due to gender. Although the employee cited events supporting a claim of disparate treatment, he did not raise this claim on appeal. Additionally, the employee did not establish the requisite causal connection between his protected activity and the alleged unlawful retaliation. Temporal proximity without other evidence of a retaliatory motive did not establish the requisite causal link. The employee did not engage in protected activity by siding with a co-worker in his harassment complaint. Certain statements were not hostile, severe, or pervasive.

**OUTCOME:** The court affirmed the district court's summary judgment in favor of the employer.

**CORE TERMS:** harassment, co-worker, male, hostile work environment, female, retaliatory, retaliation, disparate treatment, supervisor, sex, controller, protected activity, summary judgment, causal, sexual harassment, sex-based, severe, sex discrimination, prima facie

case, pervasive, reprisal, hostile, Civil Rights Act, affirmative defense, causal connection, counselor, prong, prima facie, scheduling, subjected

## LexisNexis(R) Headnotes ♦ Hide Headnotes

Civil Procedure > Summary Judgment > Standards of Review
**HN1**⤓An appellate court reviews the grant or denial of summary judgment de novo. More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard
**HN2**⤓Summary judgment is appropriate when there is no genuine issue of material fact, thereby entitling the movant to a judgment as a matter of law. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. A court's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of evidence that the plaintiff is entitled to a verdict. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
**HN3**⤓The "mere possibility" of a factual dispute is not sufficient to create a triable case. To defeat summary judgment, the plaintiff must come forward with more persuasive evidence to support his claim than would otherwise be necessary. If the defendant successfully demonstrates, after a reasonable period of discovery, that the plaintiff cannot produce sufficient evidence beyond the bare allegations of the complaint to support-an essential element of his or her case, summary judgment is appropriate. When determining whether to reach this conclusion, courts view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1964
Labor & Employment Law > Discrimination > Title VII
**HN4**⤓Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., prohibits discrimination because of race, color, religion, sex, or national origin. 42 U.S.C.S. § 2000e-2(a). More Like This Headnote

Labor & Employment Law > Discrimination > Title VII
Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment
**HN5**⤓One way in which a plaintiff may show unlawful discrimination is by demonstrating the existence of a hostile work environment. The elements of a hostile work environment claim are: A plaintiff may establish a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., by proving that the sex discrimination created a hostile or abusive work environment without having to prove a tangible employment action. In order to establish a hostile work environment claim, an employee must show the following: (1) the employee is a member of a protected class, (2) the employee was subject to unwelcomed sexual harassment, (3) the harassment was based on the employee's sex, (4) the harassment created a hostile work environment, and (5) the employer failed to take reasonable, care to prevent and correct any sexually harassing behavior. The fifth prong is related to an affirmative defense--namely that in a harassment case an employer may avoid liability by showing that the employer had taken reasonable care to prevent and correct harassment and that the plaintiff failed to avail himself or herself of the employer's mechanisms for redressing harassment. To be actionable, harassment must be severe or pervasive, creating an objectively hostile work environment, thus altering the conditions of

employment. More Like This Headnote

Labor & Employment Law > Discrimination > Sexual Harassment > Coverage & Definitions
**HN6** In defining the type of "harassment" prohibited by Title VII of the Civil Rights Act of 1964 (Title), 42 U.S.C.S. § 2000e et seq., the United States Supreme Court has stated: The Supreme Court has never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed. The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace. More Like This Headnote

Labor & Employment Law > Discrimination > Sexual Harassment > Coverage & Definitions
**HN7** For a showing of harassment, both an objective and a subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive. More Like This Headnote

Civil Procedure > Appeals > Reviewability > Preservation for Review
**HN8** Claims not raised on appeal are waived. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Impact > Burden Shifting Analysis
Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment
**HN9** Disparate treatment and hostile work environment arguments both allege violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., rights. However, a disparate treatment argument is analytically distinct from a hostile work environment argument--the tests for the two theories of liability have different elements. More Like This Headnote

Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Exhaustion of Remedies
**HN10** Under 29 C.F.R. § 1614.105(a)(1), an aggrieved person must initiate contact with a counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action. In a hostile work environment claim, this procedural requirement is satisfied if any of the harassment occurs within the 45 day period. More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation
**HN11** Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C.S. § 2000e et seq., forbids retaliation for any act seeking to enforce the statute's prohibition on discrimination. 42 U.S.C.S. § 2000e-3(a) prohibits an employer from retaliating against an employee who has "opposed" any practice by the employer made unlawful under Title VII; and prohibits an employer from retaliating against an employee who has "participated" in any manner in an investigation under Title VII. More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation
**HN12** Retaliatory discrimination can be proved through direct evidence or circumstantial evidence. Where the evidence is circumstantial, plaintiff must make a prima facie case of retaliation: In order to establish a claim of retaliation, a plaintiff must prove that (1) she engaged in an activity protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., (2) the exercise of that protected right was known to the employer, (3) the employer thereafter took an employment

action adverse to the plaintiff, or that the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor, and (4) a causal connection existed between the protected activity and the adverse employment action or harassment. The prima facie burden is light. More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation

**HN13** Where a plaintiff meets the third prong of the prima facie case of discriminatory retaliation by demonstrating that an adverse employment act was taken, then, in the second step of the burden-shifting framework, the defendant faces a burden of production, to offer a legitimate, nondiscriminatory reason for the adverse employment action. If the defendant carries its burden, then, in the final stage in the process, the plaintiff may demonstrate to the factfinder that the defendant's proffered reason is a mere pretext for intentional discrimination. If the third prima facie prong is met through evidence of retaliatory harassment, then the other two steps in the burden-shifting process are inapplicable. However, an employer may assert the same affirmative defense that applies for other forms of harassment -- namely, that the employer took reasonable steps to avoid harassment, but the employee failed to utilize the existing mechanisms for redressing harassment. The affirmative defense would be unavailable, though, if the harassment culminated in an adverse employment action. More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation

**HN14** Timing can be probative of a causal link in a retaliatory discrimination claim. However, evidence that harassment occurred soon after a plaintiff engaged in a protected activity is not sufficient to establish a causal link, absent other evidence of a retaliatory motive. More Like This Headnote

**COUNSEL:** For WILLIAM SCHRAMM, Plaintiff - Appellant: S. Joseph Schramm, McKees Rocks, PA.

For RODNEY E. SLATER, Defendant - Appellee: Robert G. Young, U.S. Attorney's Office for the Western Division, Toledo, OH.

**JUDGES:** BEFORE: DAUGHTREY and CLAY, Circuit Judges; McCALLA, District Judge. *

* The Honorable Jon P. McCalla, United States District Judge for the Western District of Tennessee, sitting by designation.

**OPINIONBY:** CLAY

**OPINION:** [*35] **CLAY, Circuit Judge.** Plaintiff, William Schramm, appeals from the order issued by the district court on January 7, 2003, granting summary judgment in favor of Defendant, Rodney Slater, in this action for sex discrimination under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq. [**2] For the reasons set forth below, we **AFFIRM** the district court.

## BACKGROUND

### Procedural History

On May 24, 2000, Plaintiff filed a complaint in federal court against Rodney E. Slater, Secretary of the Federal Aviation Administration's Department of Transportation. Plaintiff set forth three counts, alleging: (1) sex discrimination, through hostile work environment and disparate treatment, in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et

*seq.;* (2) reprisal/retaliation, in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.;* and (3) violation of due process and equal protection rights, under the constitution and 42 U.S.C. § 1983.

On October 20, 2000, Judge James G. Carr entered an order, transferring the case to Magistrate Judge Vernelis K. Armstrong, upon consent of the parties. On December 19, 2000, the parties stipulated **[*36]** to the dismissal of the third count of the complaint.

On August 15, 2002, Defendant filed a motion for summary judgment. On January 7, 2003, the magistrate judge filed a Memorandum Decision and Order, **[**3]** granting Defendant's motion for summary judgment.

On February 28. 2003, Plaintiff filed a timely notice of appeal.

