Service: **Get by LEXSEE®**
Citation: **2003 U.S. App. Lexis 13626**

*69 Fed. Appx. 292, \*; 2003 U.S. App. LEXIS 13626, \*\**

TIMOTHY R. HANELY, Plaintiff-Appellant, v. INTERNATIONAL BROTHERHOOD OF LOCOMOTIVE ENGINEERS, et al., Defendants-Appellees.

No. 02-3027

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

69 Fed. Appx. 292; 2003 U.S. App. LEXIS 13626

July 2, 2003, Filed

**NOTICE:** [\*\*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO. 00-01093. Graham. 12-07-01.

**DISPOSITION:** Affirmed.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff railroad engineer appealed from the United States District Court for the Southern District of Ohio's judgment which granted summary judgment to defendants, union, its officials, and the engineer's employer, in the hybrid breach of contract/breach of the duty of fair representation action brought by the engineer under the Railway Labor Act, 45 U.S.C.S. § 151 et seq.

**OVERVIEW:** The engineer's complaint alleged that the employer breached the collective bargaining agreement (CBA) because it allegedly altered its engineer seniority roster, and that the union and its officials breached the duty of fair representation because they failed to prosecute the engineer's grievance regarding the employer's alleged breach of the CBA. The engineer affirmatively learned that another engineer had been placed ahead of him on the seniority roster in September of 1995. The appellate court found that because the engineer filed his hybrid complaint on September 15, 2000, the engineer could not assert any claims against the union and the employer that arose prior to March 15, 2000, which thereby made the alleged wrong which was known to the engineer in September of 1995 well beyond the six-month limitations period of 29 U.S.C.S. § 160(b). Thus, the engineer's claim was time barred, and because there was no evidence that the employer in any way misled or fraudulently concealed any information concerning the engineer's contractual claim, the engineer could not meet his burden of proving that the six-month statute of limitations should have been tolled.

**OUTCOME:** The district court's judgment granting summary judgment to the union, its officials, and the engineer's employer was affirmed.

**CORE TERMS:** engineer, seniority, roster, training program, duty of fair representation, six-month, hybrid, summary judgment, grievance, collective bargaining agreement, hire, breach

of contract, senior, statute of limitations, time-barred, breached, pursued, deposition, corrected, joined, statute of limitations period, fraudulently, successfully completed, completing, conductor, trainmen, carrier, hired, Railway Labor Act, properly granted summary judgment

## LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Summary Judgment > Standards of Review
Civil Procedure > Summary Judgment > Burdens of Production & Proof
Civil Procedure > Summary Judgment > Summary Judgment Standard

**HN1** An appellate court reviews a grant of summary judgment de novo. Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of showing the absence of a genuine issue of material fact as to at least one essential element of the plaintiff's claim. Once the burden of production is met, the nonmoving party must, by deposition, answers to interrogatories, and admissions on file show specific facts that reveal a genuine issue for trial. The court must accept the nonmoving party's evidence as true and draw all reasonable inferences in her favor, viewing all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. The appellate court, like the district court, may not make credibility determinations nor weigh the evidence before it when determining whether an issue of fact remains for trial. More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Enforcement
Labor & Employment Law > Collective Bargaining & Labor Relations > Fair Representation

**HN2** The Railway Labor Act, 45 U.S.C.S. § 151 et seq., provides a distinct statutory framework for the method in which labor disputes covered by the Act are to be resolved. The Act provides a framework for the settlement of disputes between an employee and a carrier which arise out of the interpretation or application of the collective bargaining agreement, commonly referred to as minor disputes. In order to prevail against either the union or the employer in a hybrid breach of contract/breach of the duty of fair representation case, the plaintiff employee must prove both that the employer breached the terms of the collective bargaining agreement and that the union breached its duty of fair representation. The two claims are inextricably interdependent. More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Enforcement
Governments > Legislation > Statutes of Limitations > Time Limitations
Labor & Employment Law > Collective Bargaining & Labor Relations > Fair Representation

