ose Ann Fleming
ROSE ANN FLEMING PROFESSIONAL CORPORATION
3855 Ledgewood Drive, Suite 13
Cincinnati, OH  45207
Phone: 513-924-8389
Fax: 513-924-8389
Email: Fleming@xavier.edu
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **OLLEN G. COLBERT, Jr.**,<br><br>Plaintiff,<br><br>vs.<br><br>**CINERGY AND THE CINCINNATI GAS AND ELECTRIC COMPANY**, *et al.*,<br><br>Defendants. | Case No.: 1:00-cv-00909<br><br>Judge Sandra Beckwith<br>Magistrate Judge Timothy Hogan<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT CINCINNATI GAS & ELECTRIC COMPANY'S MOTION TO STRIKE AFFIDAVITS OF PLAINTIFF DUDLEY QUARLES AND LEON WATERS** |

Now comes Plaintiff, Ollen G. Colbert, Jr., by and through Counsel, to oppose Defendant Cincinnati Gas & Electric Company's Motion to Strike the Affidavits of Plaintiff, Dudley Quarles and Leon Waters which were filed in support of Plaintiff's Memorandum in Opposition to Defendant Cinergy/Cincinnati Gas & Electric Company's Motion for Summary Judgment for the following reasons:

**I. DEFENDANT'S MOTION TO STRIKE IS NOT WELL TAKEN AND MUST BE DENIED BASED ON CRITERIA OF RULE 12(f) OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

Rule 12(f) of the Federal Rules of Civil Procedure defines Motion to Strike as follows:

> 12(f) Motion To Strike. Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or

1

upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

While Plaintiff assumes that Defendant CG&E is arguing that Plaintiff's Affidavit is an insufficient defense, Plaintiff's Affidavit is made entirely in support of his Memorandum in Opposition to Defendant Cinergy/The Cincinnati Gas and Electric Company's Motion for Summary Judgment.(Colbert, Ollen. Memorandum in Opposition to Plaintiff Cinergy/The Cincinnati Gas & Electric Company's Motion for Summary Judgment, p. 1, Note 1. (Doc. 104). As such, since Defendant has made a responsive pleading to that filing, Defendant's Motion to Strike is untimely and superfluous.  Plaintiff's Memorandum in Opposition quite clearly calls attention to the contemporaneously filing of the Affidavit in this matter. Defendant CG&E's Motion to Strike does not specify any material as "redundant, immaterial, impertinent, or scandalous matter".  Clearly, this Motion to Strike must be denied by the Court since it was not filed prior to Defendant's Reply.  (Doc. 107).  Fed  R. Civ. Proc., 12(f) clearly states that "Upon motion made by a party BEFORE responding to a pleading… " Therefore, Plaintiff respectfully requests the Court to strike this Motion as premature and untimely.

Further, Defendant argues that there can be no finding of discrimination because "Colbert was deposed three times and had every opportunity to give full answers, often indicating that he had no information, evidence or testimony in support of his claims, particularly the race discrimination claims". ( Defendant Cincinnati Gas & Electric Company's Motion to Strike Affidavits of Plaintiff, Dudley Quarles, Leon Waters, pp. 4-5.  Hereinafter referred to as CG&E's Motion to Strike).

To the contrary, Plaintiff has more that sufficient information, evidence and testimony to support his claims. For example, the depositions from February 10,2003  and March 10, 2003  do

not contain statements by Plaintiff, indicating that he has "no information" on the issue of discrimination. In fact, Colbert, when asked about names of individuals who were given preferential treatment, he noted immediately, Ralph, Kroger, Dave Hatfield, Mike Ryan, to mention only three. (See Colbert, Ollen G. Jr. Deposition, 2/10/2003, pp. 25, 26, 27-30). To the questions of Julie Ezell, Defendant's counsel, " Did you see anybody in your unit being promoted that you thought had performance issues greater than yours?, Colbert answered: "Yes, ma'am. . . .Ralph Kroger, Tracy Proms, Charlie Young – All three that I named right here were white". ( Colbert, Ollen G. Jr., Deposition 3/10/2003, pp 71-73). These are but a few of the specific responses that Colbert gave in his first two depositions. Plaintiff's Memorandum in Opposition quoted extensively from Colbert's first two depositions, dated respectively, February 10, 2003 and March 10, 2003. In summary, Plaintiff responded at length with specifics on racial discrimination to the questions posed by the Defendant's previous counsel, Julie Ezell.

