UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| OLLEN G. COLBERT, <br>     PLAINTIFF <br><br> VS. <br><br> CINERGY/CINCINNATI GAS <br> AND ELECTRIC COMPANY ET AL., <br>     DEFENDANTS | CASE NO. C–1-00-909 <br> (DLOTT, J.) <br> (HOGAN, M.J.) |

## REPORT AND RECOMMENDATION

Before the Court is the Defendant, Cinergy/Cincinnati Gas & Electric Company's (hereafter called C.G. & E.) Motion for Summary Judgment (Doc. 91), Plaintiff's Memorandum in Opposition (Doc. 104) and Defendant's Reply (Doc. 107). For the reasons which follow, Defendant's Motion is well-taken and should be granted.

## BACKGROUND INFORMATION

Plaintiff was terminated from his employment with Defendant, C.G.& E., having been employed there from April, 1990 to March 8, 2000. The stimulus for his discharge came on March 2, 2000 when Plaintiff was ordered by his supervisor, Donald Bricking, to paint or cut poles with a chain saw. Plaintiff worked at the Brecon Pole Yard servicing and maintaining electric poles. Not wanting to get dirty because of a union meeting that afternoon, Plaintiff refused the direct order, issued early in the morning, challenging his supervisor to "suspend me," which, of course, is exactly what Bricking did. (Bricking Dep., at 126-133). Plaintiff's version of the events of March 2d differs only slightly. Plaintiff testified that he had informed Bricking that the company's offer to let him off work at 11:00 to 11:30 did not give him enough time to clean up and drive from the yard in Sharonville to the Union hall in downtown Cincinnati, a fact Plaintiff claimed was never relayed to Ken Miller, who made the decision to suspend him

indefinitely. Plaintiff does not deny, however, that he was given an order and refused to obey it. (Plaintiff Dep., at. 101). At a disciplinary hearing conducted soon thereafter, the employer considered the incident along with Plaintiff's extensive disciplinary record and terminated Plaintiff's employment. Plaintiff's claims against this Defendant are (1) race discrimination, (2) hostile environment, (3) retaliation and (4) a hybrid Section 301 claim. None of the claims made demonstrate an issue of material fact which justifies continuing this litigation.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323.

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). Conclusory allegations, however, are not sufficient to defeat a properly supported summary judgement motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995)(Spiegel, J.). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes*, 912 F. Supp. at 283. *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 249-50.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## THE HYBRID SECTION 301 CLAIM

In a separate Order, this Court has recommended that Defendant, International Brotherhood of Electrical Workers, Local 1347's (hereafter called the Union) Motion for Summary Judgment on Plaintiff's hybrid Section 301 claim be granted. In order to prevail on this claim, Plaintiff must recover against both the Union and the employer, so a decision in favor of the Union eliminates any recovery against the employer as well. *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555 (6th Cir. 1990).

Nevertheless, and in the event that the District Court disagrees with our analysis of Plaintiff's claim against the Union, prudence would indicate a certain wisdom in also analyzing Plaintiff's claim against the employer, which by necessity, would have to be that the employer, C.G.& E., breached the provisions of the collective bargaining agreement in some manner. In this respect, Plaintiff's allegation is that the employer "rushed to judgment" by terminating him at a time when previous grievances, filed by Plaintiff, were unresolved. The apparent point is that if Plaintiff or the Union were to be successful or partially successful in obtaining a favorable result in the grievance process, Plaintiff's disciplinary record would theoretically be diminished

and he would be less likely to be terminated, at least insofar as his disciplinary record was concerned. Plaintiff argues that Article II of the CBA sets forth the grievance procedure and that the grievance procedure is a "right" acknowledged by the employer in Article I, Section 9(d) of the CBA. However, the foregoing provisions must be read together with Article I, Section 9(a) which reserves the right to discipline and discharge employees to the company.

      To understand the fallacy of Plaintiff's position, one only needs to magnify the alleged offense from insubordination, as in Plaintiff's case, to a felonious assault on a member of management in the presence of a customer. In the latter case, would the employer be restrained from discharging that employee because of a pending unresolved grievance? Although it might be argued that the offense for which Plaintiff was discharged is less serious than in our hypothetical, thereby making Plaintiff's disciplinary record more significant, the fact is that discounting the discipline for which Plaintiff had unresolved grievances, Plaintiff still had a very significant disciplinary record. Plaintiff has failed to convince us that Plaintiff's right to file grievances trumps the employer's right to discharge him for "proper and legitimate reasons." Thus the pendency of Plaintiff's grievances for two disciplinary actions for 3 and 5-day suspensions for saying "fuck you" on October, 1999 to Tom Sams, a C.G. & E. Supervisor and for four instances of tardiness in October, November and December, 1999 do not mitigate the fact that Plaintiff refused a direct order from a supervisor to work and had a total of 19 entries in his disciplinary record, not counting the two for which grievances were pending, since July, 1995 and 6 of which were for tardiness or absenteeism.

