Rose Ann Fleming
ROSE ANN FLEMING PROFESSIONAL CORPORATION
3855 Ledgewood Drive, Suite 13
Cincinnati, OH  45207
Phone: 513-924-8389
Fax: 513-924-8389
Email: Fleming@xavier.edu
Attorney for Plaintiff

# THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO (CINCINNATI)
## WESTERN DIVISION

| | |
|---|---|
| **OLLEN G. COLBERT, Jr.,** | Case No.: 1:00-CV-909 |
| Plaintiff, | Judge Susan J. Dlott<br>Magistrate Judge Timothy J. Hogan |
| vs. | |
| **CINERGY,**<br>**THE CINCINNATI GAS AND ELECTRIC COMPANY,** | **PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE'S FINDINGS, RECOMMENDATIONS AND REPORT GRANTING SUMMARY JUDGMENT TO CINERGY/THE CINCINNATI GAS AND ELECTRIC COMPANY.** |
| **AND** | |
| **INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 1347,** | |
| Defendants. | |

Comes now Plaintiff, Ollen G. Colbert, Jr., by and through Counsel, and respectfully moves this Court to review the Magistrate's Findings, Recommendations and Report (Doc.116), based on Plaintiff's objections thereto, more specifically set forth in the Memorandum in Support of this motion which is attached hereto. The Magistrate issued his Report and Recommendations granting Defendant Cinergy/The Cincinnati Gas and Electric Company (hereinafter called C.G.&E.)'s Motion for Summary Judgment.

Essentially, the Magistrate did not consider several of the genuine issues of material facts raised by Plaintiff in his Memorandum in Opposition, regarding the following: 1) the progressive employment policy of Defendant under which Colbert was supervised and disciplined, and the

1

Plaintiff's right to grieve such disciplines; 2) Colbert's rights as an employee under the collective bargaining agreement which Defendant/The Cincinnati Gas and Electric Company breached; 3) the denial of Plaintiff's timely request for comparables' work records in order to prove discrimination; 4) the denial of a causal connection existing between Plaintiff's dismissal and his EEOC filings, and this Court's Decision on case no 1:97-cv-00685, Colbert v. The Cincinnati Gas and Electric Company (decided March 2, 1999); and 5) failing to consider the impact of the "in his face" treatment to which Colbert was constantly singled out and subjected.

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OBJECTIONS TO MAGISTRATE'S FINDINGS, RECOMMENDATIONS AND REPORT**

**1. PLAINTIFF OBJECTS TO MAGISTRATE'S FAILURE TO REQUIRE CG&E TO ADHERE TO ITS OWN PROGRESSIVE DISCIPLINE POLICY AND COLLECTIVE BARGAINING AGREEMENT WITH THE UNION SINCE CG&E'S ACTIONS CONSTITUTE A HYBRD SECTION 301 VIOLATION.**

In the Hybrid Section 301 Claim, the Magistrate clearly fails to hold the Company to its Collective Bargaining Agreement with the Union. (See Recommendation and Report 4-5) The employee has a right to grieve a discipline administered to him. (See Article. II, Section 1(a), of the collective bargaining agreement entitled, *Agreement between The Cincinnati Gas and Electric Company and Local Union 1347, International Brotherhood of Electrical Workers*. (Hereinafter CBA).

C.G.&E. disciplined its employees under a progressive discipline system. Donald Bricking, supervisor, described the discipline system under which the employees he supervised were punished as a progressive discipline policy. The policy consisted of four (4) steps: 1) oral warning; 2) written warning; 3) suspensions: one-day suspension, three-day suspension and five-day suspension; and 4) dismissal. Further, Bricking added that an employee could be disciplined

more than once and an offense could be counted more than once at a the same level. In addition, Bricking stated that he had never dismissed anyone other than Plaintiff, Colbert.