**Substantive Facts**

The facts were stated in summary form by the magistrate judge:

> Plaintiff, a white male and Air Force veteran, obtained employment with the FAA as a flight data aid with Cleveland's En Route Center [in or before 1981] ... In 1985, Plaintiff was promoted to air traffic controller at the Toledo Express Airport (Toledo Express) and was assigned to that facility until November, 1998. From Spring 1993 through May 1996, Plaintiff served as President of the National Air Traffic Controllers Association.
>
> During his tenure at Toledo Express, Plaintiff was diagnosed with depression, anxiety and post traumatic stress syndrome ... Plaintiff was placed on trauma leave from June or July 1996 through December 1996 ... From December 1996 through February 3, 1997, Plaintiff was temporarily assigned to the Ann Arbor Airport. In November 1998, Plaintiff took administrative leave because of emotional stress associated with alleged gender harassment ... Plaintiff retired for medical reasons in November 1998.
>
> Plaintiff claims that the stress he experienced **[**4]** during his employment at Toledo Express was the result of a hostile work environment resulting from conduct of female co-workers and disparate treatment because of his gender. He complained several times to his employer that he was being subjected to false accusations by female co-workers Jean Drury, Karen Cooper, Linda Verkennes and Carrie Evans. Plaintiff also complained that: 1) he was subjected to a stricter standard and singled out as compared to female co-workers and was subjected to inappropriate, sometimes screaming tirades by female co-workers Karen Cooper and Carrie Evans; 2) Carrie Evans and Karen Cooper were given preferential work and leave scheduling; and his complaints to his supervisor, Jim Blumberg, and other management were not investigated or addressed in the same manner or taken as seriously as complaints of discrimination by female coworkers.
>
> On September 14, 1998, Plaintiff filed an Equal Employment Opportunity (EEO) complaint alleging gender discrimination based on collusion between co-worker, Karen Cooper, and management for purposes of forcing him from the midnight shift and reprisal for filing previous EEO filings. [The complaint was dismissed.] ... **[**5]**
>
> On November 15, 1998, Karen Cooper screamed during a confrontation with Plaintiff "we got you." Construing this comment to mean that Karen Cooper and management had been successful in efforts to retaliate against him for filing EEO complaints, Plaintiff filed an EEO complaint alleging reprisal/retaliation. [The

complaint was dismissed.] ...

On or about March 1, 1999, Plaintiff filed another EEO complaint alleging retaliation based upon the November 15, 1998 collaboration between management and a co-worker to force him to alter his work schedule. [The complaint was dismissed.]

(J.A. at 645-48) (citations omitted).

These facts can be elaborated upon. Various other workers in this workplace, **[*37]** besides Plaintiff, made informal and formal complaints of sexual harassment or sex-based disparate treatment-these other complaints are material to this lawsuit. In the first episode of harassment described by Plaintiff, female controller Jean Drury insisted that Plaintiff (in his capacity as a union representative) place a complaint to a male supervisor, Mark Bernard, regarding the flirtatious conduct between female controller Tracy Michael and "another controller with whom she was **[**6]** allegedly amorously involved." (Petitioner's Br. at 4.) Plaintiff mentions this in stating that Bernard told Michael and the other individual about Plaintiff's complaint-this "created animosity towards" Plaintiff. *Id.*

In the second episode described by Plaintiff, Michael told Plaintiff of allegedly harassing remarks made by three male controllers. Even though Michael wished that the information remain confidential, Plaintiff confided to supervisor Ted Elder, who then approached the three male controllers "and informed them that Mr. Schramm was trying to persuade Ms. Michael to file an EEO complaint against them. Elder later admitted that he intended to create animosity among fellow controllers towards Mr. Schramm." (Petitioner's Br. at 5.)

Plaintiff's co-worker Karen Cooper made various complaints of harassment against co-workers. Cooper made a claim of harassment against male co-worker Neven Vos. Plaintiff "informed Cooper that he intended to support" Vos. (Petitioner's Br. at 13.) According to Plaintiff, this support was the reason that Cooper made complaints that Plaintiff was violating the rule against smoking in the tower. n1 Karen Cooper had an EEO harassment settlement **[**7]** (regarding harassment which does not appear to have involved Plaintiff); the terms of this settlement apparently made Cooper's schedule inflexible-this inflexibility prevented Defendant from altering Cooper's schedule to accommodate Plaintiff's request not to work on the same shift with Cooper. Management also cited Cooper's harassment claims in explaining why Plaintiff's requested attempts to avoid working with Cooper could not be granted: "Mr. Shegitz [a supervisor] wrote a memorandum to Jim Blumberg [a supervisor] instructing him to counsel me that any further attempts to avoid working with Cooper would be seen as retaliatory [against Cooper]." (J.A. at 606.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 It appears that in yet another dispute, Cooper was being accused of harassment by Mike Wlodychak. Plaintiff states that he tried to dissuade Cooper from her erroneous belief that Vos intended to "support" Wlodychak's potential complaint. (J.A. at 604.)