**HN3** A hybrid breach of contract/breach of the duty of fair representation action under the Railway Labor Act, 45 U.S.C.S. § 151 et seq., is subject to the six-month statute of limitations period as set forth in 29 U.S.C.S. § 160(b). A hybrid cause of action accrues and the six-month limitations period begins to run when the plaintiff knew or should have known of the union's alleged breach of its duty of fair representation. When the claim against the union concerns its failure to pursue or process a grievance, the claim accrues when the period for pursuing a grievance under the collective bargaining agreement has expired. The determination of the accrual date is an objective one: the asserted actual knowledge of the plaintiffs is not determinative if they did not act as reasonable persons and, in effect, closed their eyes to evident and objective facts concerning the accrual of their right to sue. In addition, a plaintiff cannot claim lack of knowledge of the collective bargaining agreement's time limitations to toll or otherwise extend the six-month

statute of limitations period. More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Enforcement
Governments > Legislation > Statutes of Limitations > Time Limitations
Labor & Employment Law > Collective Bargaining & Labor Relations > Fair Representation

HN4 The United States Court of Appeals for the Sixth Circuit has recognized that a plaintiff's failure to file a hybrid action under the Railway Labor Act, 45 U.S.C.S. § 151 et seq., within six months after the contractual grievance period expired could be excused if the plaintiff could demonstrate that the defendants fraudulently concealed any facts respecting the accrual or merits of his claim. The court has explained that in order to prove fraudulent concealment, the plaintiff must show that he failed to discover facts that serve as the basis of his cause of action despite due diligence on his part to discover the facts, and that the concealment was fraudulently committed by the party or parties sought to be held responsible by the plaintiff. Moreover, even if a plaintiff adduces sufficient evidence to invoke the fraudulent concealment doctrine, it may only be invoked against the party or parties that engaged in the misleading conduct. More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Standards Generally

HN5 An appellate court may affirm a district court's order on any basis supported by the record. More Like This Headnote


**COUNSEL:** For TIMOTHY R. HANELY, Plaintiff - Appellant: Tracy S. Comisford, Dublin, OH.

For INTERNATIONAL BROTHERHOOD OF LOCOMOTIVE ENGINEERS, Defendant - Appellee: Harold A. Ross, Ross & Kraushaar, Cleveland, OH.

For INTERNATIONAL BROTHERHOOD OF LOCOMOTIVE ENGINEERS, Defendant - Appellee: Frederick G. Cloppert, Jr., Cloppert, Latanick, Sauter & Washburn, Columbus, OH.

For INTERNATIONAL BROTHERHOOD OF LOCOMOTIVE ENGINEERS, Defendant - Appellee: Michael S. Wolly, Zwerdling, Paul, Leibig, Kahn & Wolly, Washington, DC.

For IBLE GENERAL COMMITTEE OF ADJUSTMENT FOR CSXT NORTHERN REGION, CXS TRANSPORTATION, Defendants - Appellees: Franck G. Wobst, Porter, Wright, Morris & Arthur, Columbus, OH.

For DONALD MENEFEE, Defendant [**2] - Appellee: John F. Collins, Collins, Collins & Kantor, Buffalo, NY.

**JUDGES:** BEFORE: CLAY and GIBBONS, Circuit Judges; DUGGAN, District Judge. *

* Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

**OPINIONBY:** CLAY

**OPINION:** [*293] **CLAY, Circuit Judge.** Plaintiff, Timothy R. Hanely, appeals from the district court's judgment entered on December 7, 2001, granting summary judgment to Defendants, International Brotherhood of Locomotive Engineers ("IBLE"); IBLE General Committee of Adjustment for CSXT Northern Region ("the General Committee"); Donald Menefee, General Chairman, General Committee of Adjustment IBLE; and CXS Transportation ("CSXT"), in this hybrid breach of contract/breach of the duty of fair representation action brought under the Railway Labor Act ("the Act"), 45 U.S.C. § 151 et seq. Because we find

Plaintiff's complaint to be time-barred under 29 U.S.C.'s § 160(b)'s six-month statute of limitations, we **AFFIRM** the district court's judgment.