  More specifically, Defendant's Motion to Strike states that Colbert's "subsequent affidavits [sic] are nothing more than "opinions" on ultimate conclusions and /or enhancements or contradictions of this testimony" (CG&E, Motion to Strike, p. 4). On page 7, Defendant's Motion to Strike states that Plaintiff "must show that the events leading up to his discharge , were either 1) untrue, 2) if not untrue, not a legitimate reason for discipline, or 3) if a legitimate reason, not normally a reason for discipline." At a minimum, Colbert shows that his termination on March 2, 2000 was wrongful because he had at least two grievances that the Union and the Company had not yet resolved. (See Plaintiff's Affidavit, Paragraphs 93, 94, 106 and 107). In addition, he explains to Counsel, Julie Ezell, that he was terminated before his grievances were heard or resolved. (Colbert, Ollen G. Jr., Deposition, 3/10/2003, p. 80, 84-85).

## II. NO DEFENSE IS REQUIRED IF DEFENDANT DID NOT MEET THE BURDEN OF SHOWING THE ABSENCE OF ANY GENUINE ISSUE OF MATERIAL FACT.

The cause of action that Plaintiff Ollen G. Colbert, Jr. has against Defendant Cinergy/Cincinnati Gas & Electric Company (hereinafter referred to as CG&E) arises from his status as a union member. Such a posture requires the parties herein to consider the requirements of Section 301 of the National Labor Relations Act. As often reiterated in this litigation, Plaintiff must show that Defendant, Cinergy/The Cincinnati Gas & Electric Company breached the Collective Bargaining Agreement (herein after called CBA and known as *Agreement between The Cincinnati Gas & Electric Company and Local Union 1347, International Brotherhood of Electrical Workers Affiliated with AFL-CIO, 1996-2001*). By breaching the Agreement as set forth in Plaintiff's Memorandum in Opposition, Defendant injured Plaintiff. Plaintiff shows that the Union was indifferent to Plaintiff's needs for representation in attempting to respond to Company's wrong.

Plaintiff alleges that he was discriminated against because the employment discipline policy was not applied evenly. Colbert was singled out from other employees at Brecon Pole Yard for excessive supervision as provided under the CG&E employment policy and quoted by Judge Beckwith in the companion case decision, *Colbert v. Cincinnati Gas and Electric Company, et al.* Case No. C-1-97-685. Further, Plaintiff alleges that the company used its progressive discipline policy as a pretext not to promote him and ultimately to fire him while at least two grievances were pending.

Plaintiff further alleges that the Union failed in its fiduciary duty to defend him on CG&E's refusal to consider him for promotion to Groundsperson Driver "A" on May 17, 1999

and on his wrongful termination of March 2, 2000 based on misrepresentation of Bricking regarding his request to determine time for leave to see his union representative before attending the meeting set on March 2, 2000 and for not objecting to the fact that Colbert was terminated using a progressive discipline policy when two grievances were not yet resolved.

The breaches of the CBA are clearly set forth in Plaintiff's Memorandum in Opposition to Defendant CG&E's Motion for Summary Judgment. Plaintiff's Affidavit submitted contemporaneously in support of Plaintiff's Memorandum in Opposition, must be interpreted by the Court in light of these requirements imposed by Section 301 of the National Labor Relations Act in a labor/management case that deals with discrimination. Given the rights of the employee to grieve as set forth in the Collective Bargaining Agreement, filed herein as Exhibit 6 to Plaintiff's Memorandum in Opposition to Defendant Cinergy/The Cincinnati Gas and Electric's Motion for Summary Judgment, (Doc 104) and the history of litigation that has been memorialized by the first case on this matter, *Colbert v. Cincinnati Gas and Electric et al.,* Case No.C-1-97-685, the Court must first determine whether Defendant CG&E met its burden of showing the absence of any genuine issue of material fact. The burden does not shift to the opposing party unless the movant has satisfied this Rule 56 standard. Nor does Rule 56(e) alter the accepted doctrine that inferences drawn from the facts contained in the moving party's materials must be viewed in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co*. (1970), 90 S.Ct. 1598, 1609, 398 U.S. 144, 158-159. In *Higgins v. Baker,* (D.C.N.Y. 1970), 309 F.Supp. 635, Judge Tenney described the Court's duty when a motion for summary judgment is unopposed by factual materials as follows:

> Although an adverse party can not rest on naked denials or pleadings in opposing a motion for summary judgment, it is nevertheless incumbent upon the movant to establish to the Court's satisfaction the absence of a genuine issue of fact. This is necessary to satisfy the last sentence of subdivision (e), which essentially states

> that summary judgment, *if appropriate,* shall be entered against a party who does not affirmatively raise a genuine issue of fact. In essence, then, the Court is obligated to search the record and independently determine whether or not a genuine issue of fact exists.

(In *Higgins v. Baker,* (D.C.N.Y. 1970), 309 F.Supp. 635 at 639).

*In arguendo,* even if the Plaintiff did not oppose CG&E's Motion for Summary Judgment, (which it did when it filed *Plaintiff's Memorandum in Opposition to Cinergy/The Cincinnati Gas and Electric Company's Motion for Summary Judgment,* (Doc. 104 ). it is difficult for Plaintiff to understand how Defendant's filings have shown: 1) no issue regarding CG&E's breach of Plaintiff's rights under the CBA, given its failure to consider Colbert's application for promotion to Groundsperson Driver "A" on May 17, 1999 after 20 months of unobjectionable behavior; 2) no discrimination under the uneven application to the Brecon workers of the progressive and constructive discipline policy, and 3) no wrongful termination, inspite of existing grievances, whose resolution would strategically affect whether discharge would have been the penalty meted out against Colbert, Further, as shown in the Plaintiff's Memorandum in Opposition, termination under a progressive discipline policy is a direct violation of the a union employee's rights under the CBA. In fact, Defendant has not proved that there are no genuine issues of material facts that are not in dispute.

In the alternative, if, in fact, after considering the Defendant's Motion and Memorandum for Summary Judgment, the Court finds that Defendant CG&E's arguments set forth justifiable reasons to believe that Plaintiff can prove no genuine issues of material fact, unless shown by Plaintiff in his Memorandum in Opposition to Defendant's Motion for Summary Judgment, then Plaintiff's Affidavit must be defended as set forth in Part III, below.

## III. AFFIDAVITS OF PLAINTIFF, DUDLEY QUARLES (AMENDED AS TO SIGNATURE) AND LEON WATERS, MEET REQUIREMENTS SET FORTH IN Fed.R Civ. Proc. 56(e).

Rule 56(e) of the Federal Rules of Civil Procedure, states:

> (e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

(R. 56(3), Fed R. Civ. Proc).

Rule 56(e) sets forth at least four (4) criteria for every opposing or supporting Affidavit to meet:

1) Affidavits shall be made on personal knowledge;
2) Affidavits shall set forth such facts as would be admissible in evidence;
3) Affidavits shall show that affiants are competent to testify to the mattes stated therein;
4) Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

That Plaintiff's Affidavit meets these criteria is shown as follows:

Plaintiff's Affidavit consists of statements that were made from his personal knowledge and shows that he was competent to make them since it was he that had experienced the demotion and had dealt first hand with CG&E's Supervisors at Brecon Pole Yard. CG&E objects that "Paragraphs 1 through 37 are repetitious of the record herein in one form or another. To the

extent Colbert is simply repeating information (in fact, citing to the deposition in some paragraphs), these paragraphs should be stricken". (Motion to Strike, page 4). To the contrary, Affidavit Paragraphs 1 through 37 are statements made on personal knowledge, which provide a foundation to subsequent testimony. Further, these Paragraphs show that Colbert was an employee and is competent to make first hand statements regarding his treatment by CG&E supervisors and the application of the progressive discipline policy. In addition, references to depositions may be permitted by the Court as stated in the third sentence of Rule 56(e): "The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits" (Fed .R.Civ.Proc. 56(e))