      Plaintiff, however, offers an explanation why his refusal to work during the morning of March 2, 2000 was not an act of insubordination. He says that he took vacation time, to which he was entitled, because he had been an employee for approximately 10 years and had accrued enough vacation time. Plaintiff had a grievance hearing scheduled for 1:30 that day and didn't want to attend in a dirty and sweaty condition from working. Plaintiff requested vacation time for ½ day and was informed that the CBA prohibited the granting of vacation time for portions of a full business day. Plaintiff was entitled to compensation for the time he spent in grievance hearings. In other words, Plaintiff argues that he is entitled to an on-the-spot approval of a request for vacation time, but cites to no section of either the CBA or the employee handbook requiring a supervisor to grant such a request. The argument is so far removed from acceptable

management practice as to be irrational.  The fact that Plaintiff is entitled to be paid for attending grievance hearings does not imply that he should be given the day off, especially when, as here, there is no conflict between Plaintiff's morning work schedule and his grievance hearing.  Bricking told Plaintiff that he could leave work some time between 11:00 and 11:30 a.m. to clean up and attend the grievance hearing at 1:30 p.m.

Defendant argues, and we agree, that collateral estoppel precludes any re-argument of an issue previously decided by Judge Beckwith in Plaintiff's first suit against the same parties named in the instant action.  That issue is that Article 1, Section 9(a) gives C.G. & E. the right to consider Plaintiff's prior work performance as well as the predicate act and that suspension and termination are available, as well as other less onerous forms of discipline.  *Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900 (6th Cir. 2001).  It is obvious that other less onerous forms of discipline were tried with only temporary, if any, change in behavior, as Plaintiff's lengthy disciplinary record reflects.  There is no genuine issue of material fact which precludes summary judgment and requires Defendant, C. G. & E. to defend itself at trial.

Plaintiff asserts that he has a second basis for his claim that the Defendant breached the CBA.  That claim arises after he was demoted and entered into a settlement agreement with the employer over that job action.  The employer maintained the unmodified discipline, but agreed to reconsider Plaintiff for placement in his former position if he maintained a satisfactory work record for a significant period of time.  Plaintiff says that he had no disciplinary entries in his record for a period of 20 months and that when he reapplied for the position, it was given to a white employee and he was given no explanation.  Bricking's testimony was that Plaintiff was denied the promotion because of a letter in his personnel file "saying that he cannot be upgraded until his performance improves." (Bricking Dep., at 54).  Assuming the validity of Plaintiff's claim for purposes of argument, the Union did not pursue a grievance relative to that claim and Plaintiff was aware of that fact in July, 1999 or earlier.  This lawsuit was filed in October, 2000 and the applicable statute of limitations is 6 months.  Summary judgment is also appropriate on Plaintiff's second basis for his claim that the employer violated the CBA.

## RACE DISCRIMINATION UNDER TITLE VII

In order to make a prima facie case of disparate treatment because of race, based on circumstantial evidence, Plaintiff, an African-American, must show: (1) that he is a member of a protected group, (2) that he was otherwise qualified for his position, (3) that he suffered an adverse job action and (4) that he was treated less favorably than a similarly situated person outside of the protected group. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Plaintiff has demonstrated the first three elements, but encounters a problem in demonstrating the fourth element.

The comparables, persons who Plaintiff alleges were given more favorable treatment than him, are Ralph Kroger, David Hatfield and Mike Ryan. Plaintiff testified at his deposition that Kroger, who is white, was charged with or convicted of two DUI offenses, both of which occurred in the employer's vehicles, but wasn't terminated. Plaintiff described Kroger as working at the Brecon Pole Yard and "most likely" an equipment operator. Plaintiff testified during his deposition that David Hatfield, who also is white, damaged company property, but wasn't disciplined, and compares this with Plaintiff's demotion in March, 1995 for damaging a transformer while using a crane. Mike Ryan, a white male, is alleged to have driven in an unsafe manner about the premises of the Brecon Pole Yard and an accident occurred. Plaintiff had no knowledge whether or not Ryan was disciplined but "hadn't heard any scuttlebutt around the yard or anything."

Plaintiff encounters two problems in attempting to compare himself with the three individuals listed above. First, the cause of Plaintiff's serious discipline, his suspensions and termination, was incidents of insubordination and persistent tardiness, not any of the misbehavior which Plaintiff attributes to Messrs. Kroger, Hatfield or Ryan. To be considered "similarly situated," the individuals with whom Plaintiff seeks to compare himself must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct. *Warfield v. Lebanon Correctional Inst.*, 181 F.3d 723 (6th Cir. 1999). We don't know from the record the identity of the person who supervised either Kroger or Hatfield. We don't know from the record whether Ryan was even disciplined. We also do not have before us the disciplinary records or work performance records for any of the comparables. Thus, we have no basis for concluding, as Plaintiff urges, that any of the three was treated more favorably than Plaintiff.