Given the progressive discipline policy, and the employee's right to grieve, C.G.&E.'s decision to terminate Colbert was untimely since there were at least two disciplines that Colbert was grieving at the time that Bricking recommended indefinite suspension for Colbert on March 2, 2000. At that time, a disagreement arose between Colbert and Bricking as to what time he could leave his work in order to confer with his Union representative prior to a discipline hearing. The Company erred by converting his indefinite suspension into termination of his employment, rather than assigning a one-, three- or five-day suspension. Bricking, the supervisor of Colbert, testified that C.G.&E.'s progressive discipline policy could be applied several times on the same level but that it could not skip levels. By going to the fourth step, dismissal, C.G.&E. did, if fact, skip a level with Colbert.

Case law was cited in Plaintiff's Memorandum in Opposition that protects the employee in this instance. Since Defendant C.G.&E did not allow Colbert to pursue his grievances it breached its own policies and, in this light, unjustly terminated Colbert. This lack of justice certainly creates a genuine issue of material fact that indicates that this issue must be brought to trial.

**2. PLAINTIFF OBJECTS TO MAGISTRATE'S INTERPRETATION OF DEFENDANTS' COLLECTIVE BARGAINING AGREEMENT BECAUSE IT DENIES PLAINTIFF'S RIGHT TO DUE PROCESS.**

The Magistrate notes that Article II deals with Plaintiff's rights to grieve a discipline decision by the C.G.&E. Further the Magistrate notes that Article I, Section 9(d), is management's recognition of the right of the employee to grieve. However, without any

3

reference in law or fact, or any reference to supporting testimony on legal experts on contract law, the Magistrate states:

> However, the foregoing provisions [ Article II and Article I, Section 9 (d)] must be read together with Article I, Section 9(a) which reserves the right to discipline and discharge the employees to the company.

Counsel respectfully calls the attention of the Court to the wording of Article I, Section 9(a). It clearly states:

> *Except where expressly abridged by a specific provision of this Agreement,* the Union recognizes that . . . the right to . . .discharge . . . [is] vested in and reserved to the company." (Emphasis added)

Article I, 9(d) expressly abridged a specific provision, the right to discharge. That is, Article I, Secion 9(d) states:

> The foregoing three paragraphs do not alter the employee's right of adjusting grievances as provided for in Article II, Section I of this Agreement.

Clearly there is a genuine issue of material fact that arises regarding the hybrid § 301 here regarding why the Magistrate would hold that the Company has the right to discharged employees without noting the reservation on that right place by Article I, Section 9(d) and Article II, Section I.

The Magistrate offers a hypothetical – a personal tort situation which is clearly not on point. Further the use of physical violence in relation to any other person comes clearly under other provisions of the C.G.&E. Progressive Discipline Policy for violence and C.G.&E. would treat it as such.

Further, the Magistrate invokes collateral estoppel on the issue decided by Judge Beckwith in Plaintiff's first suit with the same parties named in this action.; the Magistrate continues:

4

>That issue is that Article I, Seciton 9(a) gives C.G.&E. the right to consider Plaintiff's prior work performance as well as the predicate act and that suspension and termination are available, as well as less onerous forms of discipline. (Magistrate's Recommendations and Report, page 5).

This reference to collateral estoppel of other issues is not on point regarding the Hybrid Section 301 issue. The question here is did C.G.&E. breach the Contract? By terminating Colbert before he had his pending grievances resolved, Plaintiff believes CG&E breached it own policy and breached the collective bargaining agreement.

The Court may have lost its way in defending C.G.&E. against Plaintiff on the matter of violating the collective bargaining agreement (Magistrate's Recommendations and Report, pages 4-5). The Magistrate's Report states that "Bricking's testimony was that Plaintiff was denied the promotion because of a letter in his personnel file "saying that he cannot be upgraded until his performance improves." (Bricking Dep. at 54). This letter that Bricking refers to is the letter that settled the dispute in 1997. The letter from the CG&E to the Union maintained the discipline unmodified, but agreed to reconsider Plaintiff for his former position if he maintained a satisfactory work record for a significant period of time. "Significant period of time" was defined in an earlier letter by CG&E to mean at least a year. After Bricking denied Colbert's Motion, he appealed this denial on July 23, 1999. The magistrate objects to the fact that this lawsuit was not filed until October, 2000. Plaintiff respectfully notes that the Magistrate himself issued a Recommendations and Report finding this filing timely. (See Doc. 47). Further, based on the theory of continuing violation, asserted by Plaintiff in his Memorandum in Opposition, the four EEOC complaints, previously filed, including the one filed on July 23, 1999, objecting to Bricking's denial of his promotion come into evidence as a result of the timely filing of the fifth EEOC complaint and the subsequent filing of Plaintiff's in October 2000 in this Court. Further a