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In another matter, Plaintiff's co-worker Carrie Evans filed an EEO complaint, alleging sexual **[**8]** harassment and discrimination, based on alleged preferential scheduling. It appears Evans' complaint was erroneous in placing blame on Plaintiff, because Plaintiff was not responsible for Evans' scheduling.

Plaintiff requested that supervisor Tim Shegitz transfer Plaintiff from Toledo to Columbus or alter the scheduling so that Plaintiff would not have to work the same shift as Cooper, but Shegitz did not accommodate these requests. More details are set forth as they are pertinent, below.

**DISCUSSION**

Plaintiff argues that the district court erred in granting summary judgment on the claim of sex discrimination as a result of a hostile work environment and the claim of unlawful retaliation. We take these two issues in order.

*HN1* We review the grant or denial of summary judgment *de novo*. *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 466 n.10, [*38] 112 S. Ct. 2072, 119 L. Ed. 2d 265 (1992); *Buckeye Cmty. Hope Found. v. City of Cuyahoga Falls,* 263 F.3d 627, 633 (6th Cir. 2001); *Johnson v. Econ. Dev. Corp.,* 241 F.3d 501, 509 (6th Cir. 2001). *HN2* Summary judgment is appropriate when there is no genuine issue of material fact, [**9] thereby entitling the movant to a judgment as a matter of law. *Kocsis v. Multi-Care Mgmt., Inc.,* 97 F.3d 876, 882 (6th Cir. 1996). In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), the Supreme Court explained that "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. Our "inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of evidence that the plaintiff is entitled to a verdict." *Id.*

*HN3* The "mere possibility" of a factual dispute is not sufficient to create a triable case. *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir. 1986). To defeat summary judgment, the plaintiff "must come forward with more persuasive evidence to support [his] claim than would otherwise be necessary." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). If the defendant successfully demonstrates, after a reasonable period of discovery, [**10] that the plaintiff cannot produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). When determining whether to reach this conclusion, we view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *Williams v. Int'l Paper Co.,* 227 F.3d 706, 710 (6th Cir. 2000); *Smith v. Thornburg,* 136 F.3d 1070, 1074 (6th Cir. 1998).

**I.**

The magistrate judge granted summary judgment on the claim of sexual harassment, concluding that any harassment was not based on sex and that the harassment was not sufficiently severe. Plaintiff contests this ruling.

Title VII of the Civil Rights Act of 1964 *HN4* prohibits discrimination "because of ... race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). *HN5* One way in which a plaintiff may show unlawful discrimination is by demonstrating [**11] the existence of a hostile work environment. This Court has stated the elements of a hostile work environment claim:

> A plaintiff may establish a violation of Title VII by proving that the sex discrimination created a hostile or abusive work environment without having to

prove a tangible employment action. See Meritor Sav. Bank v. Vinson, 477 U.S. 57, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986). In order to establish a hostile work environment claim, an employee must show the following: 1) the employee is a member of a protected class, 2) the employee was subject to unwelcomed sexual harassment, 3) the harassment was based on the employee's sex, 4) the harassment created a hostile work environment, and 5) the employer failed to take reasonable, care to prevent and correct any sexually harassing behavior. n2 [*39] See Williams v. General Motors Corp., 187 F.3d 553, 560-61 (6th Cir. 1999).

Bowman v. Shawnee State Univ., 220 F.3d 456, 462-63 (6th Cir. 2000). To be actionable, harassment must be severe or pervasive, creating an objectively hostile work environment, thus altering the conditions of employment. Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 81, 140 L. Ed. 2d 201, 118 S. Ct. 998 (1998); [**12] Bowman, 220 F.3d at 463.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The fifth prong is related to an affirmative defense--namely that in a harassment case an employer may avoid liability by showing that the employer had taken reasonable care to prevent and correct harassment and that the plaintiff failed to avail himself or herself of the employer's mechanisms for redressing harassment. See EEOC v. Harbert-Yeargin, Inc., 266 F.3d 498, 510 (6th Cir. 2001).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The term "harassment" (or "harassing") is used in all five of the elements except for the first. Thus, before inquiring as to whether the degree of "harassment" was sufficient to violate Title VII, it is important to determine whether there was any discriminatory "harassment" in the first place.