**STATEMENT OF FACTS**

**Procedural History**

On September 15, 2000, Plaintiff, a railroad engineer employed [**3] by CSXT filed a complaint against CSXT, IBLE, and Menefee, who was incorrectly identified as the General Chairman, International Brotherhood of Locomotive Engineers. The complaint alleged a hybrid claim based upon an alleged breach of the collective bargaining agreement ("CBA") by CSXT arising from CSXT's alleged alteration of its engineer seniority roster, and an alleged breach of the duty of fair representation arising under the Act by IBLE, the General Committee, and Menefee based on their failure to prosecute Plaintiff's grievance regarding CSXT's alleged breach of the CBA.

IBLE filed an answer on behalf of itself on November 21, 2000, in which it stated that Menefee was the General Chairman of the General Committee of Adjustment, Brotherhood of Locomotive Engineers, CSX Transportation Northern Region ("the General Committee"), which negotiates and enforces the CBA between it and CSXT. Plaintiff thereafter filed an amended complaint wherein he named Menefee properly.

Following a pretrial conference before United States Magistrate Judge Terence [*294] P. Kemp, the magistrate judge issued an order noting that "there is an issue concerning whether an additional party should be joined. [**4] If plaintiff will seek non-monetary relief involving the seniority issue described in the complaint, the parties shall raise the issue of whether the absent party is indispensable and should be joined." (J.A. at 22.) The individual to whom the magistrate judge was referring was M.E. Shroyer, the CSXT engineer who was placed above Plaintiff on the seniority roster and whose position Plaintiff sought to replace.

Plaintiff filed a second amended complaint naming Shroyer as a party-defendant; however, neither Count I of the second amended complaint alleging breach of contract, nor Count II of the second amended complaint alleging breach of the duty of fair representation, were brought against Shroyer. Answers were filed to the complaint, and Defendant Menefee filed a cross-claim against CSXT alleging that CSXT was liable for any judgment which might be entered against Menefee.

CSXT, IBLE, Menefee and the General Committee filed motions for summary judgment, and Plaintiff filed a cross-motion for summary judgment. The district court entered a memorandum opinion and order granting summary judgment to the Defendants, and dismissed the matter with prejudice. A corresponding judgment was [**5] entered by the district court, and it is from this judgment that Plaintiff now appeals.

**Facts**

In the railway industry, employees are broken into at least two separate and distinct groups: the first group consists of engineers or engine service employees, and the second group consists of trainmen, conductors, and brakemen, who are commonly referred to as train service employees or ground service employees. Generally, the first group of employees, the engineers, are represented by the IBLE, while the second group of employees, the train service employees, are represented by the United Transportation Union ("UTU").

IBLE is composed of individual charter groups known as General Committees of Adjustment or "GCAs." which are analogous to local unions in other labor organizations. GCAs are separate and autonomous entities, each with its own funds and officers, and each GCA retains the power to negotiate on behalf of its members unless it reassigns the power to

IBLE.

CSXT operates a railroad system throughout the United States and into Canada. IBLE is the labor organization that represents CSXT engineers. Plaintiff was hired by CSXT on or about September 12, 1994, entered into CSXT's [**6] engineer training program on September 26, 1994, and completed the program on May 1, 1995. When Plaintiff was initially hired by CSXT, he joined the UTU, but after successfully completing the engineer training program, he was promoted to locomotive engineer and joined the IBLE. Thus, according to Plaintiff, his seniority date on the engineer roster became May 1, 1995 under the terms of the CBA between CSXT and IBLE.

Article XIII, Sections 3 through 5 of the 1985 CBA between CSXT and IBLE provide that CSXT will give preferential consideration to currently employed ground service employees (trainmen and conductors) when seeking applicants for engineers. That is, according to Article XIII, Section 3, existing ground service employees have priority rights to apply for engineer openings. Article XIII, Section 4(4) authorizes a carrier to seek new hires to fill an open engineer position if a ground service person does not wish to fill the position. The CBA between CSXT and [*295] UTU provides that ground service employees who were employed by CSXT prior to November 1, 1985 are to be given first opportunity to apply for selection and promotion to the engineer training program. In addition to the [**7] CBA requirements, an established practice and understanding existed between CSXT, UTU, and IBLE for addressing instances when a more senior ground service employee or trainman was passed over for an engineer position through no fault of that ground service employee. When the more senior ground service employee was not provided the opportunity to become an engineer to which he was entitled, and a new hire or a less senior ground service person was provided the opportunity instead, the more senior ground service person would be allowed to become an engineer upon successfully completing the program, and would then be placed on the engineer seniority roster in the position where he would have been had he rightfully received the first opportunity to which he was entitled.