In Paragraph 38 through 41, Defendant CG&E alleges that Colbert "makes arguments which lack specificity and therefore should be struck". (Motion to Strike, pp. 4-5). Not true. The specific facts in Affidavit herein, ¶¶ 37 – 41, refer to the specific events on March 31 1997, when CG&E made promises of reconsideration for promotion to Groundsperson Driver "A" after Plaintiff behaved for a year, and the failure to keep this promise after 20 months of notice of discipline measures on or about May 17, 1999.

Defendant CG&E next complains about Colbert adding factual assertions that he did not make as the time of his deposition. "For example, Paragraph 47, Colbert states other employees, who went to the United Way tour, did not work the remainder of the day. In deposition, Colbert said he did not know whether others returned to work". (Motion to Strike, p. 4) CG&E misstates Paragraph 47 where Colbert states that he could not check in when he returned from the United Way Tour because no one was at Brecon, a fact within his personal knowledge and stated in a previous deposition. (See Colbert, Ollen G., Deposition, March 10, 2003, pp. 93-94).

Paragraph 48, states that there were no time-slips based on clock time to prove tardiness, a fact that Colbert attested to by Ollen G. Colbert, Jr. at his deposition on March 10, 2003, page 91-93. Specifically, there is no factual proof by Bricking that Colbert was ever late on the dates that Bricking said he was.

Regarding Paragraph 53, Defendant CG&E states that Colbert is "now" alleging that Bricking knew that Colbert wanted to leave early to meet with this union representative. (Motion to Strike, p. 5). In his March 10, 2003 deposition Colbert states that he had a meeting at 1:00 p.m.This was a meeting with his union representative before the grievance meeting at 1:30. (Colbert, Ollen, g. Jr., Deposition, p. 102). When asked in his Deposition on cross if he told Miller that Colbert wanted to leave early to see his union representative, Bricking said "no". Bricking did not say that he did not know and Colbert wanted to leave early. Colbert's testimony is not a contradiction of his previous testimony. Defendant CG&E's allegation here is based on the wrong date. The suspension occurred on March 2, 2000, not March 8, 2000.

Regarding Paragraph 54, Colbert had testified to this in his deposition. As verification, Colbert requests the Court to recognized an existing phenomenon in the area by judicial notice. (Motion to Strike, p. 5). Rule  201 (b) and (d), of the Federal Rules of Evidence, allow this type of phenomenon to be recognized by judicial notice when this information is generally known and where the accuracy is easy to determine.

Colbert's assertions that Paragraph 58 and 60 are admissible, contrary to the assertions of Defendant CG&E. Paragraph 58 describes exactly what Bricking did and draws a legitimate inference from the facts surrounding Bricking's failure to report Colbert's meeting with his union representative. (Motion to Strike, p. 5) As stated many times in this case, CG&E had a progressive and constructive discipline policy that Colbert said was not evenly applied to the

discipline of the employees at Brecon Pole yard. Paragraph 58 describes what was in the personal knowledge of Ollen Colbert.  He was grieving his written 3 and 5 day-suspensiosn. The next discipline would be termination. On that basis,  he inferred the effects on his own discipline record from Bricking's actions. This is admissible under 608(a).  Paragraph 60 states a fact within Colbert's knowledge and based on his knowledge of Bricking's unfair and dishonest dealings with him   In Paragraph 63, Defendant CG&E says  Colbert gave new testimony about Bricking's alleged refusal to grant a full vacation day.  In fact, Bricking, at his own deposition, was by his own Counsel, questioned regarding Exhibit 51. There in his own hand writing he recorded that Colbert offered to take a full-day vacation. . At that time, his Counsel asked him to identify certain notes that he had made of Colbert's conduct.  Exhibit 51 stated, in Bricking's handwriting, that Colbert had told him he would "blow one" of his earned vacation days to avoid discipline and to get to him grievance meeting.  (Bricking, Donald, Deposition, 12/10/2004, Exhibit 51. Colbert is not adding new testimony.  But even if he did, it would not necessarily be contradictory.