The second problem encountered by Plaintiff is that all the disciplinary acts, for which he

compares himself to Kroger and Hatfield, occurred prior to June, 1999. The significance of this fact is that Plaintiff filed four EEO charges and received "Right to Sue" Notices, the last of which was received in November, 1999. Plaintiff failed to file suit on any of these four claims with 90 days of the receipt of these Notices. Plaintiff is unable to list any comparables relative to discipline he received after June, 1999. *See* 42 U.S.C., Section 2000e-5(e) and *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974). Having been unable to show that others outside the protected class were treated more favorably, Plaintiff's race discrimination claim based on circumstantial evidence has no arguable merit.

Direct evidence of race discrimination, however, would certainly justify denying the Defendant employer's Motion for Summary Judgment. Plaintiff asserts that he has such proof, but the evidence is otherwise. In August, 1999, Defendant discovered a ding in the door of a company truck assigned to Plaintiff. Willie Wilson, who is African-American, told Bricking, Plaintiff's supervisor, that Plaintiff had caused the ding. Bricking believed Wilson's version for three reasons: (1) Wilson had observed that day that Plaintiff was having trouble parking the truck in close quarters and (2) there was a matching dent in a door in the area where Plaintiff was assigned to work, and (3) The ding was not there when Plaintiff took the vehicle, according to Wilson. Plaintiff's version was that another employee dropped a piece of equipment on the door. Bricking's credibility call is certainly explainable for reasons other than race. Plaintiff says that Ralph Kroger, who is white as is Bricking, caused some damage to a company truck while committing a DUI, but wasn't disciplined as Plaintiff was. The competent parties to testify about Kroger's discipline are Kroger himself and his supervisor, neither of which are cited in Plaintiff's Memorandum in Opposition as providing any record information on the subject. Plaintiff's testimony on the subject of discipline rendered to Kroger is simply incompetent. (Plaintiff Dep., at 78-79).

In summary, there is no direct evidence of race discrimination and no evidence from which a race discrimination case based on circumstantial evidence can be made. Defendant's Motion for Summary Judgment on this claim should, therefore, be granted.

Defendant's legitimate non-discriminatory reason for the discipline applied to Plaintiff from June, 1999 resulted from complaints or reports made by other African-American employees Vince Rutledge, Willie Wilson, Jeff Greg, Leon Waters, Shep Hilson and Tom Sams. Plaintiff's

disciplinary record over the course of his employment was terrible, the worst at Brecon according to Bricking, and he was given three suspensions of increasing time periods without a long-term change in behavior. The final act of insubordination was simply the straw that broke the camel's back. None of the discipline applied, including the separation itself, violated any provision of the CBA. Plaintiff's argument that the reason for his termination was pretextual is based on Plaintiff's conclusion that his work performance was not the reason for his termination or was insufficient reason to motivate the adverse job action. *See Reeves v. Sanderson Plumbing Products, Inc.*, 500 U.S. 133 (2000). Plaintiff certainly cannot assert that the reason given by the employer had no basis in fact. Plaintiff seems to say that his frequent EEO filings distinguish himself from other Brecon employees and that these filings provide substantial motivation for the discipline which followed. That argument does not relate to a racial animus for Defendant's behavior and is more properly discussed in the analysis of Plaintiff's retaliation claim.

Bricking testified that he never issued even an oral warning unilaterally and that all forms of discipline were discussed with and approved by Ken Miller, Bricking's superior at the Dana Ave. branch before being issued by Bricking. Interestingly, Plaintiff does not accuse Miller of having any racial animus.

**RETALIATION**

Plaintiff asserts that his discipline and termination, as well as the denial of his request for an "upgrade," essentially a promotion, resulted from his prior EEO filings. In order to establish a prima facie case of retaliation, Plaintiff must show that he (1) engaged in protected activity, (2) Defendant knew about the protected activity, (3) Defendant took some form of adverse job action against Plaintiff and (4) there causal connection between the protected activity and the adverse job action. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784 (6th Cir. 2000). Obviously, Plaintiff has satisfied the first element of his claim. Although the second element is in dispute because Bricking didn't become Plaintiff's supervisor until January, 1999, the EEO charges predate that date and Plaintiff denied making Bricking aware of those prior charges, the inference to the contrary comes from the EEO investigation of Plaintiff's complaint and the fact that Bricking was mentioned as a management official of Defendant in the Complaint. However,

at least a factual question arises whether Bricking knew about Plaintiff's prior filings. In the context of a summary judgment motion, we must give the benefit of the inference to Plaintiff. We also find that Plaintiff has established that discipline, denial of a promotion and ultimate termination are all adverse job actions.