5

breach of contract claim has at least a four year or more period. Colbert as a third party beneficiary has a right to assert such a claim against C.G.&E.

Plaintiff requests that this Court find that, absent any evidence to the contrary, C.G.&E violated its own policy and the collective bargaining agreement by dismissing Plaintiff from its employment prior to a hearing on all outstanding grievances.

3. **THE COURT HAS ABUSED ITS DISCRETION BY DENYING A TIMELY REQUEST BY PLAINTIFF FOR EMPLOYMENT RECORDS OF RALPH KROGER.**

The Magistrate's Findings, Recommendations and Report, page 6, uses the four criteria from *Mc Donnell Douglas Corp v. Green,* 411 U.S. 792 (1973). The document show that on November 20, 2004, the Magistrate issued an order granting Plaintiff the opportunity to take Donald Bricking's Deposition, but without any paper work requested of the Defendants. All other discovery requests were denied. These discovery request included the records of comparables, or similarly situated individuals, namely Kroger, Hatfield and Ryan, individuals that worked with Plaintiff, as well as other individuals with whom Colbert worked.

The Magistrate then makes the following statement on pages.6-7 of his Report.

> In order to make a prima facie case of disparate treatment because of race, based on circumstantial evidence, Plaintiff, an African American, must show that : (1) that he is a member of a protected group; (2) that he was otherwise qualified for his position; (3) that he suffered an adverse job action, and (4) that he was treated less favorable than a similarly situated person outside of the protected group. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Plaintiff has demonstrated the first three elements, ***but encounters a problem in demonstrating the fourth element. (emphasis added).***

Magistrate's Report, page 6, admits that Plaintiff has met the first three elements; however, the Magistrate's denial of Plaintiff's request for Interrogatories and Production of Documents, has deprived Plaintiff of critical material to get his case to Court. The magistrate

6

knows that the Defendant C.G.&E. changed attorneys in the Fall of 2004, and that their previous attorney had a prior assignment before C.G.&E.'s present Counsel came on board. The record shows what a narrow space of time was available to Plaintiff to formulate Interrogatories and Production of Documents. The attorneys on this case exchanged documents informally.

Plaintiff requests that this Court order the Magistrate to reverse his decision and order Defendant C.G.&E. to answer the Interrogatories submitted and produce the documents requested so that Plaintiff may have a fair chance to make his case before granting summary judgment.

Again, the Magistrate shows abuse of discretion on page 7 regarding Plaintiff's ability to prove direct discrimination which he suffered at the hands of Bricking. Plaintiff charged that Kroger caused damage to a company truck and was not punished. Plaintiff was blamed for damage to another company truck, which he states he did not do, and was punished. Having deprived Plaintiff of discovery except for Bricking's deposition, the Magistrate states that the competent parties to testify about Kroger's discipline are Kroger himself and his supervisor, neither of which are cited in Plaintiff's Memorandum in Opposition thereby failing to provide any record information on the subject. Plaintiff respectfully reminds this court that Kroger can be brought to trial and so can his supervisor. Plaintiff's statements that he was discriminated against in this incident were not denied in Defendant's Reply and therefore Plaintiff raised a genuine issue of a material fact regarding discrimination which must be tried.

Wherefore Plaintiff requests that this Court allow the issue of Plaintiff's discrimination to go forward to trial.