HN6 In defining the type of "harassment" prohibited by Title VII, the Supreme Court has stated:

> We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual [**13] content or connotations. "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Harris v. Forklift Sys., Inc., 510 U.S. 17, 25, 126 L. Ed. 2d 295, 114 S. Ct. 367(1993)(GINSBURG, J., concurring).

Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 80, 140 L. Ed. 2d 201, 118 S. Ct. 998 (1998); see also id. at 81 ("The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace ....").

Plaintiff cites various instances of workplace behavior with "sexual content or connotations." In the first episode that Plaintiff describes, Plaintiff states that female controller Jean Drury insisted that Plaintiff, as a (union) "facility representative," place a complaint to a male supervisor, Mark Bernard, regarding the flirtatious conduct between female controller Tracy Michael and "another controller with whom she was allegedly amorously involved." (Petitioner's Br. at 4.) Plaintiff blames Bernard, a male, for telling Michael and the other individual about Plaintiff's complaint. [**14] But nothing in this account suggests that Plaintiff was harassed due to his sex; rather, from this account it appears that Plaintiff's role as a facility representative helped precipitate the conflict.

Likewise, when Plaintiff told supervisor Ted Elder of female co-worker Tracy Michael's complaints of sexual harassment by three male co-workers, Elder's telling the three males was not sex-based harassment against Plaintiff. If anything, Elder was favoring Plaintiff's sex by giving the three males advanced notice of a female's complaint (which Plaintiff had relayed to Elder). Any animosity created towards Plaintiff was not a result of the work environment being hostile to males.

As another example, Plaintiff alleges that Jean Drury "had tagged an aircraft target with the words 'Lick Me.'" (J.A. at 560.) This could be offensive to reasonable people, but the offensiveness has nothing to do with Plaintiff's being male. The language would be equally offensive to a female who finds vulgarity offensive as to a male with similar sensibilities.

[*40] Plaintiff complains that co-worker Karen Cooper was "known to be dangerous, a threat to public safety and ... had systematically targeted other persons [**15] she disliked." (Petitioner's Br. at 16.) Plaintiff alleges having had to be hospitalized after an explosive confrontation in which Cooper screamed at him, "in a fit of hysterical rage," after Plaintiff asked her to stop smoking in the tower. (Petitioner's Br. at 16.) Nothing in this example suggests that sex was a factor in creating the unpleasant work environment. There does not appear to have been any sex-based harassment, from an objective standard, regardless of whether Plaintiff subjectively perceived sex-based harassment. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 HN7 For a showing of harassment, "both an objective and a subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993)).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Plaintiff presents [**16] certain evidence that might be probative of a claim of disparate treatment by management. Tracy Michael's affidavit states that there was disparate treatment in that management allowed Cooper to use vulgarity but warned Plaintiff after he had used vulgarity. Likewise, (male) co-worker Neven Vos stated that management took no action when there were complaints against Cooper, who was given more leeway than Plaintiff. Also, co-worker James Poole. Regional Vice President of the union, stated, "I witnessed a pattern of sexual discrimination towards men at Toledo," explaining that females' complaints of harassment were addressed more promptly and more effectively than complaints by males. (J.A. at 570-71.)

Yet it does not appear that this Court can consider an argument of disparate treatment. The evidence of disparate treatment is only presented in support of Plaintiff's claim for sex-based

Get a Document - by Citation - 105 Fed. Appx. 34
Page 10 of 13
Case 1:00-cv-00909-SJD-TSH    Document 107-4    Filed 04/07/2005    Page 10 of 13