Shroyer has been employed by CSXT's Newark, Ohio terminal since 1973, and was working as a conductor or ground service employee until he entered the engineer training program in 1994, sometime after Plaintiff. By way of letter dated August 3, 1994, Shroyer, through his UTU representative J.T. Reed, sent a letter to CSXT complaining that Shroyer wanted to apply for the engineers training program that had been posted, but [**8] that CSXT's local management had thwarted Shroyer's efforts to do so, and that CSXT had instead hired new employees for the engineer program in violation of the CBA. Reed followed up with a letter dated August 29, 1994, again protesting CSXT's failure to provide Shroyer with the first opportunity to train for an engineer position, and stating that Shroyer had learned "that CSXT was just completing the process of hiring two employees who do not hold any CSXT seniority to work as engineers in Newark, Ohio." (J.A. at 172.) One of the new hires to whom Reed was referring was Plaintiff.

Jon King, CSXT's Manager of Labor Relations, investigated Shroyer's claims raised in Reed's August 3 and August 29, 1994, letters, and "concluded that there was merit to the claims stated in Mr. Reed's [] letters." (J.A. at 172.) As a result, on September 19, 1994, King wrote a letter to Reed informing him that King found merit to the claims, and instructed Reed to have Shroyer telephone King so that King could directly discuss the process of submitting an application for the engineer training program with Shroyer. Thereafter, Shroyer submitted his formal application dated September 22, 1994, for transfer [**9] to engine service.

King averred in his affidavit that by the time he received Shroyer's formal application, it was too late to enter him in the classroom phase of the next engineer training program which was scheduled to begin in Cumberland, Maryland on September 26, 1994. Thus, King continued, Shroyer was assured by CSXT that he would be assigned to the next classroom phase of the engineer training program which was scheduled to commence a few months later. On

November 13, 1994, CSXT sent Reed a letter stating that if Shroyer was accepted for. and successfully completed, the next available engineering training program, "he will be placed on the appropriate Engineer Seniority Roster in [his] proper standing ahead of the 'new-hire' employees that attended earlier training session." (J.A. at 186.) King therefore stated in his affidavit that CSXT "assured him that if he successfully completed the training program and became a licensed engineer, his engineer seniority date and roster placement would be adjusted and he would be put immediately ahead of any new hire or less senior trainmen [*296] who completed the training program that started on September 26, 1994." (J.A. at 173.)

Shroyer [**10] successfully completed the training program on July 7, 1995, and was promoted to engineer on that same date. By way of letter dated August 3, 1995, Reed reminded CSXT of its commitment made to Shroyer to place his seniority ahead of those new hires who attended the September 26, 1994 engineer training program--including Plaintiff. CSXT responded in a letter dated August 21, 1995, and informed Reed that the seniority roster "has been corrected to reflect the proper standing of employee M.E. Shroyer to be placed ahead of new hire T.R. Hanley, I.D. # 179487, as per the understanding of our November 13, 1994 letter." (J.A. at 189.)

While Plaintiff and Shroyer were each in their respective training programs in March of 1995. Plaintiff claims to have heard rumors from others in the Newark. Ohio terminal that Shroyer was going to be placed ahead of him on the seniority roster once they both became engineers. Plaintiff went to local union representative David Morehead to inquire about Shroyer's being placed ahead of him on the seniority roster. According to Plaintiff, Morehead informed him that the change in seniority would not be allowed under the CBA. Morehead testified in his deposition [**11] that he gave Plaintiff a copy of the CBA at the time.