Again, in Paragraph 76, (Motion to Strike, 7). Colbert states that he was the only black man terminated by Bricking. Bricking testified that he could not remember terminating any one else.  Defendant did not ask Colbert if he was the only black man, or person, white or black, that CG&E terminated. The point of Paragraph 69 is to emphasize the uneven application of the discipline policy against Colbert, a black.

In Paragraph 80, Defendant complains that Colbert can not give her specific facts about Ralph Kroger who took company property out of the District, had an incident with a truck and got a DUI. Defendant has Ralph Kroger's complete employment record and Bricking has complete knowledge of these facts about Kroger. The DUI's were in Kentucky as stated in

Colbert's Deposition. 11/11/2004. This statement is made to raise this issue of disparate treatment and is not a made up factual assertion but is strong enough to show that there are genuine issues of material fact to justify trial of this matter.

Defendant CG&E states that Paragraphs 72 through and including 75 are "nothing more than iterations of plaintiff's beliefs, unsubstantiated in any way". (Motion to Strike p. 6). This is not true. Colbert substantiates his belief regarding Bricking being interviewed by the EEOC because he was mentioned in Colbert's Complaint regarding his denial of being upgraded to Groundsperson Driver "A" on May 17, 1999.

While Defendant refers to the first four EEO charges, here, to justify Bricking's not knowing of the fourth charge, is irrelevant since Plaintiff includes the history of the EEOC charges to show the existence of a hostile environment at CG&E against Colbert.

Affidavits must be based on what the Affiant perceives as true. In Paragraphs 76 to 99, contrary to Defendant CG&E's allegations that "Colbert simply engages in argument", (Motion to Strike, p. 7), Colbert set forth that Bricking used the CG&E discipline policy in retaliation for Plaintiff's filing this fourth Complaint with the EEOC regarding Bricking's denial, on about May 17, 1999, of Colbert's application for promotion to Groundsperson Driver "A" without cause and in direct breach of the condition of the Union settlement of the demotion grievance, May 1, 1997. (Paragraphs 76 through 83). In Paragraph 80. Colbert specifically states that the use of the Company's policy against him between May 17, 1999 and March 2, 2000, from which he infers the Company's intent to discharge him. Paragraph 80 was intended to be read in context with Paragraph 79 and 81. In Paragraph 79, Colbert alleges that Bricking used the progressive and constructive discipline policy as a pretext for discharge. To show pretest, Colbert cites:

    1) the unswerving application of the Company's discipline policy, in Paragraph 80;

2) the absence of discipline while the previous case was pending for decision in Paragraph 81;

3) Bricking's "letter in his file" story as to why he could not promote him to Groundsperson Driver "A" when the evidence clearly established that there was a letter from the Company saying that he could be considered for future promotion if his discipline record showed no infringements for a year as reported in Paragraph 82, and so forth.

4) In Paragraphs 84 – 89, Colbert asserts the filings of his EEOC discrimination charges to show the existence of a continuing hostile environment toward him by the Company since Colbert first opposed his demotion from Driver "A" on or about March 20, 1995.

5) Paragraph 90 records that Plaintiff used the EEOC to file his fourth EEOC complaint against Cincinnati Gas & Electric Company, and specifically against its agent, Donald Bricking, for failing to promote Plaintiff to the Groundsperson Driver "A" position on May 17, 1999.