      Plaintiff attempts to establish the link between the knowledge of his EEO filings and the adverse job action by arguing that there was a short time span between the two events. The facts lend support to Plaintiff's point, simply because of the sheer volume of Plaintiff's misbehavior and the rate at which it occurred. Plaintiff's last EEO complaint was filed in July, 1999 and he was terminated in March, 2000. In August, 1999, Plaintiff was suspended for one day for failing to return to work after a United Way tour. The others who made the tour, all African-Americans, returned to work. In October, 1999, Plaintiff was involved in a verbal altercation with Tom Sams, an African-American and a supervisor. Plaintiff was suspended for three days based not only on his use of colorful language, namely saying "fuck you" to Sams after an argument over the use of a pencil, but on his attendance record as well. The third suspension came in December, 1999 when Plaintiff was suspended for a five-day period for continuing attendance problems. Despite Plaintiff's argument that there is a temporal link between his last filed EEO complaint and discipline which followed, he doesn't contest any of the facts which led to the imposition of discipline, except to fault Bricking for taking the word of subordinates rather than checking his time of arrival for work. Whether Bricking was aware of Plaintiff's prior EEO filings or not, Bricking testified that when he became the supervisor in January, 1999, he considered his subordinates to have "clean slates" and that he imposed no form of serious discipline without consultation with upper management, his boss Kenny Miller and the Human Resources Department, none of which are alleged to be racially biased in their management decisions. (Bricking Dep. at 31). In short, one cannot file multiple EEO complaints, accelerate one's rate of misbehavior and get much mileage out of the argument that because there is a temporal relationship between the EEO filings and the imposition of discipline that the former is the cause of the latter.

      Because there is also no genuine issue of material fact in relation to Plaintiff's retaliation claim, it should result in summary judgment in favor of the employee.

**HOSTILE ENVIRONMENT**

In order to support a hostile environment claim, Plaintiff must show conduct which is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17 (1993). Factors to consider are: (1) the frequency of the discriminatory conduct, (2) the severity of the discriminatory conduct, (3) whether the discriminatory conduct is physically threatening or humiliating, and (4) whether it unreasonably interferes with the employee's work performance.

Defendant's position is that Plaintiff was subject to frequent disciplinary measures because he was constantly breaking the rules. On the other hand, Plaintiff's position is that the discipline he did receive was motivated by a racial animus. The argument Plaintiff makes denying that he was insubordinate is difficult to comprehend. Plaintiff argues that he did not refuse the job assignment to cut or paint poles; he simply refused his supervisor's order that he not leave work until 11:00. Plaintiff argues that he needed more time to shower, change clothes and be able to meet the union steward at 12:30 in downtown Cincinnati so they could prepare for the 1:30 grievance hearing. Plaintiff says that when Bricking sought advice from Kenny Miller as to how to handle Plaintiff's refusal, he did not tell Miller that Plaintiff's reason for wanting more time than he was given was his desire to meet with his representative and prepare for the grievance hearing.

The second basis for the hostile environment claim is Bricking's refusal of Plaintiff's on-the-spot request to take a vacation day. Plaintiff asserts that he was entitled to a vacation day because Article IV, Section 1(e) gives the supervisor the right to grant a vacation day when less than 7 days notice was provided by the employee. However, the fact that the CBA authorizes the granting of vacation time for those who don't comply with the notice provisions does not require the supervisor to grant such vacation time. These two discrete events occurring on the same day do not constitute a hostile environment as a natter of law. Summary judgment for Defendant should, therefor, be granted on this claim.

**IT IS THEREFORE RECOMMENDED THAT** Defendant, Cinergy/Cincinnati Gas & Electric Company's Motion for Summary Judgment (Doc. 91) be **GRANTED** in its entirety and that this case be dismissed from the docket of the Court.

May 19, 2005                                         s/Timothy S. Hogan
                                                     Timothy S. Hogan
                                                     United States Magistrate Judge

# NOTICE

Attached hereto is the Report and Recommended decision of The Honorable Timothy S. Hogan, United States Magistrate Judge, which was filed on 5/20/2005. Any party may object to the Magistrate's findings, recommendations and report within ten (10) days after being served with a copy thereof or further appeal is waived. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also* Fed. R. Civ. P. 72(b). Such parties shall file with the Clerk of Court, and serve on all Parties, the Judge and the Magistrate, a written Motion to Review which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made along with a memorandum of law setting forth the basis for such objections. (Such parties shall file with the Clerk a transcript of the specific portions of any evidentiary proceedings to which an objection is made).

In the event a party files a Motion to Review the Magistrate's Findings, Recommendations and Report, all other parties shall respond to said Motion to Review within ten (10) days after being served a copy thereof. *See* Fed. R. Civ. P. 72(b).

J:\HOGANTS\colbert2.wpd