7

**4. THE MAGISTRATE ERRS IN STATING THAT PLAINTIFF "DID NOT CONTEST ANY OF THE FACTS WHICH LED TO THE IMPOSITION OF DISCIPLINES" AND THEREFORE THERE IS NO RETALIATION.**

Again, the Magistrate states the Plaintiff had to establish retaliation as follows:

> In order to establish a prima facie case of retaliation, Plaintiff must show that (1) he engaged in protected activity, (2) Defendant knew about the protected activity, (3) Defendant took some form of adverse job action, and (4) there [is] a causal connection between the protected activity and the adverse job action.

The Magistrate's Report. page 8, concedes that the Court would find for Plaintiff on the first. The report then denies a causal connection on the basis of time because Plaintiff "did not contest any of the facts which led to the imposition of disciplines". This simply is false. Plaintiff contests all of the suspensions and this is recorded in his Deposition on November 20, 2004 as well as in Plaintiff's Memorandum in Opposition. Plaintiff's opposition to Bricking's suspensions is based not only on the fact that his information was solely from third parties and was purely hearsay, but also on the fact that he was not absent and was not late, according to his own statement. There is simply no proof objective proof that he was late since C.G.&E. did not use time cards.

The Report overlooks the fact that there were pending grievances regarding the three-day and five-day suspension that Plaintiff had a right to resolution of these prior to any action on termination. If the only flaw in Plaintiff's argument is that the Plaintiff did not object to any of the facts that led to his discipline, then Plaintiff asks that the retaliation issue be tried because Plaintiff most certainly did object to Bricking's disciplines.

Further, as noted in Plaintiff's Memorandum in Opposition, Bricking was motivated by the judgment of Judge Beckwith in Case No. 1:97-cv-00685, *Colbert v. Cincinnati Gas &*

8

*Electric Co, et al.,* filed: 07/23/1997 and decided: 03/02/1999, to pile up disciplines against Colbert so that he could be terminated. Tee decision in Case No.1:97-cv-00685 granted summary judgment to Defendants Cincinnati Gas and Electric Company, and to International Brotherhood of International Workers. Judge Beckwith not only decided in favor of the defendants, but she said that Cincinnati Gas and Electric Company could count their past violations in assessing a case for termination. This motivated Bricking to pile up as many incidents against Ollen G. Colbert, Jr. in order to eliminate him. The Magistrate does not comment on the decision of 3/2./1999.

Further, the parties to that earlier case had made an agreement by and between themselves, namely by and between C.G.&E. and International Brotherhood of Electrical Workers (hereinafter called IBEW), in which C.G.&E. promised to consider a promotion for Colbert back to his former level of rank and pay, if he could remain without disciplines for a significant amount of time, which C.G.&E. defined as a year. Colbert remained without disciplines for at least twenty (20) months. When in March, 1999, Colbert applied for a promotion to his former job title, he was denied, without cause. This denial of consideration of a promotion constituted a breach of contract between the I B E W. Plaintiff was the third party beneficiary to such an Agreement. As such Plaintiff has a right to complain that the Magistrate did not find that Bricking's activity was in retaliation of the EEOC filings, particularly the July 23, 1999, filing holding him responsible for denying Plaintiff consideration of a promotion.

It was the freedom of the employer to use the past disciplines that motivated Bricking to make a record so quickly on Colbert, who grieved all of the 1999 disciplines. To that end Bricking used each and every third party's report against Plaintiff, albeit such reports were hearsay. Bricking's wrongful use of Judge Beckwith's Order, together with the EEOC filings were motivational factors for Bricking to write disciplines with greater harshness and with greater frequency against Colbert than it did against anyone else.

There is no evidence in the record that Colbert's behavior changed for the worse. The sheer numbers of disciplines between June 1999 and March 2000 were not related to correcting Plaintiff for a fault related to the work place, but were only related to getting rid of him by use or the progressive discipline policy. It is clear that there is a timely link between the following events: Judge Beckwith's Order of March 2, 1999; the breach of C.G.&E.'s settlement agreement in June, 1999 when Bricking refused to consider Colbert for promotion; the filing of the fourth EEOC Complaint against Bricking in July of 1999; and the numerous disciplines issued against Colbert between May, 1999 and March, 2000. The contiguous nature of these happenings prove their linkage, and thereby the causal connection needed for a prima facie case of retaliation.