harassment. In Plaintiff's complaint disparate treatment was alleged (in addition to sex-based harassment). But on appeal Plaintiff does not make any disparate treatment argument; rather, on appeal, Plaintiff argues only that there was a hostile work environment. **HN8** Claims not raised on appeal are waived. [**17] *Kocsis v. Multi-Care Mgmt.,* 97 F.3d 876, 881 (6th Cir. 1996); *Enertech Elec. v. Mahoning County Comm'rs,* 85 F.3d 257, 259 (6th Cir. 1996). **HN9** Disparate treatment and hostile work environment arguments both allege violation of Title VII rights. However, a disparate treatment argument is analytically distinct from a hostile work environment argument-the tests for the two theories of liability have different elements-thus indicating that Plaintiff's hostile work environment argument was not sufficient to preserve the disparate treatment argument before this Court. For these reasons, summary judgment was properly granted on Plaintiff's sex discrimination claim. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Defendant argues for an additional, independent basis for dismissing this claim: failure to exhaust administrative remedies. However, it does not appear that there is merit in Defendant's argument. **HN10** Under 29 C.F.R. § 1614.105(a)(1), "An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." In a hostile work environment claim, this procedural requirement is satisfied if any of the harassment occurs within the forty-five day period. *AMTRAK v. Morgan,* 536 U.S. 101, 117, 153 L. Ed. 2d 106, 122 S. Ct. 2061 (2002). Defendant argues that these requirement were not met, because the alleged harassment incidents all occurred between 1993 and 1998, at times more than forty-five days before Plaintiff's May 12, 1998 contacting of an EEO counselor. But Plaintiff's deposition states that Plaintiff contacted an EEO counselor in July 1996 (and was advised not to file a charge), thus complying with 29 C.F.R. § 1614.105(a)(1). At the very least, there would be a genuine issue of material fact as to whether or not there was contact with an EEO counselor in 1996. Thus, Defendant fails to show lack of administrative exhaustion.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [**18]

[*41] II.

The magistrate judge granted summary judgment on the claim of unlawful retaliation, concluding that the fourth required *prima facie* prong was not met. Plaintiff challenges this ruling.

Title VII **HN11** forbids retaliation for any act seeking to enforce the statute's prohibition on discrimination. *E.g., Johnson v. Univ. of Cincinnati,* 215 F.3d 561, 578 (6th Cir. 2000) ("this section [42 U.S.C. § 2000e-3(a) (1994)] prohibits an employer from retaliating against an employee who has 'opposed' any practice by the employer made unlawful under Title VII; and prohibits an employer from retaliating against an employee who has 'participated' in any manner in an investigation under Title VII.").

As with other federal law discrimination cases, **HN12** retaliation can be proved through direct evidence or circumstantial evidence. *DiCarlo v. Potter,* 358 F.3d 408, 420 (6th Cir. 2004). Where, as here, the evidence is circumstantial, Plaintiff must make a *prima facie* case of retaliation:

In order to establish a claim of retaliation, [a plaintiff] must prove that (1) she

engaged in an activity protected by Title VII, (2) **[**19]** the exercise of that protected right was known to the [employer], (3) the [employer] thereafter took an employment action adverse to [the plaintiff], or that [the plaintiff] was subjected to severe or pervasive retaliatory harassment by a supervisor, and (4) a causal connection existed between the protected activity and the adverse employment action or harassment.

Akers v. Alvey, 338 F.3d 491, 497 (6th Cir. 2003) (citations omitted). Accord DiCarlo, 358 F.3d at 420. The *prima facie* burden is light. n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 DiCarlo, 358 F.3d at 420 ("'The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met.' Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000).").

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**HN13** Where a plaintiff meets the third prong of the *prima facie* case by demonstrating that an adverse employment act was taken, then, in the second step of the burden-shifting framework, the defendant faces a burden of production, **[**20]** to offer a legitimate, nondiscriminatory reason for the adverse employment action. Akers, 338 F.3d at 499; DiCarlo, 358 F.3d at 420. If the defendant carries its burden, then, in the final stage in the process, the plaintiff may demonstrate to the factfinder that the defendant's proffered reason is a mere pretext for intentional discrimination. Akers, 338 F.3d at 499; DiCarlo, 358 F.3d at 420.

If the third *prima facie* prong is met through evidence of retaliatory harassment, then the other two steps in the burden-shifting process are inapplicable. However, an employer may assert the same affirmative defense that applies for other forms of harassment n6 -namely, that the employer took reasonable steps to avoid harassment, but the employee failed to utilize the existing mechanisms for redressing harassment. See EEOC v. Harbert-Yeargin, Inc., 266 F.3d 498, 510 (6th **[*42]** Cir. 2001). The affirmative defense would be unavailable, though, if the harassment culminated in an adverse employment action. Williams v. GMC, 187 F.3d 553, 561 (6th Cir. 1999).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000) ("an employer is entitled to the same affirmative defense for retaliatory harassment that it is entitled to for sexual harassment").

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[**21]**

Defendant does not challenge the magistrate's ruling that Plaintiff met the first three elements of the *prima facie* case. The question is whether the lower court erred in ruling that Plaintiff failed to meet the fourth required *prima facie* element, requiring a causal connection between the protected activity and the harassment or the alleged adverse employment action

that occurred.