Plaintiff affirmatively learned that Shroyer had displaced him on the engineer seniority roster in September of 1995 from a crew caller. Plaintiff contacted Morehead asking what he could do about the change in seniority, and Morehead suggested that Plaintiff submit a time claim for loss of wages. Apparently, the engineers were called for jobs pursuant to seniority and therefore Plaintiff lost an opportunity for work, and would continue to lose opportunities for work, as a result of Shroyer's name appearing before his on the seniority roster. According to Plaintiff, Morehead also told him that he

> should time slip the carrier, and he also had told me that he would contact Don Menefee. And when I asked him what time slips I should enter, he said, well, you should treat it as if it was an illegal seniority move and you should be paid the difference between what Mark Shroyer made and what you made on whatever job you subsequently could hold. And he said he would try and get it straightened out for me.

(J.A. at 120.)

Thereafter, on October 17, 1995, Plaintiff filed three claims with CSXT seeking back pay for lost wages [**12] as a result of Shroyer's "displacement" of Plaintiff on the seniority roster. CSXT denied the claims on November 9, 1995. Plaintiff then met with Morehead and provided him with copies of the claims. Morehead sent a letter to Menefee dated December 7. 1995. apprising him of Plaintiff's situation, asking whether Plaintiff should continue to submit the claim slips, and informing him that Morehead hoped the seniority roster would be corrected as soon as possible.

In a letter dated April 3, 1996, to Menefee, Plaintiff outlined additional facts about the

situation that Menefee allegedly told Morehead he needed in order to pursue the matter. Plaintiff did not receive a response from Menefee, nor did he receive a response from the several telephone messages that he left for Menefee. However, Plaintiff approached Menefee at a meeting that was held in March of 1998, at which time Menefee claimed that he thought the matter had been corrected and that it would be taken care of since it had not been corrected.

[*297] Menefee, on the other hand, testified in his deposition that he had investigated the claim after receiving Morehead's December 7, 1995, letter, and had spoken to several persons in CSXT's [**13] labor relations department. According to Menefee, Morehead had led him to believe that the roster change resulted from fraud or collusion between UTU and CSXT, and although his investigation led him to believe that this was not the case, Menefee believed that the roster change would not be made until he was notified.

On August 19, 1998, Plaintiff wrote Menefee and informed him that his seniority had not been restored and asked that Menefee "see to this matter as soon as possible." (J.A. at 252.) Plaintiff sent copies of the August 19, 1998 letter to Morehead and then IBLE President Clarence Monin. Plaintiff then retained an attorney who wrote letters dated March 14, 2000 to Menefee and then IBLD President Edward Dubroski, requesting copies of all the documents relating to the seniority dispute. Menefee did not respond, and IBLE claims that it did not respond on the basis that it believed that it had no responsibility for on-property processing of grievances and claims made by members. Plaintiff's counsel then asked CSXT to provide any information on Plaintiff's claim, and CSXT responded in June of 2000 that it had no knowledge of Plaintiff's seniority claim. Plaintiff then filed the [**14] hybrid suit in question on September 15, 2000.

## DISCUSSION

HN1 This Court reviews a grant of summary judgment *de novo*. *DePiero v. City of Macedonia*, 180 F.3d 770, 776 (6th Cir. 1999.). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of showing the absence of a genuine issue of material fact as to at least one essential element of Plaintiff's claim. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). Once the burden of production is met, the nonmoving party must, by deposition, answers to interrogatories, and admissions on file show specific facts that reveal a genuine issue for trial. *Id.* This Court must accept the nonmoving party's evidence as true and draw all reasonable inferences in her favor, see *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986), [**15] viewing all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. *DePiero,* 180 F.3d at 776. This Court, like the district court, may not make credibility determinations nor weigh the evidence before it when determining whether an issue of fact remains for trial. See *Ahlers v. Schebil.* 188 F.3d 365. 369 (6th Cir. 1999) (citing *Anderson,* 477 U.S. at 255).