Defendant CG&E asserts that "Paragraph 94 through the remaining paragraphs of the Affidavit are nothing more than arguments formulated in terms of Colbert's beliefs, none of which are substantiated by any evidence that things are the way Colbert imagines them to be". (CG&E, Motion to Strike, p. 8). An analysis of the content of Paragraph 94 and the following highlighted elements of a hostile work environment. Paragraph 94 specifically references the CBA as it confers rights on union members who are employees of CG&E, specifically to be heard on grievances. Paragraph 95, deals with micromanagement, and references third party hearsay reports on which Bricking frequently relied to mete out punishments and disciplines. No objective evidence is submitted on lateness, so the Company has presented no objective evidence that the "grieved" lateness actually occurred. In Paragraph 96 references Bricking's just refusal to consider Colbert for an upgrade to Groundsperson Driver "A", which, in fact, breached the

Company's condition which the Union accepted as settlement in Colbert March 20, 1995 demotion matter.

Paragraph 96 though the end of the Affidavit simply support the arguments set forth in the Memorandum in Opposition to Defendant Cinergy/The Cincinnati Gas and Electric Company's Motion for Summary Judgment, on the issues in this "hybrid case" requiring compliance to Section 301 of the National Labor Relations Act. In fact, the intent of Plaintiff's whole Affidavit was not to set forth material, but to support his Memorandum in Opposition to Cinergy/The Cincinnati Gas & Electric Company's Motion for Summary Judgment.

Plaintiff's Affidavit is based on personal knowledge from his experience, and/or on what he obtained on discovery from Defendant's former counsel, Julie Ezell. Those documents referred to herein are cited in the Memorandum in Opposition and were filed contemporaneously with Plaintiff's Affidavit. Plaintiff believes that his statements and references to and his characterizations of the conduct of others, particularly Donald Bricking, are admissible based on Rule 608 (a) and/or 608 (b) of the Federal Rules of Evidence.

The Affidavit of Dudley Quarles was signed and notarized before Plaintiff's counsel.. How an unsigned signature page was sent to the Court, Plaintiff cannot explain, but has the original of Quarles' Affidavit for refiling. The purpose of Quarles' Affidavit was to support Colbert's allegations that he was micromanagement by CG&E supervisors. Quarles worked with Colbert for many years and testified to his observations during that time. His Affidavit meets the qualifications that Quarles had personal knowledge of Colbert's being singled out by CG&E for micromanagement in excess of its ordinary employment policy as applied to Colbert's co-workers.

In an effort to justify striking Waters' Affidavit, Defendant CG&E forgets that Bricking testified that Waters was sometimes a lead person in reference to Colbert. In fact in an attempt to disgrace Colbert, written reports of Waters were produced by Defendant. Waters worked with Colbert. The purpose of his Affidavit was to support Colbert's statements that CG&E was always attempting to micromanage Colbert in contrast to the way it treated its other white employees, co-workers with Colbert.

Dated this 2nd day of May, 2005

                              Respectfully submitted,

                              /s/Rose Ann Fleming
                              Rose Ann Fleming
                              BAR ID. #0041337
                              ROSE ANN FLEMING, P.C.
                              3855 Ledgewood Drive
                              Suite 13
                              Cincinnati, OH  45207
                              Phone: 513-924-8389
                              Fax: 513-924-8389
                              Email: Fleming@xavier.edu
                              Attorney for Plaintiff

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the above was served by facsimile transmission, email and overnight express U.S. mail on the following this 2nd day of May, 2005:

Attorney for Defendants
Cinergy/The Cincinnati Gas and Electric Company:

Ariane Schallwig Johnson, Esq.
Cinergy/The Cincinnati Gas and Electric Company
Cinergy Services Inc.
1000 East Main Street
Plainfield, IN 46168-1782
Email: ariane.johnson@cinergy.com

And on
Attorney for Defendant
International Brotherhood of Electrical Workers, Local 1347

Jerry A. Spicer, Esq.
Snynder, Rakay & Spicer
11 West Monument Building, Suite 307
Dayton, OH 45402
synrakspi@aol.com

/s/Rose Ann Fleming
Rose Ann Fleming (0041337)
ROSE ANN FLEMING, P.C.
3855 Ledgewood Drive, Suite 13
Cincinnati, OH  45207
Telephone; 513-924-8389
Fax: 513-924-8389
Email: Fleming@xavier.edu
Attorney for Plaintiff