WHEREFORE, Plaintiff requests that this Court find that a genuine issue of material fact is present here regarding CG&E's retaliation against Colbert and rule this issue must be resolved by trial.

**5. THE REPORT DOES NOT REFLECT THE BASIS OF PLAINTIFF'S HOSTILE ENVIRONMENT CHARGE AND DENIES IT WRONGLY AS A MATTER OF LAW.**

On page 10 of the Magistrate's Findings, Recommendations and Report, the Magistrate states that "The two discrete events— Bricking's discipline of Colbert for his insubordination on March 2, 2000 when given a choice of work and Bricking's failure to grant Colbert a full vacation day which Colbert suggested so that he could get to see his Union Representative before the grievance hearing and not incur further disciplines—on the same day do not constitute a hostile environment as a matter of law". The Findings, Recommendations and Report wrongly advocate summary judgment.

The Magistrate set forth four factors from *Harris v. Forklift Systems, Inc*. 510 U.S. 17 (1993): namely,

> (1) the frequency of the discriminatory conduct;
> (2) the severity of the discriminatory conduct;
> (3) whether the discriminatory conduct is physically threatening or humiliating; and
> (4) whether it unreasonably interferes with the employee's work performance.

The events above cited from page 10 of the Magistrate's Report were not the only two events cited. Plaintiff noted a long history of and frequency of the discriminatory conduct. From May, 1999 through March, 2000, Plaintiff had at least one discipline, except for September, 1999 when he was out sick at his own expense. Plaintiff's Memorandum details how long, how much suffering and how much the Supervisor's hostile treatment affected Colbert's work performance. The five successive filings of EEOC Complaints indicate the presence of a continuing and hostile work place. Colbert's complaints that Bricking "was always in his face" and the corroboration of this from the Affidavit of Leon Waters indicates that the Magistrate's Findings, Recommendations, and Report did not give full consideration to Plaintiff's argument.

As to the two argument's above, as stated before, Colbert arrived at work in work clothes; he intended to work. He was not insubordinate in failing to do a job. The difficulty that arose was over the time that he could leave work, not his willingness to work. Bricking has simply falsified this charge. Further, Bricking admitted in his deposition that he had given others vacation days when asked at the last minute. The fact that he refused this accommodation to Colbert is discriminatory because he has treated others similarly situated in a more favorable way.

WHEREFORE, based on the continuing nature of the hostile environment and the Affidavit filed by Leon Waters, Plaintiff asks that this Court find that there is a genuine issue of

material fact that Plaintiff has raised regarding hostile environment so that this issue may be order to be tried.

                                    Respectfully submitted,

                                    /s/Rose Ann Fleming
                                    Rose Ann Fleming
                                    BAR ID. #0041337
                                    ROSE ANN FLEMING, P.C.
                                    3855 Ledgewood Drive
                                    Suite 13
                                    Cincinnati, OH 45207
                                    Phone: 513-924-8389
                                    Fax: 513-924-8389
                                    Email: Fleming@xavier.edu

## CERTIFCATE OF SERVICE

**I HEREBY CERTIFY** that on 6th day of June, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ariane Schallwig Johnson, Esq.
Legal Department
Cinergy Services, Inc.
1000 E. Main Street
Plainfield, IN 46168
Telephone: 317-838-1285
Facsimile: 317/838-1842
Ariane.joynson@cinergy.com

And

Jerry A. Spicer
Snyder, Rakay & Spicer
11 Wesst Monumnet Building, Suite 307

Dayton, OH 45402
937-228-2696
937-228-5248
snyrakspi@aol.com

                                          /s/Rose Ann Fleming
                                          Rose Ann Fleming
                                          BAR ID. #0041337
                                          ROSE ANN FLEMING, P.C.
                                          3855 Ledgewood Drive
                                          Suite 13
                                          Cincinnati, OH  45207
                                          Phone: 513-924-8389
                                          Fax: 513-924-8389
                                          Email: Fleming@xavier.edu