Plaintiff presents three categories of allegedly retaliatory acts:

> Appellant asserts that the majority of the alleged violations of Title VII mentioned in his factual summary are also acts of retaliatory conduct taken for his participation in Title VII activities. These acts of reprisal fall generally into three groups: 1) those occurring between December 10, 1996, and April, 1998, as a result of Mr. Schramm's pursuit of the four Title VII violations of DeForest and his supervisors; 2) the complaints of Karen Cooper, taken after Mr. Schramm informed her that he would support Neven Vos in her sexual harassment claim; 3) those actions taken by Tim Shegitz in response to Schramm's EEO complaint of May 12, 1998.

(Petitioner's Br. at 27.)

This general statement, referring to three categories [**22] of retaliatory acts, is not sufficient to carry Plaintiff's burden of making a showing of a causal connection. Akers, 338 F.3d at 497 ("In order to establish a claim of retaliation, [a plaintiff] must prove that ....").

Looking at the first category of allegedly retaliatory acts, Plaintiff defines the first category to include the time period (from December 10, 1996 to April 1998) following the first instance of protected activity. HN14 Timing can be probative of a causal link. DiCarlo, 358 F.3d at 421. However, evidence that harassment occurred soon after a plaintiff engaged in a protected activity is not sufficient to establish a causal link, absent other evidence of a retaliatory motive. Nguyen v. City of Cleveland, 229 F.3d 559, 566, 567 (6th Cir. 2000). In Plaintiff's first category, temporal proximity is the only indication of a causal link between harassment and reprisal-no other evidence of a connection is apparent. Thus, Plaintiff fails to establish a causal link.

As to the second category of allegedly retaliatory acts, Cooper's alleged reprisal did not violate Title VII. Cooper allegedly harassed Plaintiff as retribution for [**23] Plaintiff's "support" of male co-worker Neven Vos, in Cooper's EEO harassment claim against Vos. (Petitioner's Br. at 13, 27.) It is not clear if this "support" was moral support or whether Plaintiff offered to testify on Vos' behalf. Regardless, this "support" was not protected activity-by siding with Vos against Cooper's harassment complaint, Plaintiff was not asserting any rights under Title VII but, rather, was defending against Cooper's assertion of those rights. (Cooper was engaging in protected activity.) Because Plaintiff had not engaged in protected activity in supporting Vos, there is no "causal connection ... between the protected activity and the ... harassment." Akers, 338 F.3d at 497.

Regarding the third category of acts that Plaintiff alleges to be retaliatory, Shegitz does not appear to have engaged in harassment. Perhaps Shegitz made a hostile remark that, viewed in the light most favorable to Plaintiff, was motivated by reprisal-in 1998, Plaintiff attempted to obtain a schedule that would avoid having [*43] to work the same shift as Karen Cooper, but, in discussions, Shegitz "responded by accusing me of using my ADR and EEO complaint as a leverage in a [**24] veiled threat to obtain a promotion." (J.A. at 606.) However, even when viewed in the light most favorable to Plaintiff, any retaliation-based hostility on the part of Shegitz was not severe or pervasive. Co-worker Neven Vos described Shegitz's attempt to be conciliatory, regarding the EEO complaint:

> I was standing in the parking lot of the Toledo facility talking with Bill Schramm. During our conversation Tim Shegitz approached both of us and apologized to

> Schramm, for not understanding Schramm's situation at Toledo. Shegitz referred to Bill Schramm's pending EEO complaint and said that Schramm should be in Columbus by September. He likewise said that if Schramm needed any help in processing his bid, that he (Shegitz) would assist him.

(J.A. at 585-86.) If Shegitz made certain hostile statements that had a causal link to the protected activity, such statements were not severe or pervasive.

Because Plaintiff does not establish any causal link, Plaintiff fails to make a *prima facie* case of retaliatory harassment.

## CONCLUSION

For the aforementioned reasons, we **AFFIRM** the judgment of the district court.

Service: **Get by LEXSEE®**
Citation: **2004 U.S. App. Lexis 14889**
View: **Full**
Date/Time: Wednesday, April 6, 2005 - 2:55 PM EDT

* Signal Legend:
- ● - Warning: Negative treatment is indicated
- ■ - Questioned: Validity questioned by citing refs
- ▲ - Caution: Possible negative treatment
- ◆ - Positive treatment is indicated
- Ⓐ - Citing Refs. With Analysis Available
- ❶ - Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.