### A. Legal Standards Regarding Plaintiff's Hybrid Claim

The Railway Labor Act, 45 U.S.C. § 151 *et seq.,* HN2 provides a distinct statutory framework for the method in which labor disputes covered by the Act are to be resolved. The Act "provides a framework for the settlement of disputes between an employee and a carrier which arise out of the interpretation or application of the collective bargaining agreement, commonly referred to as 'minor disputes.'" See *Kaschak v. Consol Rail Corp.*, 707 F.2d 902, 904 (6th Cir. 1983). In order to prevail against either the union or the employer in a hybrid breach of contract/breach of the duty of fair representation case, the plaintiff employee must prove both that [*298] the [**16] employer breached the terms of the collective

bargaining agreement and that the union breached its duty of fair representation. Hines v. Anchor Motor Freight, 424 U.S. 554, 571, 47 L. Ed. 2d 231, 96 S. Ct. 1048 (1976). "The two claims are inextricably interdependent." DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164, 76 L. Ed. 2d 476, 103 S. Ct. 2281 (1983) (internal quotation marks and citation omitted); see also Chauffers, Teamsters & Helpers, Local 391 v. Terry, 494 U.S. 558, 564, 108 L. Ed. 2d 519, 110 S. Ct. 1339 (1990) (noting that "whether the employee sues both the union and the employer or only one of those entities, he must prove the same two facts to receive money damages: that the employer's actions violated the terms of the collective bargaining agreement and that the union breached its duty of fair representation") (citation omitted); Black v. Ryder/P.I.E. Nationwide, Inc., 930 F.2d 505, 510 (6th Cir. 1991) ("In any event, when the union cannot be held liable for unfair representation, of course, the employer cannot be held liable for breach of the collective bargaining agreement.") (citation [**17] omitted).

HN3 A hybrid breach of contract/breach of the duty of fair representation action is subject to the six-month statute of limitations period as set forth in 29 U.S.C. § 160(b). DelCostello, 462 U.S. at 164-65. A hybrid cause of action accrues and the six-month limitations period begins to run when the plaintiff "knew or should have known of the union's alleged breach of its duty of fair representation." Ryan v. Gen. Motors Corp., 929 F.2d 1105, 1111 (6th Cir. 1991). When the claim against the union concerns its failure to pursue or process a grievance, the claim accrues when the period for pursuing a grievance under the collective bargaining agreement has expired. See Shapiro v. Cook United, Inc., 762 F.2d 49, 51 (6th Cir. 1985). The determination of the accrual date is an objective one: "the asserted actual knowledge of the plaintiffs is not determinative if they did not act as reasonable persons and, in effect, closed their eyes to evident and objective facts concerning the accrual of their right to sue." Chrysler Workers Ass'n v. Chrysler Corp., 834 F.2d 573, 579 (6th Cir. 1987). In addition, [**18] a plaintiff cannot claim lack of knowledge of the collective bargaining agreement's time limitations to toll or otherwise extend the six-month statute of limitations period. See Shapiro, 762 F.2d at 51.

## B. Analysis

The district court granted summary judgment to CSXT on Plaintiff's hybrid action on the basis that Plaintiff failed to demonstrate that a question of fact remained for trial regarding whether CSXT breached the CBA by allowing Shroyer seniority over Plaintiff. The court further found that because Plaintiff had to prove both breach of the CBA by CSXT and breach of the duty of fair representation by IBLE, the General Committee, and Menefee in order to succeed in his suit, summary judgment to all Defendants was appropriate.

Defendants contend that the district court properly granted summary judgment on this basis, and argue in the alternative that summary judgment was properly granted because Plaintiff's complaint was time-barred under 29 U.S.C. § 160(b)'s six-month statute of limitations. Defendants note that Plaintiff filed his hybrid complaint on September 15, 2000, and thus contend that Plaintiff may not assert any claims [**19] against them that arose prior to March 15, 2000. thereby making the alleged wrong which was known to Plaintiff in September of 1995 well beyond the limitations period. CSXT further notes that the applicable CBA mandates that appeals of claims must be filed within sixty days of the disallowance of the claim and both the CBA and the Act permitted Plaintiff to pursue his seniority claim on his own. In [*299] addition, CSXT contends that because there is no evidence that CSXT in any way misled or fraudulently concealed any information concerning Plaintiff's contractual claim, Plaintiff cannot meet his burden of proving that the six-month statute of limitations should be tolled.

Similarly, IBLE argues that Plaintiff's only contact with IBLE regarding the seniority dispute occurred when a copy of an August 19, 1998 letter that Plaintiff sent to Menefee was also sent by Plaintiff to then IBLE President Monin, and that this was sent approximately three

years after Plaintiff learned of the seniority change, thus making any complaint on Plaintiff's part untimely. Menefee also argues that Plaintiff's claim is time-barred.

In his reply brief, Plaintiff does not dispute that he learned of Shroyer's [**20] reassignment long before he filed his complaint on September 15, 2000. However, Plaintiff justifies his failure to file his complaint timely within the six-month period by arguing that the relevant period was tolled because of Menefee's assurances that he was prosecuting Plaintiff's claim. In support of Plaintiff's contention, he relies upon a case from the Third Circuit--*Vadino v. A. Valey Engineers,* 903 F.2d 253 (3d Cir. 1990).

We agree with Defendants, and therefore affirm the district court's grant of summary judgment on the basis that Plaintiff's claim was time-barred. Under the terms of the CBA between IBLE and CSXT, Plaintiff could have pursued his claim as a grievance for money damages in accordance with Rule 55, which in fact Plaintiff did do, but he did not appeal the unfavorable result. Or, Plaintiff could have pursued his claim pursuant to Rule 27, which is the provision dealing with seniority and seniority rosters and is the provision that Plaintiff and Morehead reviewed together. Whether he pursued his claim under Rule 55, Rule 27, or both, Plaintiff was required to pursue a claim or appeal an unfavorable result within sixty days of learning of the result. [**21] Thus, any appeal of Plaintiff's Rule 55 claim should have been filed by January 8, 1996, and any claim made under Rule 27 should have been made by March 31, 1996, taking September of 1995 as the accrual date of the grievance. With this in mind, the six-month statute of limitations period ended on October 1, 1996, but Plaintiff did not file suit until September 15, 2000.

HN4 This Court has recognized that a plaintiff's failure to file a hybrid action within six months after the contractual grievance period expired could be excused if the plaintiff could demonstrate that "the defendants fraudulently concealed any facts respecting the accrual or merits of his claim." See *Shapiro v. Cook United, Inc.,* 762 F.2d 49, 51 (6th Cir. 1985). The Court explained that "in order to prove fraudulent concealment, the plaintiff must show that he failed to discover facts that serve as the basis of his cause of action despite due diligence on his part to discover the facts, and that the concealment was fraudulently committed by the party or parties sought to be held responsible by the plaintiff." *Id.* Moreover, even if a plaintiff adduces sufficient evidence to invoke the fraudulent concealment [**22] doctrine, it may only be invoked against the party or parties that engaged in the misleading conduct. *Robinson v. Cent. Brass Mfg. Co.,* 987 F.2d 1235, 1245 (6th Cir. 1993).

In the matter at hand, Plaintiff has failed to show any misleading conduct on the part of CSXT or IBLE so as to excuse his failure to timely file his breach of contract action against CSXT or breach of duty of fair representation action against IBLE. As to Menefee, although his actions present a closer call inasmuch as the record indicates that Menefee made assurances to Plaintiff that his claim was being pursued, the record also indicates that [*300] Plaintiff could have discovered the status of his claim through his own diligence, and Plaintiff provides no argument to the contrary. Thus, we conclude that the district court properly granted summary judgment to Defendant, but we do so on the basis that Plaintiff's complaint was barred by the six-month statute of limitations. See *Thacker v. City of Columbus,* 328 F.3d 244, 259 n.8 (6th Cir. 2003) HN5 (noting that this Court may affirm a district court's order on any basis supported by the record).

**CONCLUSION**

For the above-stated reasons, [**23] we **AFFIRM** the district court's judgment granting summary judgment to Defendants.

Service: **Get by LEXSEE®**

Citation: **2003 U.S. App. Lexis 13626**
View: Full
Date/Time: Wednesday, April 6, 2005 - 2:45 PM EDT

\* Signal Legend:
- ● - Warning: Negative treatment is indicated
- ■ - Questioned: Validity questioned by citing refs
- ▲ - Caution: Possible negative treatment
- ◆ - Positive treatment is indicated
- Ⓐ - Citing Refs. With Analysis Available
- ⓘ - Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.